1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA DEL ROSSARIO JARAMILLO
BALLESTEROS, as Personal Representative of
the ESTATE OF JAIME CARRILLO
MONTENEGRO, a Florida estate, and as
Guardian of M.F.C.J., a minor; and RAQUEL
JAVELA ROJAS as Personal Representative of
the ESTATE OF JAIME EDUARDO HERRERA
ROMERO, and Guardian of J.M.H.J., a minor,

                Plaintiffs,

v.

THE BOEING COMPANY, a Delaware
Corporation,

                Defendant.

No. 22-cv-00393-TSZ

DEFENDANT BOEING'S
MOTION TO DISMISS ON THE
GROUNDS OF FORUM NON
CONVENIENS

ORAL ARGUMENT REQUESTED

NOTED FOR CONSIDERATION:
MARCH 10, 2023

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(NO. 22-cv-00393-TSZ)

# TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................. 1

BACKGROUND.................................................................................................. 3

    A.    The accident airplane. ................................................................. 3

    B.    The accident according to the accident report. ................................... 3

    C.    The investigation and its findings. ................................................. 4

    D.    The U.S. and Colombian litigation arising from the accident. ............. 6

ARGUMENT ..................................................................................................... 8

    A.    Colombia is an available and adequate alternative forum. .................. 9

    B.    The public and private interest factors relevant to a *forum non conveniens* analysis weigh heavily in favor of dismissal.................... 10

        1.    The private interest factors all support dismissal in favor of a Colombian court. ................................................................. 10

            a.    The location of the evidence strongly favors Colombia.............. 11

            b.    The existence of some evidence in the U.S. does not favor trial in Washington................................................................. 13

            c.    The availability of evidence also weighs in favor of Colombia. ................................................................................ 14

            d.    Litigating here, without the owner and operator of the airplane as a third-party defendant, unfairly prejudices Boeing. ................................................................................ 15

            e.    Resolving Plaintiffs' claims in Washington will require burdensome and expensive translation of documents and testimony. ................................................................................ 17

         2.    The public interest factors support dismissal in favor of a Colombian court. ................................................................. 18

            a.    Colombia's interest in deciding this dispute is great; Washington has minimal interest, if any.................................. 18

            b.    Colombian law will likely govern this dispute. .......................... 20

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(NO. 22-cv-00393-TSZ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF CONTENTS (Continued)**

2

Page

3        c.     There is no reason to burden a Washington trier of fact with

4                   the expense of a trial.................................................................20

CONCLUSION .............................................................................................21

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(NO. 22-CV-00393-TSZ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Ballesteros v. Boeing Co.*,
  No. 22-2-03357-6 (King Cnty. Super., Mar. 10, 2022) ................................... 6

*Baumgart v. Fairchild Aircraft Corp.*,
  1991 WL 487242 (W.D. Tex. Sept. 30, 1991), *aff'd*, 981 F.2d 824
  (5th Cir. 1993) ........................................................................................... 15

*Beaudu v. Starwood Hotels & Resorts Worldwide, Inc.*,
  2005 WL 1877344 (W.D. Wash. Aug. 8, 2005) ......................................... 14

*Brewer v. Dodson Aviation*,
  447 F. Supp. 2d 1166 (W.D. Wash. 2006) ................................................. 20

*Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*,
  1 F.3d 947 (9th Cir. 1993) ............................................................................ 8

*Cheng v. Boeing Co.*,
  708 F.2d 1406 (9th Cir. 1983) ...................................................................... 2

*Clerides v. Boeing Co.*,
  534 F.3d 623 (7th Cir. 2008) ................................................................. 8, 12

*De Aguilar v. Boeing Co.*,
  11 F.3d 55 (5th Cir. 1993) ............................................................................ 8

*de Borja v. Razon*,
  835 F. App'x 184 (9th Cir. 2020) ............................................................... 10

*Enerwaste Int'l Corp. v. Energo S.R.L.*,
  2010 WL 11530855 (W.D. Wash. May 7, 2010), *rev'd and remanded on other*
  *grounds sub nom.* 421 F. App'x 686 (9th Cir. 2011) ............................. 15, 18

*Fortaner v. Boeing Co.*,
  504 F. App'x 573 (9th Cir. 2013) .................................................................. 2

*Gambra v. Int'l Lease Fin. Corp.*,
  377 F. Supp. 2d 810 (C.D. Cal. 2005) ........................................................ 21

*Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*,
  150 F.3d 1088 (9th Cir. 1998) ...................................................................... 8

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(NO. 22-cv-00393-TSZ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF AUTHORITIES (continued)**

2

**Page(s)**

3

*Gulf Oil Corp. v. Gilbert*,

4
   330 U.S. 501 (1947)..................................................................8, 10, 14, 15, 18, 20, 21

5

*In re Air Crash at Madrid, Spain, on Aug. 20, 2008*,
   893 F. Supp. 2d 1020 (C.D. Cal. 2011)....................................................9, 15, 19, 21

6

*In re Air Crash Near Peixoto De Azeveda, Brazil, on Sept. 29, 2006*,

7
   574 F. Supp. 2d 272 (E.D.N.Y. 2008), *aff'd sub nom.* 354 F. App'x 585
   (2d Cir. 2009)..................................................................................................... 18

8

*In re Air Crash Over Mid-Atl. on June 1, 2009*,

9
   760 F. Supp. 2d 832 (N.D. Cal. 2010).......................................................... 14, 16

10

*In re Air Crash Over S. Indian Ocean*,

11
   352 F. Supp. 3d 19 (D.D.C. 2018), *aff'd sub nom.* 946 F.3d 607
   (D.C. Cir. 2020)................................................................................................15, 18

12

*In re Air Crash Over Taiwan Straits on May 25, 2002*,

13
   331 F. Supp. 2d 1176 (C.D. Cal. 2004).........................................................12, 14

14

*In re Factor VIII or IX Concentrate Blood Prods. Litig.*,

15
   531 F. Supp. 2d 957 (N.D. Ill. 2008), *aff'd sub nom. Abad v. Bayer Corp.*,
   563 F.3d 663 (7th Cir. 2009) ........................................................................... 19

16

*King v. Cessna Aircraft Co.*,

17
   562 F.3d 137 4, 1382–85 (11th Cir. 2009) ....................................................... 8

18

*Kryvicky v. Scandinavian Airlines Sys.*,

19
   807 F.2d 514 (6th Cir. 1986)............................................................................ 8

20

*Lockman Found. v. Evangelical Alliance Mission*,
   930 F.2d 764 (9th Cir. 1991)............................................................................ 9

21

*Loya v. Starwood Hotels & Resorts, Worldwide, Inc.*,

22
   583 F.3d 656 (9th Cir. 2009)............................................................................ 9

23

*Lueck v. Sundstrand Corp.*,
   236 F.3d 1137 (9th Cir. 2001) .........................................................2, 8, 12, 13, 14, 19, 20

24

*MBI Grp., Inc. v. Credit Foncier du Cameroun*,

25
   558 F. Supp. 2d 21 (D.D.C. 2008), *aff'd*, 616 F.3d 568 (D.C. Cir. 2010)............................ 17

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES (continued)

**Page(s)**

*McCullars v. Latinoamericana de Servicios Aereos S.A.*,
No. 2021-003013-CA-01 (11th Judicial Cir., Miami-Dade Cnty., Feb. 5, 2021) ..............7, 16

*Miskow v. Boeing Co.*,
664 F.2d 205 (9th Cir. 1981) ......................................................................................... 2

*Nai-Chao v. Boeing Co.*,
555 F. Supp. 9 (N.D. Cal. 1982), *aff'd sub nom. Cheng v. Boeing Co.*, 708
F.2d 1406 (9th Cir. 1983) ........................................................................................10, 16, 17

*Nolan v. Boeing Co.*,
762 F. Supp. 680 (E.D. La. 1989), *aff'd*, 919 F.2d 1058 (5th Cir. 1990) .......................15, 16

*Pain v. United Tech Corp.*,
637 F.2d 775 (D.C. Cir. 1980) ...................................................................................8, 18

*Piper Aircraft Company v. Reyno*,
454 U.S. 235 (1981) .........................................1, 2, 8, 9, 10, 11, 16, 18, 19, 20

*Satz v. McDonnell Douglas Corp.*,
244 F.3d 1279 (11th Cir. 2001) .................................................................................8, 16

*Serje v. Rappi, Inc.*,
2021 WL 2633536 (N.D. Cal. June 25, 2021), *appeal dismissed*,
2021 WL 4911978 (9th Cir. Oct. 6, 2021) ................................................................... 9

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
549 U.S. 422 (2007) ...................................................................................................... 8

*Tjontveit v. Den Norske Bank ASA*,
997 F. Supp. 799 (S.D. Tex. 1998) ............................................................................ 17

*Torreblanca de Aguilar v. Boeing Co.*,
806 F. Supp. 139 (E.D. Tex. 1992) ............................................................................ 14

*Tuazon v. R.J. Reynolds Tobacco Co.*,
433 F.3d 1163 (9th Cir. 2006) .................................................................................... 9

*U.S.O. Corp. v. Mizuho Holding Co.*,
547 F.3d 749 (7th Cir. 2008) ..................................................................................... 17

*Van Cauwenberghe v. Biard*,
486 U.S. 517 (1988) ..................................................................................................... 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES (continued)**

**Page(s)**

*Van Schijndel v. Boeing Co.*,
    263 F. App'x 555 (9th Cir. 2008) ...................................................................2, 8

*Van Schijndel v. Boeing Co.*,
    434 F. Supp. 2d 766 (C.D. Cal. 2006), *aff'd sub nom.* 263 F. App'x 555
    (9th Cir. 2008).................................................................................................. 21

*Vivendi S.A. v. T-Mobile USA, Inc.*,
    2008 WL 2345283 (W.D. Wash. June 5, 2008), *aff'd sub nom.* 586 F.3d 689
    (9th Cir. 2009).................................................................................................. 14

*Zermeno v. McDonnell Douglas Corp.*,
    246 F. Supp. 2d 646 (S.D. Tex. 2003)............................................................. 20

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**INTRODUCTION**

2      This case should be dismissed on grounds of *forum non conveniens* because it has nothing

3 to do with Washington and everything to do with Colombia. Plaintiffs are the Colombian families

4 and personal representatives of two Colombian pilots who lost their lives when the airplane they

5 were flying on a domestic Colombian flight operated by a Colombian airline, carrying Colombian

6 passengers, crashed in Colombia. The accident airplane was manufactured almost 80 years before

7 the accident, during World War II, by the Douglas Aircraft Company ("Douglas") in Oklahoma

8 and delivered to the U.S. Army Air Force before being exported to Colombia in 1980, almost 40

9 years before the accident. Colombian aviation authorities led the accident investigation with no

10 involvement by Boeing and concluded that the airline's deficient operational procedures and

11 maintenance practices caused or contributed to the accident. The investigation issued multiple

12 safety recommendations to the airline and its Colombian regulator, but none to Boeing.

13      Nevertheless, Plaintiffs have sued Boeing here in Washington as the successor-in-interest

14 to Douglas for wrongful death and loss of consortium based on negligence and strict product

15 liability. But proving exactly what happened on the flight and why depends on evidence in

16 Colombia. That is where the parties must go to learn about the history and condition of the airplane,

17 the circumstances of the accident, and Plaintiffs' damages. It is also where litigation arising from

18 the accident has already been filed and the jurisdiction where the airline could be joined as a

19 defendant. Plaintiffs and their decedents have no connection to this state. And not surprisingly,

20 given the age and history of the subject airplane and the fact that it was not designed or

21 manufactured here, Plaintiffs have not identified a single witness or document located in

22 Washington. Nor does Washington have any meaningful interest in this case, which centers on a

23 model airplane that was never manufactured or designed here.

24      Under the doctrine of *forum non conveniens*, this case should be dismissed in favor of

25 refiling in Colombia. Courts in the Ninth Circuit and elsewhere routinely follow the Supreme

26 Court's decision in *Piper Aircraft Company v. Reyno*, 454 U.S. 235 (1981) and affirm *forum non*

*conveniens* dismissals in aviation accident cases like this one involving foreign flights and plaintiffs. *E.g.*, *Lueck v. Sundstrand Corp.*, 236 F.3d 1137 (9th Cir. 2001); *Cheng v. Boeing Co.*, 708 F.2d 1406 (9th Cir. 1983); *Miskow v. Boeing Co.*, 664 F.2d 205 (9th Cir. 1981); *Fortaner v. Boeing Co.*, 504 F. App'x 573 (9th Cir. 2013); *Van Schijndel v. Boeing Co.*, 263 F. App'x 555 (9th Cir. 2008).[1] As the Supreme Court observed in *Piper Aircraft*, "[t]he American interest in [a non-U.S.] accident is simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." 454 U.S. at 261; *see also Lueck*, 236 F.3d at 1147.

The case for dismissal here is just as strong, if not stronger, than it was in the above cases. The flight in this case never touched Washington, and the airplane was not designed or manufactured here. Almost all the relevant witnesses and evidence—Plaintiffs themselves, the decedents' medical records and doctors, Plaintiffs' fact witnesses, the airline and its records, the maintenance crews, the individuals with knowledge about the pilots' training and work history, and the Colombian investigating authority and its records—are located outside Washington. The only link to Washington that Plaintiffs can identify is that Boeing has some operations here, which is insignificant as a matter of law. Boeing is subject to and will not contest jurisdiction in Colombia, and further agrees to make available any evidence and witnesses in its possession, custody, or control that the Colombian court deems relevant. The Court should dismiss this case for refiling in Colombia.

---

[1] Indeed, numerous courts have followed and expanded upon *Piper Aircraft*'s reasoning in similar cases involving foreign aviation accidents. *See* Appendix A (collecting federal decisions dismissing actions involving foreign aviation accidents for *forum non conveniens*, 1980-present).

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–2

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## BACKGROUND

2

**A.     The accident airplane.**

3

Boeing's predecessor-in-interest, Douglas, delivered the accident airplane—a C-47 that

4

had been converted to be the equivalent of a DC-3—to the United States Army Air Force in 1945.[2]

5

Dkt. 1-2, Compl. ¶¶ 2, 3. The airplane was designed in California and manufactured in Oklahoma.

6

Declaration of Christopher Ledford ("Ledford Decl."), Ex. D; Declaration of Robert McIntosh

7

("McIntosh Decl."), ¶ 4. It was equipped with two Pratt & Whitney R1830-92 engines and

8

Hamilton Standard 23E50-500 propellers.[3] Dkt. 1-2, Compl. ¶ 4. The airplane was later transferred

9

to the United States Navy and then to the University of Texas at Austin, *see id.* ¶ 3, before it was

10

certified by the Federal Aviation Agency for commercial use and exported to Colombia in 1980,

11

*see* Ledford Decl., ¶ 5; *see also id.* Ex. B.

12

For the nearly forty years preceding the accident, the airplane was used for commercial

13

purposes within Colombia. *See* Ledford Decl., Ex. C. LASER obtained the airplane in 2015. *Id.*

14

Except for one instance in early 2009 when repairs were done on one of the airplane's engines at

15

a now-defunct shop in Florida, all repair and maintenance of the airplane's engines for at least the

16

ten years preceding the accident was performed in Colombia. *Id.* ¶ 8. Plaintiffs do not claim that

17

the engines or the propellers on the airplane at the time of the accident were manufactured, sold,

18

or delivered by Boeing or a Boeing predecessor. *See* Dkt. 1-2, Compl. ¶ 4.

19

**B.     The accident according to the accident report.**

20

On March 9, 2019, LASER was operating the airplane during a domestic flight from San

21

José del Guaviare, Colombia to Villavicencio, Colombia. *See* Ledford Decl., at Ex. A, GRIAA

22

Final Accident Report COL-19-10-GIA (2019) ("Accident Report") ¶ 1.1. There were three crew

23

members and eleven passengers on board. *Id.* The pilots, the decedents in this litigation, were both

24

25

26

---

[2] Douglas merged with McDonnell Aircraft and became McDonnell Douglas. Dkt. 1-2, Compl. ¶ 19. Boeing acquired McDonnell Douglas in 1997. *Id.* ¶ 20.

[3] Plaintiffs allege that the airplane had the same model engines at the time of the accident as it had at delivery. Dkt. 1-2, Compl. ¶ 4.

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–3

Colombian citizens and residents, *see* Ledford Decl., Exs. F & H (Plaintiffs' Responses to Boeing's Requests for Admission), and at least five of the passengers were residents of Colombia (the residence of the remainder is unknown), *see infra*, at 7. There is no evidence that any of the passengers or crew were citizens or residents of the United States.

About halfway through the flight, the airplane began having problems with one of its engines and the flight crew was not successful in "feathering" that engine's propeller, a process that changes the angle of the propeller blades to reduce drag when the engines are not providing power. Accident Report ¶ 1.1. The flight crew contacted a nearby air traffic control tower and attempted an emergency landing, but lost control of the airplane and crashed at a site known as Finca La Bendición in the municipality of San Martín, Colombia. *Id.* All of the airplane's occupants suffered fatal injuries. *Id.* ¶¶ 1.2, 1.3, 1.15. Colombian search and rescue teams and members of Colombia's Air Force in Apiay, Meta, responded to the accident. *Id.* ¶¶ 1.1, 1.15.

**C.  The investigation and its findings.**

The Grupo de Investigación de Accidentes Aéreos Colombia (the "GRIAA") is the accident investigation authority of Colombia. McIntosh Decl., ¶ 2. It investigated the accident with only minimal foreign assistance, and nearly all its investigation activities occurred in Colombia. Accident Report ¶ 1.1. The United States National Transportation Safety Board assigned one representative to assist with the investigation. Accident Report ¶ 1.1. Boeing did not participate or provide any assistance in the investigation, nor was it asked to do so. McIntosh Decl., ¶ 3.

GRIAA investigators traveled from Bogota, Colombia, where they are based, to the accident site in San Martín, Colombia, to examine the accident site. Accident Report ¶ 1.1. The deputy director of Colombia's civil aviation authority—Unidad Administrativa Especial de Aeronáutica Civil (the "UAEAC")—also traveled to the accident cite to coordinate assistance for the victims' families. *Id.* ¶ 1.11. Although the airplane's engines and propeller were sent to shops

in Florida for inspection, its other components, including its global positioning system,[4] were inspected and analyzed in Colombia. *Id.* ¶¶ 1.11, 1.16. GRIAA investigators also reviewed relevant records in Colombia, including LASER's operations, training, and flight crew records, as well as the airplane's maintenance and engineering records, the flight's dispatch records, and the air traffic control records related to the accident. *See id.* ¶¶ 1.5, 1.6, 1.9, 1.10, 1.11.1, 1.12, 1.17. Finally, GRIAA investigators interviewed numerous witnesses in Colombia, including LASER's maintenance, engineering, training, and operations personnel, and other witnesses with knowledge of the emergency response and recovery of the airplane's wreckage. *See id.* The preceding facts are based on the investigation's Final Accident Report, which is publicly available. The investigators never provided Boeing with any of the documents or other information they collected. McIntosh Decl., ¶ 3.

Based on this investigation, the GRIAA concluded that the probable causes of the accident were lack of oil in one of the engines, resulting in an inability to feather the propeller following engine failure, and deficiencies in LASER's operational procedures. Accident Report ¶ 3.3. The GRIAA identified multiple contributing factors to the crash, including deficient maintenance and improper repair of one engine's oil pressure line, failure to carry out an effective and reliable maintenance program, failure to verify the operating conditions of the airplane's components, and an inefficient safety management system, including weaknesses in operational procedures. *Id.* ¶ 3.2. All these contributing factors were attributed to failures on the part of LASER as the airplane's operator. *Id.* The GRIAA also found:

- "The lubrication line of the left engine's propeller lubrication system … reveal[ed] a repair that was not authorized on the basis of the standard practices established by the engine manufacturer." *Id.* ¶ 1.16.

- "The repair performed on the left engine lubrication line did not meet basic repair requirements …." *Id.*

---

[4] The airplane was not equipped with a cockpit voice recorder or flight data recorder. Accident Report ¶ 1.11.

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–5

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

- "The [lubrication] line installed in the crashed aircraft included non-aeronautical hardware items, and also evidenced an improper use of high porosity welds, which could cause materials to separate, leading to gradual oil leakage." *Id.*

- "[N]o risk assessment had been performed in anticipation of an engine failure during flight, in order for the crew members to proceed to emergency airports or runways; or to evaluate the option of returning to the starting airport. It is highly unlikely that any information about possible actions to be taken in the event of such hazardous conditions was available through [LASER's safety management system] or that it had been addressed by the crew." *Id.* ¶ 2.1.

- "[D]iscrepancies with the confirmation of completion of the 50-hour phase A service inspection, which should have been performed in accordance with the aircraft's maintenance schedule; there was no valid documentary support, nor were there any maintenance records to verify that this inspection had been completed. This condition highlights the lack of maintenance documentation control in the organization and creates uncertainty about the actual airworthiness of the aircraft." *Id.* ¶ 2.3.

- "[LASER's] organizational culture did not support a system that required the organization to assume a proactive role in hazard identification and risk reduction. [LASER] did not have an approved [safety management system], and there was no evidence of any plan to implement one." *Id.* ¶ 2.4.

The investigation report also noted that this was not the first time that the pilot had been involved in an accident involving a DC-3 aircraft, as another DC-3 he was piloting crashed in Colombia in 2016. *Id.* ¶ 1.5.

The GRIAA issued eight safety recommendations to improve air safety and to potentially prevent a similar incident from occurring in the future. *Id.* at 46–47. All those safety recommendations were issued to LASER and to the UAEAC. *Id.* No safety recommendations were issued to Boeing. *See id.*

D.   **The U.S. and Colombian litigation arising from the accident.**

In March 2022, representatives of the accident flight's pilots sued Boeing in the Superior Court of Washington, King County. *Ballesteros v. Boeing Co.*, No. 22-2-03357-6 (King Cnty. Super., Mar. 10, 2022). Boeing timely removed to this Court. Dkt. 1. Plaintiffs assert claims for wrongful death and loss of consortium based on the theory that the accident was caused by defects in the design of the accident airplane. Dkt. 1-2, Compl. ¶¶ 31–51. Plaintiffs allege that during the

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–6

*Perkins Coie LLP*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

accident flight, the airplane's left engine failed due to loss of oil pressure, which made it impossible for the pilots to "feather the propeller to reduce drag caused by the unpowered propeller." *Id.* This allegedly made the airplane difficult to control and caused it to crash when the pilots attempted an emergency landing. *See id.* ¶¶ 5, 10. Plaintiffs allege that the airplane was defectively designed because it "was designed with an engine and propeller system that would fail if the engine oil pressure failed, and without a redundant mechanism and/or source of energy to enable the propeller to be feathered." *Id.* ¶ 6.

Months before Plaintiffs brought claims against Boeing in Washington, other litigation regarding the cause of the crash was already proceeding elsewhere. In early 2021, the families of some of the passengers on the accident flight sued LASER and representatives of the pilots (*i.e.*, Plaintiffs in this case) in the Circuit Court for the 11th Judicial Circuit in and for Miami-Dade County, Florida. *See McCullars v. Latinoamericana de Servicios Aereos S.A.*, No. 2021-003013-CA-01 (11th Judicial Cir., Miami-Dade Cnty., Feb. 5, 2021). Plaintiffs in that case assert that the five decedent passengers they represent were all residents of Colombia. *See id.* at Dkt. 2, Compl. ¶¶ 5, 7, 9, 11, 13. In late 2021, LASER moved to quash service of process and to dismiss both for lack of personal jurisdiction and on the grounds of *forum non conveniens*. *See id.* at Dkt. 23. On January 10, 2023, the Florida court granted LASER's motion in part and dismissed it for lack of personal jurisdiction. *See id.* at Dkt. 32. The court denied the motion to quash service and did not address the substance of LASER's *forum non conveniens* argument. *See id.*

Litigation arising from the accident has also been filed by personal representatives of decedent passengers in Colombia against LASER and Allianz Seguros S.A., LASER's insurer. *See* Declaration of Daniel Posse Velasquez ("Posse Decl."), ¶¶ 3–4. In June 2021, two actions were filed in the 3rd Civil Circuit Court of Villavicencio. *Id.* ¶¶ 3.a, 3.b. Those actions were subsequently settled in September 2021 and March 2022 and dismissed. *See id.* ¶ 5; *see also id.* Exs. C, E. A third action was filed in November 2021 in the 1st Civil Circuit Court of Villavicencio (Meta). *Id.* ¶ 3.c. A settlement has also been reached in that action. *Id.* ¶ 5; *see also id.* Ex. G.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

## ARGUMENT

When deciding a *forum non conveniens* motion, a court first determines whether the alternative forum is adequate and available, providing jurisdiction to hear the claims and a "potential avenue for redress." *Ceramic Corp. of Am. v. Inka Mar. Corp. Inc.*, 1 F.3d 947, 948–49 (9th Cir. 1993). The court then weighs the factors set out by the Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). These include "private interest factors" that assess which forum would make the trial more "easy, expeditious, and inexpensive," as well as "public interest factors" that assess which forum has a greater substantive interest in the subject matter of the litigation. *Id.* at 507–09.

Plaintiffs' choice of a Washington forum is entitled to little deference in this analysis— though courts defer to a plaintiff's choice of forum in some instances, that choice is "less reasonable," is entitled to little deference, and "applies with less force" where, as in this case, none of the plaintiffs have any connection to that forum. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (quoting *Piper Aircraft*, 454 U.S. at 255–56). Additionally, a plaintiff's choice of forum is afforded less deference when, as here, the operative facts did not occur within the forum of original selection and that forum has no particular interest in the parties or the subject matter. *See Gemini Cap. Grp., Inc. v. Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998).

Here, the public and private factors all overwhelmingly favor dismissal. Courts routinely grant *forum non conveniens* dismissal in cases involving alleged injuries suffered by foreign plaintiffs during foreign air travel.[5] And under facts substantially similar to those presented here, courts have granted dismissal for refiling in the foreign jurisdiction where the accident occurred.

---

[5] *See, e.g.*, *Piper Aircraft*, 454 U.S. 235; *Lueck*, 236 F.3d at 1148; *Van Schijndel*, 263 F. App'x at 557; *Clerides v. Boeing Co.*, 534 F.3d 623, 629–30 (7th Cir. 2008); *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1382–85 (11th Cir. 2009); *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 (11th Cir. 2001); *De Aguilar v. Boeing Co.*, 11 F.3d 55, 58–59 (5th Cir. 1993); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 516–18 (6th Cir. 1986); *Pain v. United Tech Corp.*, 637 F.2d 775, 798–99 (D.C. Cir. 1980).

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–8

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    *See, e.g.*, *In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp. 2d 1020 (C.D. Cal.

2    2011) (subsequent history omitted). This Court should do the same.

3    **A.    Colombia is an available and adequate alternative forum.**

4         Dismissal on *forum non conveniens* grounds first requires that an alternative forum be

5    "available" and "adequate" to hear the plaintiffs' claims. *Piper Aircraft*, 454 U.S. at 254–55 &

6    n.22. That test is "easy to pass," *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th

7    Cir. 2006), and numerous federal courts have concluded that Colombian courts are available and

8    adequate to hear claims originally filed in the U.S., *see, e.g.*, *Serje v. Rappi, Inc.*, 2021 WL

9    2633536, at *1–2 (N.D. Cal. June 25, 2021) ("Colombia is an adequate alternative forum."), *appeal*

10   *dismissed*, 2021 WL 4911978 (9th Cir. Oct. 6, 2021); *see also* Appendix B (collecting cases).

11        Colombian courts are "available," as all parties are amenable to process, *see Tuazon*, 433

12   F.3d at 1178, and the parties are "clearly subject to Colombian jurisdiction," *Serje*, 2021 WL

13   2633536, at *1. Because the accident took place within Colombia, Plaintiffs are within the

14   jurisdiction of Colombian courts. *See* Declaration of Arturo Solarte Rodríguez ("Solarte Decl."),

15   ¶¶ 64–65. Boeing is also subject to the jurisdiction of Colombian courts for claims arising out of

16   the accident, *id.* ¶ 66, but to avoid any doubt, as a condition of dismissal in this Court, Boeing will

17   consent to jurisdiction. Ledford Decl., ¶ 2.

18        There also can be no doubt that Colombian courts are "adequate," as the jurisdiction offers

19   "some remedy." *See Loya v. Starwood Hotels & Resorts, Worldwide, Inc.*, 583 F.3d 656, 664 (9th

20   Cir. 2009). A forum is only inadequate in those "rare circumstances" where the remedy provided

21   is "so clearly inadequate or unsatisfactory that it is no remedy at all." *Lockman Found. v.*

22   *Evangelical Alliance Mission*, 930 F.2d 764, 768 (9th Cir. 1991) (quoting *Piper Aircraft*, 454 U.S.

23   at 254).

24        This is not one of those "rare circumstances." As set forth in the declaration of former

25   Colombian Supreme Court justice Arturo Solarte Rodriguez, Plaintiffs could maintain an action

26   against Boeing in Colombia, asserting claims and seeking relief comparable to those in this action.

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*See* Solarte Decl., ¶¶ 39, 52, 61; *see also id.* ¶¶ 46–52 (explaining the relevant liability regimes). Colombian courts also provide procedures for taking evidence from parties and third-party witnesses, including pretrial access to documents concerning the aircraft, the alleged events, and extent of the claimed injuries and losses; compulsory disclosure of parties' relevant, non-privileged documents; and subpoena power to compel disclosure of non-party documents for use at trial. *See id.* ¶¶ 87–93 (explaining the procedure and rules for requesting evidence in Colombia). Should Plaintiffs satisfy their burden, they can recover compensatory damages for pecuniary and non-pecuniary losses. *See id.* ¶¶ 53–61 (explaining damages regime). As in the U.S., litigants can appeal trial court rulings through multiple levels of appellate courts. *See id.* ¶¶ 104–115 (explaining appeals processes). This Court can readily conclude that Colombia presents an available and adequate forum. *See de Borja v. Razon*, 835 F. App'x 184, 186 (9th Cir. 2020) (defendants passed the "easy test" and established the availability and adequacy of foreign forum by presenting an expert declaration describing the law in the foreign forum and citing to cases in which the foreign forum was deemed available and adequate).

**B.     The public and private interest factors relevant to a *forum non conveniens* analysis weigh heavily in favor of dismissal.**

The second part of the *forum non conveniens* inquiry—whether the balance of private and public interest factors favors dismissal—is also satisfied because both prongs heavily favor Colombia. *Piper Aircraft*, 454 U.S. at 257.

**1.     The private interest factors all support dismissal in favor of a Colombian court.**

The private interest factors focus on identifying the more convenient forum for the parties, given the location of the proof, whether witnesses and documents are beyond the court's power, and the cost of producing them. *Gulf Oil*, 330 U.S. at 508. The Court may also consider "all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.* These factors weigh overwhelmingly in favor of dismissal and requiring Plaintiffs to litigate their claims in Colombia, where nearly all of the liability and damages evidence is located. *See Nai-Chao v.*

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–10

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

*Boeing Co.*, 555 F. Supp. 9, 17–18 (N.D. Cal. 1982) (concluding that the action would be "greatly facilitated" if that action proceeded in foreign forum due to the bulk of evidence related to liability and damages located there), *aff'd sub nom. Cheng*, 708 F.2d at 1406.

### a. The location of the evidence strongly favors Colombia.

Federal courts consistently emphasize the importance of trying cases in the forum that provides the greatest access to the most important sources of proof. *See Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988) (the "district court must … determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action"); *Piper Aircraft*, 454 U.S. at 257–58 (noting "few[] evidentiary problems would be posed if the trial were held in Scotland" and that a "large proportion of the relevant evidence is located in Great Britain"). That is plainly Colombia. Relevant, important evidence located in Colombia includes, but is not limited to:

| Evidence in Colombia | Controlling entity or entities |
|---|---|
| Personnel with first-hand knowledge of the maintenance, engineering, training, and operations activities of airline | LASER |
| Maintenance, engineering, and operations records relating to the accident airplane | LASER |
| Flight crew training records relating to the accident airplane | LASER |
| Personnel who trained the captain and co-pilot who were flying the accident airplane | LASER, various third parties |
| Airplane wreckage | LASER |
| Air traffic control personnel and records | UAEAC |
| Witnesses and records relating to the weather conditions at the time of the accident flight (including ground witnesses in the area) | Meteorological authorities |
| Witnesses and records relating to the search and rescue and emergency response teams | UAEAC, Colombia's Air Force |
| Families, friends, and other witnesses with first-hand knowledge of the decedent pilots' employment history and Plaintiffs' damages | Plaintiffs, various third parties |
| Health care providers and medical records for the decedents | Plaintiffs, various third parties |

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

| Evidence in Colombia | Controlling entity or entities |
| --- | --- |
| Employers and employment records for the decedents | LASER, Plaintiffs, various third parties |
| Records relating to claims for economic losses (including tax returns, bank records, property records, and other similar documents) for the decedents and the beneficiaries of their estates | Plaintiffs, various third parties |
| Air traffic control personnel and records | UAEAC |
| Colombian accident investigation records | GRIAA |

The most important sources of proof are thus in Colombia. With regard to liability, the Colombian accident investigation found that the "Probable Cause(s)" and "Contributing Factors" of the accident included LASER's operational procedures, maintenance program, and safety management system. Accident Report ¶¶ 3.2, 3.3. All of the evidence regarding those central issues is located in Colombia. Without access to that evidence, Boeing cannot defend against the claim that the accident was due to defects in the design of the airplane. *See Lueck*, 236 F.3d at 1146–47 (evidence relating to the airplane's maintenance, its flight crew, and the regulatory oversight and operations of the airline that was operating the airplane is particularly relevant to determining liability); *see also Clerides*, 534 F.3d at 629 (relevant liability evidence relating to flight crew, airline, and regulatory oversight was in Greece).

The location of "crucial" evidence relating to damages—such as "evidence relating to Plaintiffs' injuries, medical expense, and loss of earnings"—is also relevant to the *forum non conveniens* analysis. *Lueck*, 236 F.3d at 1146. Courts in aviation accident cases routinely grant dismissal for *forum non conveniens* when damages evidence is "overwhelmingly" located abroad and not readily accessible in the United States. *See, e.g.*, *In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1195–96 (C.D. Cal. 2004). Plaintiffs claim in their discovery responses that they cannot determine whether employment, medical, pilot training, and other records regarding the decedents—two Colombian citizens and residents, living in Colombia and employed by a Colombian airline to fly within Colombia—are located in Colombia or the United

1    States. *See* Ledford Decl., Exs. F & H (Plaintiffs' Responses to Boeing's Requests for Admission).

2    But there can be no serious dispute that all or nearly all such records are located in Colombia,

3    where the Plaintiffs' decedents lived and worked. This includes both the documents and third-

4    party witnesses necessary to evaluate Plaintiffs' claimed economic losses (such as testimony from

5    employers such as LASER and from accountants, documents such as tax returns, bank records,

6    pay stubs, employment records, and medical records regarding life expectancy, mental health

7    records, insurance proceeds), as well as their claimed non-economic losses (such as testimony of

8    family, friends, and others with knowledge of the relationships between decedents and

9    beneficiaries).

10              **b.     The existence of some evidence in the U.S. does not favor
                         trial in Washington.**

11              The fact that some relevant evidence exists in the U.S. does not outweigh the factors that

12   favor Colombia. Given the age of the accident airplane, much of the evidence relating to its design

13   and manufacture—particularly witnesses with first-hand knowledge of those facts—is likely no

14   longer available. However, to the extent records relating to the design, manufacture, and transfer

15   of the accident airplane for civilian use do still exist, Plaintiffs have already acknowledged that

16   those materials are "presumptively" within the control of Boeing, which means they can be made

17   equally available anywhere Boeing is sued. *See* Dkt. 29, Joint Status Report at 4. As a condition

18   of dismissal, Boeing agrees to produce in Colombia all the evidence or witnesses in its possession

19   or control that the Colombian court deems relevant. Ledford Decl., ¶ 2. In *Lueck*, the court held

20   that even though some evidence was located in the United States, dismissal on the grounds of

21   *forum non conveniens* was still appropriate because "the parties control, and therefore can bring

22   all the United States evidence to [the foreign jurisdiction]." 236 F.3d at 1147. Just as in *Lueck*, the

23   presence of such evidence in the U.S. is not a significant factor weighing against *forum non*

24   *conveniens* dismissal here because any evidence pertaining to Plaintiffs' defective design claims

25   in the U.S. is in Boeing's control. *See id.*

26

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

c.     The availability of evidence also weighs in favor of Colombia.

The Supreme Court, this Circuit, and this Court have all recognized the importance of choosing a forum where unwilling witnesses can be compelled to appear and provide evidence. *Gulf Oil*, 330 U.S. at 511; *Lueck*, 236 F.3d at 1147; *Beaudu v. Starwood Hotels & Resorts Worldwide, Inc.*, 2005 WL 1877344, at *4 (W.D. Wash. Aug. 8, 2005). Indeed, it is a dispositive private interest factor in some *forum non conveniens* cases. *See Lueck*, 236 F.3d at 1146–47. Because "district court[s] do[] not have the power to order the production or appearance of [foreign] evidence and witnesses," *id.*, if this case remains in Washington, Boeing will not be able to compel the production of critical documentary evidence located in Colombia, including the airline's maintenance, training, and operational records. Boeing and this Court would also be powerless to secure the appearance at trial of crucial witnesses such as employees of the airline who repaired and/or maintained the airplane or were responsible for the airline's operating procedures, and the families and friends of the decedents. *See* Solarte Decl., ¶¶ 94, 98; *see also Taiwan Straits*, 331 F. Supp. 2d at 1198; *Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 143–44 (E.D. Tex. 1992) (noting that the evidence in the air carrier's and investigating authority's control was beyond the U.S. court's subpoena power).

Instead, Boeing would be left to attempt to obtain that and other evidence in Colombia through the Hague Convention or a letter rogatory. *See* Solarte Decl., ¶¶ 94–98 (explaining processes for obtaining evidence through such mechanisms). But making such a request would be "incredibily burdensome," *Vivendi S.A. v. T-Mobile USA, Inc.*, 2008 WL 2345283, at *13 (W.D. Wash. June 5, 2008), *aff'd sub nom.* 586 F.3d 689 (9th Cir. 2009), and "there is no guarantee that either [request] would necessarily be successful in obtaining the evidence," *In re Air Crash Over Mid-Atl. on June 1, 2009*, 760 F. Supp. 2d 832, 843–44 (N.D. Cal. 2010). Even if the request was successful, obtaining the evidence would be time consuming and unnecessarily burdensome.[6] *See*

---

[6] Moreover, even for those witnesses who are willing to participate in a Washington trial, doing so will necessarily be "more costly" and "oppressive and vexatious" to everyone involved. *See*

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–14

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   Solarte Decl., ¶¶ 95–96, 99–100. And obtaining evidence this way would have other limitations,

2   such as not allowing Boeing to compel live testimony at trial and forcing it instead to rely on

3   deposition transcripts. *See In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d at 1032; Solarte

4   Decl., ¶¶ 94, 98 (noting that Colombian courts do not have the power and would not order an

5   individual to travel to the U.S. to provide trial testimony). Conducting a trial this way would

6   "create a condition not satisfactory to [the] court, jury or most litigants." *Gulf Oil*, 330 U.S. at 511.

7   "Courts regularly find that the inability to compel witnesses and evidence except through letters

8   rogatory is a compelling factor that weighs in favor of dismissal based on *forum non conveniens*."

9   *In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d 19, 43 (D.D.C. 2018) (Jackson, J.)

10  (collecting cases), *aff'd sub nom.* 946 F.3d 607 (D.C. Cir. 2020).

### d.   Litigating here, without the owner and operator of the airplane as a third-party defendant, unfairly prejudices Boeing.

12      Another private interest factor weighing in favor of dismissal is Boeing's likely inability

13  to join important third-party defendants. *See In re Air Crash Over S. Indian Ocean*, 352 F. Supp.

14  3d at 52. The fairest, most efficient trial would be a single proceeding where all potential

15  defendants can be joined with access to all the available evidence. If Plaintiffs' claims proceed in

16  Washington, that is unlikely to happen.

17      As noted, LASER's role in the facts giving rise to the accident goes to the heart of Boeing's

18  defense in this case. If Boeing can show that the accident was not caused by a design defect, but

19  rather, by the negligence of LASER as the airline, or the pilots it employed, Boeing will be relieved

20  of all liability. *Nolan v. Boeing Co.*, 762 F. Supp. 680, 684 (E.D. La. 1989), *aff'd*, 919 F.2d 1058

21  (5th Cir. 1990). But LASER is not present in Washington and if Boeing were to add it as a party

22  to this litigation, it is unlikely that this Court can exercise jurisdiction over LASER. *See*

23  *Baumgart v. Fairchild Aircraft Corp.*, 1991 WL 487242, at *6 (W.D. Tex. Sept. 30, 1991) ("While

24  the Court has jurisdiction over the estate of the pilot due to the estate's filing a cause of action that

---

26  *Enerwaste Int'l Corp. v. Energo S.R.L.*, 2010 WL 11530855, at *4–5 (W.D. Wash. May 7, 2010), *rev'd and remanded on other grounds sub nom.* 421 F. App'x 686 (9th Cir. 2011).

BOEING'S MOTION TO DISMISS FOR FORUM NON CONVENIENS
(No. 22-cv-00393-TSZ)–15

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   is now in this Court, the Court does not and cannot acquire jurisdiction over [the foreign

2   airline] ….”), *aff'd*, 981 F.2d 824 (5th Cir. 1993). Indeed, that is precisely what LASER has

3   already successfully argued in the Florida litigation filed against it by other representatives of

4   decedent passengers on the accident flight. *See McCullars*, No. 2021-003013-CA-01, Dkt. 32

5   (granting motion to dismiss for lack of personal jurisdiction).

6        In this court, where LASER will be an “empty chair” only, Boeing will lack access to

7   critical evidence from LASER and be limited in its ability to defend against Plaintiffs' claims. *See*

8   *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1284 n.4 (11th Cir. 2001) (noting the

9   ineffectiveness of the “empty chair[]” defense because the trier of fact “would have available only

10  one, rather than several, defendants to bear the brunt of its verdict and damage award”). This will

11  seriously prejudice Boeing because, “as a practical matter, the trier of fact cannot be expected to

12  evaluate fairly the relative liability of parties not present at the trial.” *See Nai-Chao*, 555 F. Supp.

13  at 19. Moreover, in the event of a verdict in Plaintiffs' favor, Boeing's only avenue for pursuing

14  contribution or indemnification from LASER would be by a separate action in another jurisdiction,

15  most likely in Colombia where LASER is susceptible to suit and has been successfully sued. *See*

16  *Piper Aircraft*, 454 U.S. at 243, 245 (recognizing that if a trial was held in the United States, the

17  “manufacturer could bring indemnity or contribution actions against the foreign defendants but “[i]t

18  would be far more convenient, however, to resolve all claims in one trial”). But, of course, this

19  could lead to a “conflicting resolution of the dispute.” *See Nolan*, 762 F. Supp. at 684.

20       A Colombian venue would eliminate all of this inconvenience and unfairness. “[T]he

21  ability to bring parties together in … a procedurally sensible fashion [in a foreign forum] is another

22  private interest factor favoring dismissal.” *In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 844.

23  If this case were to be dismissed in favor of litigation in Colombia, Plaintiffs or Boeing could join

24  LASER as a party to that action. Solarte Decl., ¶ 69. Colombia is thus a superior forum because

25  all the parties can be brought together and the “actions and/or claims can be consolidated there.”

26  *In re Air Crash Over Mid-Atl.*, 760 F. Supp. 2d at 844.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1
2

      **e.**    **Resolving Plaintiffs' claims in Washington will require burdensome and expensive translation of documents and testimony.**

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18

      Translation of documents and testimony is the last private interest factor that weighs heavily in favor of dismissal in this case. If Plaintiffs' claims are tried in Washington, much of the most relevant documents and witness testimony will need to be presented in Spanish and then translated into English for this Court, with accompanying delay, cost, and potential for mistakes. This has already posed hurdles. The Accident Report was issued in Spanish and had to be professionally translated into English. Ledford Decl., ¶ 3. The maintenance records that Plaintiffs provided with their initial disclosures—which were limited and incomplete—were also primarily in Spanish. *See id.* Ex. E. This will be an even greater hurdle if there ends up being a trial on damages, as nearly all the witnesses and evidence on that issue are in Colombia and likely only speak Spanish. *See Nai-Chao*, 555 F. Supp. at 18 ("Moreover, virtually all of the evidence relating to proof of damages is in [the foreign forum], where the overwhelming majority of claimants reside, and the difficulties of adjudicating these foreign damage claims would be compounded by the presence of language barriers and the necessity for translation."). The need to conduct a trial based largely on translated or interpreted evidence presents a significant burden that would adversely impact the cost-effective and expeditious resolution of Plaintiffs' claims in this Court. *Tjontveit v. Den Norske Bank ASA*, 997 F. Supp. 799, 808 (S.D. Tex. 1998).

19
20
21
22
23
24

      Other courts faced with this issue have held that the time, effort, and expense required for the translation of evidence weighs in favor of dismissal where it would be largely unnecessary in the alternative forum overseas. *See, e.g.*, *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008); *MBI Grp., Inc. v. Credit Foncier du Cameroun*, 558 F. Supp. 2d 21, 33–36 (D.D.C. 2008), *aff'd*, 616 F.3d 568 (D.C. Cir. 2010). Here too, this private factor favors dismissal of Plaintiffs' claims in favor of litigating those claims in their home forum of Colombia.

25
26

                                           \*\*\*

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

In sum, the private interest factors heavily favor dismissal in this case because it is "readily apparent that the majority of anticipated evidence" relevant to Plaintiffs' claims and Boeing's defenses is in Colombia, not Washington. *Enerwaste*, 2010 WL 11530855, at *5. For the same reason, Washington is not a convenient forum to litigate these issues. The evidence that is most important and that goes to the heart of Plaintiffs' claims will be arduous and slow to obtain, and in some cases, may not be accessible at all in Washington. And even for the documents and witnesses that can be made available in Washington, nearly all will require English translation, which not only takes additional time and expense, but imposes further burdens on the Court. Finally, even apart from these difficulties, Boeing will be unfairly prejudiced by its inability to join LASER as a party to the action.

### 2.   The public interest factors support dismissal in favor of a Colombian court.

The public interest factors examine which forum has a greater substantive interest in the litigation. *Gulf Oil*, 330 U.S. at 507–09. These factors also point toward Colombia. Plaintiffs' contention that a design issue with an airplane that was manufactured in the U.S. caused the accident does not "tilt the public interest in favor of retaining jurisdiction where [foreign] events are the primary catalyst for litigation initiated by foreign plaintiffs." *In re Air Crash Over S. Indian Ocean*, 352 F. Supp. 3d at 50–51 (quoting *In re Air Crash Near Peixoto De Azeveda, Brazil, on Sept. 29, 2006*, 574 F. Supp. 2d 272, 288 (E.D.N.Y. 2008), *aff'd sub nom.* 354 F. App'x 585 (2d Cir. 2009)).

### a.   Colombia's interest in deciding this dispute is great; Washington has minimal interest, if any.

It is well-settled that, because there is "local interest in having localized controversies decided at home," *Piper Aircraft*, 454 U.S. at 260 (quoting *Gulf Oil*, 330 U.S. at 509), this Court "may legitimately encourage trial of controversies in the localities in which they arise," *Pain v. United Techs. Corp.*, 637 F.2d 775, 791 (D.C. Cir. 1980). Here, "[t]he accident occurred in [Colombia] as a [Colombian] airline with [Colombian] pilots and crew and

carrying … [Colombian] passengers attempted to fly from one [Colombian] city to another." *In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d at 1038. It was investigated by Colombian authorities who issued eight safety recommendations, all of them to Colombian entities. Accident Report at 46–47. In these circumstances, "[t]he significance of [Colombia]'s local interest cannot be disputed." *In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d at 1038.

By contrast, Washington interest is insignificant. The aircraft was neither designed nor manufactured in Washington. In fact, it was designed and manufactured by Douglas more than fifty years before Boeing merged with McDonnell Douglas in 1997. Plaintiffs do not claim (nor could they) that the airplane was ever operated or maintained in Washington. Plaintiffs have not identified any documents or witnesses located in Washington. *See* Ledford Decl., Exs. G, I (Plaintiffs' Responses and Amended Responses to Boeing's First Set of Interrogatories). The location of Boeing's commercial aircraft division in Washington does not change this analysis, especially since there is no claim that Boeing provided any information or support to LASER for the aircraft or otherwise participated in the accident investigation from Washington. *See In re Factor VIII or IX Concentrate Blood Prods. Litig.*, 531 F. Supp. 2d 957, 978 (N.D. Ill. 2008) (headquarters and manufacturing facility in forum was not "in any way comparable to the interests of" foreign jurisdiction, where the injuries occurred), *aff'd sub nom. Abad v. Bayer Corp.*, 563 F.3d 663 (7th Cir. 2009).

Even if Washington did have marginal connections that were relevant, they would not outweigh Colombia's strong and overriding interest in the much more recent events that occurred within its borders and in the provision of legal remedies to its own citizens. *See Lueck*, 236 F.3d at 1147. And any generalized interest that Washington or the U.S. has in regulating a U.S. company is "simply not sufficient to justify the enormous commitment of judicial time and resources that would inevitably be required if the case were to be tried here." *Piper Aircraft*, 454 U.S. at 261. Colombia's interest in the safety of products used within its borders and in protecting the health and safety of its residents is far superior. *See Lueck*, 236 F.3d at 1147.

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–19

*Perkins Coie LLP*
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

### b.    Colombian law will likely govern this dispute.

There can be little doubt that Colombian law will govern Plaintiffs' claims.[7] *See Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1176 n.5 (W.D. Wash. 2006) ("In personal injury cases, the most significant contact is presumptively the place where the injury occurred."); *Zermeno v. McDonnell Douglas Corp.*, 246 F. Supp. 2d 646, 654–56 (S.D. Tex. 2003) (applying the same "most significant relationship" test that Washington applies to substantially similar facts as here and concluding that the foreign forum's law would apply). This too weighs in favor of dismissal. *See Piper Aircraft*, 454 U.S. at 251 (*forum non conveniens* is "designed in part to help courts avoid conducting complex exercises in comparative law"); *Lueck*, 236 F.3d at 1148 n.6 (because the law of the foreign forum was "likely to apply in this suit, the choice of law determination weighs in favor of dismissal"). Although this Court certainly can apply foreign law, the burden of doing so cannot be justified when there is another jurisdiction with a significantly greater interest in the litigation and greater expertise in the applicable law. *See Gulf Oil*, 330 U.S. at 509 ("There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflicts of laws, and in law foreign to itself.").

### c.    There is no reason to burden a Washington trier of fact with the expense of a trial.

Given Colombia's overwhelming interest in this matter, there is no reason to unnecessarily burden this Court with the task of adjudicating Plaintiffs' claims. This is not a run-of-the-mill lawsuit. Discovery and trial of Plaintiffs' claims would be technical, complex, and voluminous. This action will require the trier of fact to delve into flight operations and engineering questions regarding the proper design, manufacture, and operation of a seventy-five-year-old Douglas DC-3 airplane and its engines and propellers, among other issues. It will also require consideration of

---

[7] By making this assertion, Boeing does not waive or concede that Colombian law applies, but rather expressly reserves the right to invoke and/or object to the application of any particular body of substantive law in the future, as may be appropriate to the facts and circumstances of the case.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

the individual damages claims (both economic and non-economic) of non-Washington residents. Retaining this action could impose considerable and unwarranted burdens on Washington and its citizens, whose tax dollars would have to support the expense of trying this case and whose time could be taken up by sitting as jurors. *Gambra v. Int'l Lease Fin. Corp.*, 377 F. Supp. 2d 810, 825 (C.D. Cal. 2005); *see also Gulf Oil*, 330 U.S. at 508–09 ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation."). The Court will likely have to deal with any foreign discovery issues, which will be time-consuming and potentially impose significant delays. If the case proceeds to trial, there will also be the need to assure that translation and testimony from foreign witnesses is accurate, which could impose significant costs on the Court. The complexity of this case ensures that trial will consume a significant amount of court and litigant time and resources and "impede the ability of local litigants to try their cases in this district." *Van Schijndel v. Boeing Co.*, 434 F. Supp. 2d 766, 782 (C.D. Cal. 2006), *aff'd sub nom.* 263 F. App'x 555 (9th Cir. 2008).

Given Colombia's overwhelming interest and that Washington has no interest, these significant burdens upon this forum "are not justified." *See In re Air Crash at Madrid, Spain*, 893 F. Supp. 2d at 1042 (collecting cases).

## CONCLUSION

For all the foregoing reasons, Plaintiffs' claims should be dismissed on the grounds of *forum non conveniens*.

1   Dated: February 16, 2023

2

By: s/ *Christopher Ledford*

Christopher Ledford, WSBA No. 44515
Erik B. Kundu, WSBA No. 56746
3   **Perkins Coie LLP**
1201 Third Avenue, Suite 4900
4   Seattle, WA 98101-3099
Telephone: 206.359.8000
5   Facsimile: 206.359.9000
Email: cledford@perkinscoie.com
6   Email: ekundu@perkinscoie.com

7

Alletta Brenner, WSBA 59772
8   **Perkins Coie LLP**
1120 NW Couch Street, 10th Floor
9   Portland, Oregon 97209-4128
Telephone: 503.727.2000
10   Facsimile: 503.727.2222
Email: abrenner@perkinscoie.com

11

12

*Attorneys for Defendant The Boeing Company*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BOEING'S MOTION TO DISMISS FOR FORUM
NON CONVENIENS
(No. 22-cv-00393-TSZ)–22