THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA DEL ROSSARIO JARAMILLO
BALLESTEROS, as Personal Representative of
the ESTATE OF JAIME CARRILLO
MONTENEGRO, a Florida estate, and as
Guardian of M.F.C.J., a minor; and RAQUEL
JAVELA ROJAS as Personal Representative of
the ESTATE OF JAIME EDUARDO HERRERA
ROMERO, and Guardian of J.M.H.J., a minor,

Plaintiffs,

v.

THE BOEING COMPANY, a Delaware
Corporation,

Defendant.

No. 22-cv-00393-TSZ

DECLARATION OF ARTURO
SOLARTE RODRÍGUEZ IN
SUPPORT OF BOEING'S MOTION
TO DISMISS

DECLARATION OF ARTURO SOLARTE
RODRÍGUEZ IN SUPPORT OF BOEING'S
MOTION TO DISMISS

## **TABLA DE CONTENIDOS**

**I.**      INTRODUCCIÓN

**II.**     SISTEMA LEGAL COLOMBIANO

**III.**    ABOGADOS

**IV.**     PODER JUDICIAL Y EL SISTEMA DE JUSTICIA COLOMBIANO

**V.**      LOS SISTEMAS DE RESPONSABILIDAD CIVIL APLICABLES AL CASO

    A.    Responsabilidad civil extracontractual por daños

    B.    Responsabilidad por producto defectuoso

    C.    Daños

**VI.**     LA COMPETENCIA DE LOS TRIBUNALES COLOMBIANOS

    C.    Jurisdicción

    D.    Prescripción

**VII.**    LA PRESENTACIÓN DE LA DEMANDA, PROCEDIMIENTO APLICABLE
AL PROCESO Y LA OBTENCIÓN DE PRUEBAS EN COLOMBIA

    A.    Inicio del proceso judicial

    B.    Solicitudes probatorias

    C.    Costas del proceso

    D.    Apelaciones

**VIII.**   EL INTERÉS PÚBLICO DE COLOMBIA EN ESTE CASO

**IX.**     CONCLUSIÓN

Solarte Asesores Jurídicos S.A.S.

## I.      INTRODUCCIÓN

1.    Soy abogado titulado en la jurisdicción colombiana, portador de la tarjeta profesional No. 46.031, expedida por el Consejo Superior de la Judicatura. En mi trayectoria profesional se destaca mi desempeño como secretario general de Colmena (hoy Banco Caja Social), vicepresidente jurídico de la Fundación Social (hoy Fundación Grupo Social), socio de la firma Santos, Munévar & Jaramillo, director del Departamento de Derecho Privado de la Facultad de Ciencias Jurídicas de la Pontificia Universidad Javeriana, magistrado de la Sala de Casación Civil de la Corte Suprema de Justicia, y conjuez de la Corte Constitucional y del Consejo de Estado. En la actualidad soy abogado en ejercicio por medio de la firma Solarte Asesores Jurídicos S.A.S., profesor universitario, y árbitro de los Centros de Arbitraje y Conciliación de las Cámaras de Comercio de Bogotá y Medellín.

2.      Esta opinión fue solicitada por THE BOEING COMPANY. Las manifestaciones en esta declaración son verdaderas y correctas según mi mejor conocimiento del derecho colombiano y mi experiencia profesional.  Si me llaman a declarar en este asunto, podría y declararía de la siguiente manera.

3.    Me encuentro afiliado a las siguientes asociaciones de carácter profesional o académico:

(a) Instituto Colombiano de Responsabilidad Civil y del Estado - IARCE.

(b) Asociación Colombiana de Derecho de Seguros

(c) Comité Colombiano de Arbitraje

(d) Latin American International Arbitration – LIA

**Solarte Asesores Jurídicos S.A.S.**

4.   Obtuve mi título de abogado el 16 de marzo de 1988 y mi tarjeta profesional fue expedida el 18 de octubre de 1988. En esa época la autoridad competente para otorgar la tarjeta profesional a los abogados era el Ministerio de Justicia y hoy tiene esa atribución el Consejo Superior de la Judicatura.

5.   Mi experiencia y las acreditaciones de la misma están desarrolladas en mi *Curriculum vitae* que adjunto a esta opinión legal como Anexo 1.

6.   Conozco la moción de *Forum Non Conveniens,* en virtud de la cual el Tribunal que está adelantando un proceso, con fundamento en criterios de justicia, economía procesal y conveniencia, reconoce la existencia de otro Tribunal que puede resultar más apropiado para conocer el caso y, por consiguiente, declina su competencia para remitir el caso al foro que resulta más adecuado.

7.   Para la elaboración de esta opinión, revisé (i) la demanda presentada por MARÍA DEL ROSSARIO JARAMILLO BALLESTEROS, en calidad de vocera de la SUCESIÓN DE JAIME CARRILLO MONTENEGRO, y de tutora de M.F.C.J., menor de edad; y RAQUEL JAVELA ROJAS como vocera de la SUCESIÓN DE JAIME EDUARDO HERRERA ROMERO, y tutora de J.M.H.J., menor de edad; (ii) la contestación a la demanda presentada por THE BOEING COMPANY; (iii) el Informe Final del Accidente COL-19-10-GIA realizado por el Grupo de Investigación de Accidentes - GRIAA; y (iv) la legislación, jurisprudencia y doctrina colombiana que son relevantes y aplicables al fondo del asunto.

8.   Es mi entendimiento que la parte demandante está conformada por MARÍA DEL ROSARIO JARAMILLO BALLESTEROS, quien es residente y ciudadana colombiana; M.F.C.J., menor de edad, quien es residente y ciudadana colombiana; RAQUEL JAVELA ROJAS, quien actualmente es residente en California y es ciudadana colombiana; y J.M.H.J., quien actualmente

**Solarte Asesores Jurídicos S.A.S**.

es residente en Canadá y es ciudadano colombiano. La parte demandada incluye a THE BOEING COMPANY, una corporación de Delawere.

9.   Según se observa en la demanda, los demandantes pretenden, en síntesis, que se declare que THE BOEING COMPANY es responsable por los daños que aquellos afirman haber sufrido como consecuencia del accidente aéreo ocurrido el 9 de marzo de 2019, que fundamentan, en primer término, en la presunta presencia de un producto defectuoso en la aeronave accidentada. Indican, en esencia, que el motor izquierdo de la aeronave presentaba fallas por una caída en la presión de aceite y que, como consecuencia de esa circunstancia, los pilotos no pudieron abanderar la hélice para compensar la falla del motor, lo que tuvo como resultado un accidente fatal para los pilotos y los pasajeros de la aeronave.

10.   En segundo lugar, con fundamento en un alegato de negligencia, los demandantes pretenden que se declare que THE BOEING COMPANY es responsable de los daños sufridos por los demandantes por haber incumplido su deber de ejercer un grado razonable de cuidado para efectos de no causar daños a terceros. Según el concepto de los demandantes, si THE BOEING COMPANY hubiera diseñado, fabricado, modificado, reparado, mantenido, respaldado, inspeccionado y/o probado de manera adecuada la aeronave, y si hubiera proporcionado capacitaciones, instrucciones, advertencias u otra información relevante con respecto al diseño de la aeronave, se hubiera podido evitar el accidente.

11.   Basado en mi conocimiento y experiencia, tengo el convencimiento de que los tribunales de Colombia proporcionan un foro adecuado, y tienen competencia para conocer el caso. Además, tengo la certeza de que los jueces colombianos pueden adelantar el proceso de manera adecuada, con plena observancia del debido proceso de las partes, y pueden adoptar una decisión justa, basada en el derecho aplicable.

## II.   SISTEMA LEGAL COLOMBIANO

12.   Colombia es un Estado Social de Derecho, organizado en forma de República unitaria, con descentralización administrativa de sus entidades territoriales, según lo señala el artículo 1º de la Constitución Política. Se trata de un modelo de Estado que se diferencia de los sistemas federales, por cuanto se caracteriza por la "*unidad de mando supremo, unidad en todos los ramos de la legislación, unidad en la administración de justicia y, en general, unidad en las decisiones de carácter político que tienen vigencia para todo el espacio geográfico nacional*."[1]

13.   La estructura del Estado, como lo indica el artículo 113 de la Constitución Política, está determinada por la separación del poder público en tres ramas: (i) la legislativa, (ii) la ejecutiva y (iii) la judicial. Lo anterior, sin perjuicio de la existencia de órganos autónomos e independientes para el cumplimiento de las demás funciones del Estado. La separación de poderes implica que las diferentes ramas del poder público ejercen funciones separadas, sin perjuicio de que deban articularse para colaborar armónicamente en la consecución de los fines del Estado.

## III.   PODER JUDICIAL Y EL SISTEMA DE JUSTICIA COLOMBIANO

14.   La rama judicial es la rama del poder público a la que se ha asignado la función  de la administración de justicia, entendida esta como "*la parte de la función pública que cumple el Estado encargada por la Constitución Política y la ley de hacer efectivos los derechos, obligaciones, garantías y libertades consagrados en ellas, con el fin de realizar la convivencia social y lograr y mantener la concordia nacional*."[2] Colombia es una jurisdicción de derecho civil,

---

[1] Corte Constitucional de Colombia. Sentencia C-216 de 1994. M.P. Vladimiro Naranjo Mesa.
[2] Ley 270 de 1996. *Ley Estatutaria de Administración de Justicia*. Artículo 1º.

como la mayoría de países de Latinoamérica y Europa. La principal fuente de derecho es la legislación, que suele estar codificada.

15. En Colombia, para que una persona pueda ocupar el cargo de Juez de la República, debe acreditar los siguientes requisitos: (i) ser colombiano de nacimiento, ciudadano en ejercicio y estar en pleno goce de sus derechos civiles; (ii) tener título de abogado expedido o revalidado conforme a la ley; y (iii) no estar incurso en causal de inhabilidad o incompatibilidad[3]. Adicionalmente, dependiendo del cargo, la persona debe acreditar algunos años de experiencia en el ejercicio de la profesión de abogado[4].

16. Si se cumplen los requisitos antes reseñados, el aspirante podrá inscribirse y participar en un concurso de méritos organizado por el Consejo Superior de la Judicatura. De aprobar satisfactoriamente el concurso, la persona quedará registrada en una lista de elegibles, que será remitida a la autoridad nominadora para que decida sobre los nombramientos. Para el caso de los jueces de la República, la autoridad nominadora es el Tribunal Superior de Distrito Judicial correspondiente[5].

17. En Colombia, la rama judicial está inspirada en el sistema judicial francés y español. La rama judicial está dividida en cuatro jurisdicciones: (a) la jurisdicción "ordinaria", que se explicará con detalle más adelante; (b) la jurisdicción contencioso administrativa, encargada de dirimir controversias suscitadas entre los particulares y el Estado; (c) la jurisdicción constitucional, encargada de resolver sobre la constitucionalidad de las leyes y de unificar la jurisprudencia en materia de derechos fundamentales; y (d) las jurisdicciones especiales, como la jurisdicción indígena o la jurisdicción penal militar. Teniendo en cuenta la finalidad de esta declaración,

---

[3] Ley 270 de 1996. *Ley Estatutaria de Administración de Justicia*. Artículo 127.
[4] Ley 270 de 1996. *Ley Estatutaria de Administración de Justicia*. Artículo 128.
[5] Ley 270 de 1996. *Ley Estatutaria de Administración de Justicia*. Artículo 131.

**Solarte Asesores Jurídicos S.A.S.**

proseguiré a continuación con el análisis de la jurisdicción "ordinaria", por cuanto es la jurisdicción relevante para este tipo de casos.

18. La jurisdicción "ordinaria" es la encargada de conocer todos los asuntos que no estén atribuidos por la Constitución o la ley a otra jurisdicción. En ese sentido es una jurisdicción residual o general. Específicamente, la jurisdicción ordinaria es la encargada de resolver las disputas civiles, comerciales, de familia, laborales y los asuntos penales.

19. Esta jurisdicción está conformada por la Corte Suprema de Justicia —como órgano de cierre—, los Tribunales Superiores de los diferentes Distritos Judiciales y los jueces civiles, laborales, penales, agrarios, de familia y los demás especializados y promiscuos que se creen conforme a la ley. Tratándose de procesos civiles y comerciales, los procesos pueden ser de única o de doble instancia, dependiendo de la cuantía de la controversia.

20. Excepcionalmente la Corte Suprema de Justicia puede llegar a conocer de los procesos civiles. Lo hace a través del recurso extraordinario de casación, que puede ser interpuesto en aquellos casos en los que, en esencia, la sentencia de segunda instancia, proferida por un Tribunal Superior de Distrito Judicial, haya violado una norma jurídica de carácter sustancial, por errores estrictamente jurídicos o por yerros de naturaleza probatoria o también por algunos vicios específicos en el trámite del proceso judicial, tales como la incongruencia o la nulidad que no haya sido saneada.

21. Si la controversia objeto de este estudio fuera del conocimiento de los jueces colombianos la competencia le correspondería, en primera instancia, a un juez civil municipal o a un juez civil del circuito, dependiendo de la cuantía de las pretensiones de la demanda. Si el valor

**Solarte Asesores Jurídicos S.A.S.**

de lo solicitado supera los 40 salarios mínimos legales mensuales vigentes[6] en Colombia, pero es inferior a 150 salarios mínimos legales mensuales vigentes[7], el conocimiento del caso le correspondería a un juez civil municipal. Si, por el contrario, el valor de lo pretendido supera los 150 salarios mínimos legales mensuales vigentes, que probablemente sería el caso si los demandantes radican la demanda en Colombia, el conocimiento del proceso le sería asignado a un juez civil del circuito. En este último supuesto, la apelación de la sentencia de primera instancia le correspondería a un Tribunal Superior de Distrito Judicial, y en caso de que la sentencia de segunda instancia le genere a alguna de las partes un *agravio* superior de 1.000 salarios mínimos[8], el asunto podría llegar al conocimiento de la Corte Suprema de Justicia por la vía del recurso extraordinario de casación.

22.  Las normas procesales que rigen las controversias civiles y comerciales se encuentran contenidas en la Ley 1564 de 2012, que contiene el Código General del Proceso. Las normas sustanciales aplicables son, por regla general, las contenidas en el Código Civil y en el Código de Comercio, sin perjuicio de la existencia de regímenes especiales dependiendo del asunto sometido al conocimiento de la jurisdicción.

23.  En Colombia, el acceso a la administración de justicia, consagrado en el artículo 229 de la Constitución Política, es considerado un derecho fundamental de todas las personas. Este derecho "*ha sido entendido como la posibilidad reconocida a todas las personas de poder acudir, en condiciones de igualdad, ante las instancias que ejerzan funciones de naturaleza jurisdiccional que tengan la potestad de incidir de una y otra manera, en la determinación de los derechos que*

---

[6] 40 salarios mínimos legales mensuales vigentes corresponden, en 2023, a $46.400.000 pesos colombianos. Esta suma equivale a USD9.700,53, según la tasa representativa del mercado de la fecha (15 de febrero de 2023).
[7] 150 salarios mínimos legales mensuales vigentes corresponden, en 2023, a $174.000.000 pesos colombianos. Esta suma equivale a USD36.377,01, según la tasa representativa del mercado de la fecha (15 de febrero de 2023).
[8] 1.000 salarios mínimos legales mensuales vigentes corresponden, en 2023, a $1.160.000.000 pesos colombianos. Esta suma equivale a USD242.513,44, según la tasa representativa del mercado de la fecha (15 de febrero de 2023).

Solarte Asesores Jurídicos S.A.S.

*el ordenamiento jurídico les reconoce, para propugnar por la integridad del orden jurídico y por la debida protección o restablecimiento de sus derechos e intereses legítimos, con estricta sujeción a los procedimientos previamente establecidos y con plena observancia de las garantías sustanciales y procedimentales previstas en la Constitución y la Ley.*"[9]

24.  El derecho de acceso a la administración de justicia tiene una estrecha relación con el derecho fundamental al debido proceso, consagrado en el artículo 29 de la Constitución Política. Este derecho comprende el conjunto de garantías previstas en el sistema jurídico mediante las cuales se busca la protección del individuo involucrado en un proceso judicial, con el fin de que se respeten sus derechos y se logre la aplicación correcta de la justicia en el caso particular.

25.  En todos los procesos judiciales en Colombia, los jueces, en sus providencias, solo están sometidos al imperio de la ley —entendiendo que en esta expresión se incluye, obviamente, la Constitución Política—. Esta previsión, consagrada en el artículo 230 de la Constitución Política, es una garantía de autonomía, imparcialidad e igualdad, porque en toda actuación judicial el juez está obligado a aplicar la ley[10]. La equidad, la jurisprudencia, los principios generales del derecho y la doctrina son criterios auxiliares en la actividad judicial[11].

## IV.    ABOGADOS

26.  Cuando se inicia una acción civil en Colombia, el acceso a la administración de justicia debe hacerse a través de un abogado, en virtud del derecho de postulación consagrado en el artículo 73 del Código General del Proceso. En este contexto, toda acción iniciada en Colombia, por regla general, requiere de la asesoría y representación de un abogado.

---

[9] Corte Constitucional de Colombia. Sentencia T-799 de 2011. M.P. Humberto Antonio Sierra Porto.
[10] Corte Constitucional de Colombia. Sentencia C-284 de 2015. M.P. Mauricio González Cuervo.
[11] Constitución Política de Colombia. Artículo 230.

27. En Colombia, es abogado quien obtiene el correspondiente título universitario de conformidad con las exigencias académicas y legales, según lo establece el artículo 3 del Decreto 196 de 1971, "*Por el cual se dicta el estatuto del ejercicio de la abogacía*". Las exigencias académicas varían dependiendo de las universidades, pero generalmente incluyen programas de estudio de cinco años, prácticas en despachos judiciales, entidades públicas u oficinas de abogados, así como la elaboración de monografías y exámenes específicos de las distintas áreas del derecho que se presentan al final de la carrera. Solo se podrá obtener el título de abogado una vez se cumpla satisfactoriamente con las mencionadas exigencias.

28. Para ejercer la profesión, se requiere estar inscrito como abogado y ser portador de una tarjeta profesional, expedida por el órgano competente que actualmente es el Consejo Superior de la Judicatura.

29. Los abogados tienen una serie de deberes profesionales que están consagrados en el artículo 47 del Estatuto de la Abogacía y en el artículo 28 de la Ley 1123 de 2007, que corresponde al Código Disciplinario del Abogado. De esos deberes se destacan: (i) el deber de obrar con lealtad y honradez en sus relaciones profesionales; (ii) el deber de guardar el secreto profesional; y (iii) el deber de atender con celosa diligencia sus encargos profesionales.

30. Por regla general, las personas que deben comparecer a un proceso lo deben hacer a través de un abogado[12], al cual se le debe otorgar un poder para el efecto. Salvo estipulación en contrario, el poder que se le otorga a un abogado para litigar se entiende conferido para "*solicitar medidas cautelares extraprocesales, pruebas extraprocesales y demás actos preparatorios del proceso, adelantar todo el trámite de este, solicitar medidas cautelares, interponer recursos ordinarios, de casación y de anulación y realizar las actuaciones posteriores que sean*

---

[12] Ley 1564 de 2012. "*Código General del Proceso*". Artículo 73.

**Solarte Asesores Jurídicos S.A.S.**

*consecuencia de la sentencia y se cumplan en el mismo expediente, y cobrar ejecutivamente las condenas impuestas en aquella. El apoderado podrá formular todas las pretensiones que estime conveniente para beneficio del poderdante. El poder para actuar en un proceso habilita al apoderado para recibir la notificación del auto admisorio de la demanda o del mandamiento ejecutivo, prestar juramento estimatorio y confesar espontáneamente. Cualquier restricción sobre tales facultades se tendrá por no escrita. El poder también habilita al apoderado para reconvenir y representar al poderdante en todo lo relacionado con la reconvención y la intervención de otras partes o de terceros.*"[13]

31. En las diligencias judiciales, todos los actos procesales los deberá realizar el abogado, salvo aquellos reservados por la ley a la parte misma como, por ejemplo, absolver el interrogatorio de parte. Tampoco podrá el abogado allanarse o disponer del derecho en litigio sin contar con una autorización expresa del poderdante[14].

32. La legislación colombiana no prevé un régimen específico para la fijación de los honorarios de los abogados. En este sentido, es válido que las partes pacten una *cuota litis*, entendida esta última como "*el pacto que se suscribe entre el abogado y su cliente cuyo objeto es la obtención de un porcentaje del objeto del pleito, siempre que este se gane. Se caracteriza, además, porque el profesional asume el cubrimiento de todos los gastos de la gestión que se comprometió a desarrollar conlleve.*"[15] La licitud de este tipo de pactos ha sido reconocida por la jurisprudencia.[16]

---

[13] Ley 1564 de 2012. *Código General del Proceso.* Artículo 77.
[14] Ibid.
[15] Corte Constitucional de Colombia. Sentencia T-1143 de 2003. M.P. Eduardo Montealegre Lynett.
[16] Corte Suprema de Justicia. Sala de Casación Laboral. Sentencia SL.2385-2018 de 9 de mayo de 2018. M.P. Jorge Luis Quiroz Alemán. Corte Suprema de Justicia. Sala de Casación Civil. SC5669-2018 de 19 de diciembre de 2018. M.P. Ariel Salazar Ramírez.

**Solarte Asesores Jurídicos S.A.S.**

33.  La determinación de la cuantía de los honorarios profesionales debe provenir de un acuerdo de las partes, y ordinariamente se origina en una propuesta de prestación de servicios que presenta el abogado, que debe ser aceptada por el cliente. Sin embargo, los honorarios no pueden ser desproporcionados, según lo ha indicado la jurisprudencia del Consejo Superior de la Judicatura. Esta Corporación ha establecido cinco criterios para determinar si los honorarios cobrados por el abogado son desproporcionados: (i) el trabajo efectivamente desplegado por el litigante; (ii) el prestigio del mismo; (iii) la complejidad del asunto; (iv) el monto o la cuantía; y (v) la capacidad económica del cliente[17].

34.  Si una persona no puede pagar los honorarios de un abogado, tiene la posibilidad de acudir a instituciones privadas, como la Fundación Pro bono, o a los consultorios jurídicos de las universidades, que ofrecen asistencia gratuita a las personas que así lo soliciten. Igualmente, en el proceso judicial las personas que no se hallen en la posibilidad de atender los gastos del proceso "*sin menoscabo de lo necesario para su propia subsistencia (…)*" pueden solicitar el *"amparo de pobreza"*, caso en el cual a quien le sea reconocido ese beneficio no estará obligado a prestar cauciones procesales ni a pagar expensas, honorarios de auxiliares de la justicia u otros gastos, ni tampoco será condenado en costas, además de lo cual el Juez le designará un apoderado que lo represente en el proceso.

35.  En consecuencia, en el evento de que los demandantes del caso objeto de este estudio presenten una demanda en Colombia, deberán hacerlo a través de un apoderado judicial, que debe ser un abogado inscrito y portador de una tarjeta profesional. En Colombia existe una amplia cantidad de firmas de abogados, así como abogados independientes, que podrán representar a los

---

[17] Consejo Superior de la Judicatura, Sala Jurisdiccional Disciplinaria. Sentencia de 1 de octubre de 2014. M.P. Wilson Ruiz Orejuela. Radicación No. 110011102000201302017 01.

**Solarte Asesores Jurídicos S.A.S.**

demandantes en cualquier procedimiento judicial. En efecto, en Colombia hay abogados que representan a demandantes en procesos por lesiones personales, homicidio culposo, responsabilidad civil y responsabilidad por producto defectuoso. Según mi experiencia, los demandantes de este caso podrán conseguir un abogado colombiano que ejerza su representación.

## V.     LOS SISTEMAS DE RESPONSABILIDAD CIVIL APLICABLES AL CASO

36.  Por regla general, en Colombia, quien causa un daño a otro está obligado a repararlo, siempre que concurran los demás requisitos que la ley impone para que surja la obligación indemnizatoria. Estos requisitos son, en esencia, la existencia de una acción u omisión, un factor de atribución (ordinariamente, la culpa), un daño o perjuicio y una relación causal entre la acción u omisión y el daño.

37.  Los daños pueden presentarse como consecuencia de la violación del deber genérico de no causar daño a otro (caso de la responsabilidad civil extracontractual) o por la violación de deberes originados en vínculos previos, singulares y concretos, que hayan surgido entre personas determinadas (caso de la responsabilidad contractual). Esto significa, entonces, que en Colombia existen dos grandes regímenes de responsabilidad civil: la responsabilidad contractual y la responsabilidad extracontractual.

38.  Aunque la ley no establece una diferenciación de régimen jurídico utilizando la mencionada nomenclatura, el Código Civil regula, por una parte, los efectos de las obligaciones que tienen como fuente principal un contrato (artículos 1602 a 1617) y, por la otra, la "*responsabilidad común por los delitos y las culpas*" (artículos 2341 a 2360). Allí están consagradas las normas básicas de los dos regímenes básicos de responsabilidad civil, la

**Solarte Asesores Jurídicos S.A.S.**

"*responsabilidad civil contractual*" y la "*responsabilidad civil extracontractual*", respectivamente.

39. En caso de que los demandantes, es decir, la señora María del Rossario Jaramillo Ballesteros, en calidad de vocera de la sucesión de Jaime Carrillo Montenegro, y en calidad de tutora de M.F.C.J., menor de edad, y Raquel Javela Rojas, como vocera de la sucesión de Jaime Eduardo Herrera Romero y tutora de J.M.H.J., menor de edad, decidan presentar una demanda en Colombia, podrían formular pretensiones similares a las planteadas en la demanda radicada en el Tribunal Superior de Washington, Condado de King.

40. Considero que los demandantes podrían formular pretensiones, bajo el régimen de responsabilidad civil extracontractual, dirigidas a que se declare que THE BOEING COMPANY es civilmente responsable por los daños patrimoniales y extrapatrimoniales que hayan sufrido como consecuencia del fallecimiento de los señores Jaime Carrillo Montenegro y Jaime Eduardo Herrera Romero en el accidente aéreo ocurrido el 9 de marzo de 2019 y que, como consecuencia de lo anterior, aquella compañía sea condenada al pago de la indemnización correspondiente. Lo anterior, sin que me corresponda realizar un pronunciamiento sobre la vocación de prosperidad de tales pretensiones y sin evaluar el eventual éxito de los medios de defensa de la demandada.

41. Igualmente, estimo que los demandantes podrían formular pretensiones con el objetivo de que se declare que THE BOEING COMPANY, en su calidad de sucesora de la fabricante de la aeronave accidentada, es responsable por los daños ocasionados por un producto defectuoso. En el mismo sentido de lo señalado anteriormente, formulo este planteamiento sin evaluar la probabilidad de que tales pretensiones prosperen y sin realizar una evaluación sobre la vocación de éxito de los medios de defensa de la demandada.

42.  Los dos tipos de pretensiones antes mencionados serían posibles en Colombia porque la legislación nacional prevé, por una parte, un régimen de responsabilidad civil extracontractual por daños y, por la otra, un régimen de responsabilidad por producto defectuoso. Dichos regímenes podrían ser aplicables.

### A.      Responsabilidad civil extracontractual por daños

43.  Según ya se ha señalado, cuando una persona causa daños a otra, sin que exista entre ellas un vínculo jurídico previo, y se verifica que existe un criterio que permita imputarle la responsabilidad a la primera, porque actuó con dolo o culpa, o, excepcionalmente y en supuestos establecidos por la ley, por haber creado un riesgo o haber asumido posición de garante, surge para aquella la obligación de indemnizar a la víctima los perjuicios que se le hayan causado.

44.  De manera general, la responsabilidad civil extracontractual requiere que en el proceso judicial se acrediten los siguientes elementos: (i) una conducta de quien causó el daño, generalmente antijurídica; (ii) un daño o perjuicio; (iii) una relación que causalidad que permita imputarle los daños al sujeto demandado; (iv) y un criterio en virtud del cual se le atribuya la responsabilidad a este último, generalmente de naturaleza subjetiva (dolo o culpa) y excepcionalmente de carácter objetivo (riesgo o posición de garante, principalmente).

45.  En la responsabilidad civil extracontractual se distinguen los siguientes subsistemas: (i) la responsabilidad civil directa o por el hecho propio, en la que, por regla general, el demandante debe acreditar la culpa del demandado; (ii) la responsabilidad civil indirecta o por el hecho ajeno, en la que existe una presunción de culpa en contra del demandado, que puede ser desvirtuada por este; (iii) la responsabilidad civil por las cosas que se tienen bajo guarda, en la que generalmente se presume la culpa de aquel al que se le imputa la responsabilidad;  y (iv) la responsabilidad civil

Solarte Asesores Jurídicos S.A.S.

por actividades peligrosas, en la que no se requiere probar la culpa del demandado, y este, en su defensa, solo puede acreditar lo que se denomina un factor extraño (caso fortuito o fuerza mayor, hecho exclusivo de un tercero o hecho exclusivo de la víctima) con el fin de desvirtuar la imputación que se le hace.

### B.  Responsabilidad por productos defectuosos

46.  En Colombia existe un régimen de responsabilidad civil a cargo del fabricante de un producto defectuoso con el que se hayan causado daños a terceros. Debe señalarse, en primer término, que este sistema de responsabilidad tiene fundamento constitucional. En efecto, en el artículo 78 de la Constitución Política se establece que *"[s]erán responsables, de acuerdo con la ley, quienes en la producción y en la comercialización de bienes y servicios, atenten contra la salud, la seguridad y el adecuado aprovisionamiento a consumidores y usuarios"*. El régimen legal está consagrado en los artículos 19 a 22 del Estatuto del Consumidor (Ley 1480 de 2011)[18].

47.  Según este Estatuto, un producto defectuoso es *"aquel bien mueble o inmueble que en razón de un error en el diseño, fabricación, construcción, embalaje o información, no ofrezca la razonable seguridad a la que toda persona tiene derecho"*[19]. Lo anterior significa, entonces, que para que un producto sea considerado como defectuoso, se debe probar que tiene un defecto que afecta —o puede llegar a afectar— la seguridad a la que legítimamente pueden aspirar las personas. Sobre el particular, la doctrina nacional ha señalado que *"la noción de defecto no se corresponde con los llamados vicios ocultos o vicios redhibitorios, esto es, los que imposibilitan o dificultan el*

---

[18] De conformidad con la jurisprudencia, antes de la expedición de la Ley 1480 de 2011 la responsabilidad por productos defectuosos derivaba directamente de la Constitución y tenía fundamento en la existencia de una obligación de seguridad a cargo del fabricante, deber que se consideraba como "de resultado". Corte Constitucional. Sentencia C-1411 de 2000. M.P. Eduardo Cifuentes Muñoz; Corte Suprema de Justicia. Sala de Casación Civil. Sentencia de 30 de abril de 2009. M.P. Pedro Octavio Munar Cadena.

[19] Ley 1480 de 2011. *Estatuto del Consumidor.* Artículo 5.

**Solarte Asesores Jurídicos S.A.S.**

*empleo de la cosa para su uso natural, ni alude tampoco a la ineficiencia, inoperancia o inutilidad del producto, 'ni a su falta de aptitud para el uso para el que fue adquirido; sino a la ausencia de las condiciones de seguridad a que tiene derecho el público, excluyendo, por supuesto, cualquier utilización abusiva' (Chavarro Cadena, 2012, p.35)."* [20]

48.   Por lo anterior, los jueces pueden encontrar acreditada la existencia de un defecto en el producto si se materializa el riesgo de seguridad. A manera de ejemplo, si un consumidor que adquiere un horno microondas para fines domésticos, pero, al momento de usarlo, el microondas explota, se podría concluir que el producto es defectuoso, en la medida en que no se garantizaron los mínimos de seguridad que un consumidor promedio esperaría al adquirirlo.

49.   Ahora bien, de conformidad con el Estatuto del Consumidor, para la determinación de la responsabilidad por producto defectuoso el afectado deberá demostrar el defecto del bien —que debe entenderse en los términos antes expuestos—, el daño que haya sufrido y la relación de causalidad entre el defecto del bien y el daño cuya reparación se pretende[21]. Teniendo en cuenta lo anterior, se considera que en este sistema el factor de atribución de la responsabilidad es de carácter objetivo -o *estricto*- pues no es necesario acreditar el dolo o la culpa del productor o fabricante, y este no se puede exonerar de la imputación de responsabilidad demostrando su propia diligencia[22].

50.   El productor y el expendedor son solidariamente responsables de los daños causados por los defectos de los productos que elaboran o comercializan. Cuando no se indique

---

[20] Ramírez, Diego F. *La responsabilidad por productos defectuosos en el nuevo Estatuto del Consumidor: análisis, retos y perspectivas.* En Derecho del Consumo. Tras un lustro del Estatuto del Consumidor en Colombia. Universidad de los Andes. Bogotá. 2018. Pp. 93-94.
[21] Ley 1480 de 2011. *Estatuto del Consumidor.* Artículo 21.
[22] Tamayo Jaramillo, Javier. *Responsabilidad por productos defectuosos.* Legis Editores S.A. 2016. P. 66.

expresamente quién es el productor, se entenderá que es aquella persona que ponga su firma, nombre, marca o signo distintivo en el producto[23].

51.  Solo son admisibles como causales de exoneración de la responsabilidad por daños por producto defectuoso las siguientes: 1) por fuerza mayor o caso fortuito; 2) cuando los daños ocurran por culpa exclusiva del afectado; 3) por el hecho de un tercero; 4) cuando el fabricante no haya puesto el producto en circulación;   5) cuando el defecto es consecuencia directa de la elaboración, rotulación o empaquetamiento del producto conforme a normas imperativas existentes, sin que el defecto pudiera ser evitado por el productor sin violar dicha norma; 6) cuando en el momento en que el producto haya sido puesto en circulación, el estado de los conocimientos científicos y técnicos no permitía descubrir la existencia del defecto.

52.  Si los demandantes radican una demanda en Colombia en contra de THE BOEING COMPANY, el régimen antes descrito podría resultar aplicable. Los demandantes podrían, por ejemplo, formular pretensiones encaminadas a que se declare la responsabilidad civil por producto defectuoso de THE BOEING COMPANY, en su calidad de sucesora del fabricante de la aeronave involucrada en el accidente o de alguno de sus componentes. En este evento, los accionantes tendrían que probar (i) el defecto de la aeronave o de sus componentes —entendido en los términos ya explicados—; (ii) el daño que sufrieron y los perjuicios que reclaman; y (iii) la relación de causalidad entre el defecto del bien y el daño alegado. De no probar alguno de estos elementos, no se podría considerar a THE BOEING COMPANY como civilmente responsable por ese motivo.

### C.      Daños

---

[23] Ley 1480 de 2011. *Estatuto del Consumidor.* Artículo 20.

**Solarte Asesores Jurídicos S.A.S.**

53.  Cuando se formulan en una demanda pretensiones de responsabilidad civil contractual o de responsabilidad civil extracontractual, el demandante puede solicitarle al juez que se condene al demandado a pagar una reparación por los daños patrimoniales o extrapatrimoniales que haya sufrido y que sean imputables al accionado.

54.  Los daños resarcibles pueden ser, en primer término, los daños patrimoniales, es decir, (i) el daño emergente (la pérdida o disminución de activos del demandante valorables en dinero o los gastos realizados); (ii) el lucro cesante (la pérdida de ganancias que se habrían obtenido en una sucesión normal de acontecimientos); o (iii) la pérdida de oportunidad (afectación de una situación idónea para obtener una ganancia o para evitar una pérdida). Estos daños pueden ser pasados o futuros, dependiendo de si se concretaron con anterioridad a la sentencia o si se van a materializar con posterioridad.

55.  Por otra parte, es posible reclamar la reparación de los daños extrapatrimoniales, entendidos como aquellos que afectan intereses vinculados con los derechos de la personalidad o con la esfera afectiva o emocional de las personas y que, por ende, no son estimables en dinero. Estos daños incluyen, en materia civil, el daño moral, el daño a la vida de relación y el daño a los bienes personalísimos de especial relevancia constitucional.

56.  Un demandante, en virtud del régimen de responsabilidad por producto defectuoso, puede reclamar daños patrimoniales o extrapatrimoniales que se deriven de: (a) la muerte o las lesiones personales causadas por el producto defectuoso; (b) los deterioros o detrimentos producidos en cosas diferentes al producto defectuoso[24]. Debe entenderse que acreditados los daños podrán ser reparados los perjuicios patrimoniales o extrapatrimoniales que el demandante

---

[24] Ibid.

**Solarte Asesores Jurídicos S.A.S.**

demuestre en el proceso, entendiendo que estos últimos corresponden a las consecuencias adversas que el hecho dañoso genera en los reclamantes, en los términos de los ¶ 54 y 55.

57. La valoración de los daños en Colombia debe atender a los principios de reparación integral, de equidad y a los criterios técnicos actuariales, según lo establece el artículo 16 de la Ley 446 de 1998. El principio de reparación integral tiene como propósito buscar que el demandante quede en la misma situación en la que estaría si el hecho dañoso nunca lo hubiera afectado, por lo que la reparación debe cubrir todas las consecuencias perjudiciales que haya sufrido el reclamante y que se puedan imputar al demandado.

58. En Colombia no existe un límite máximo respecto de la indemnización de perjuicios que se puede reconocer a un demandante por los daños patrimoniales en el marco de un proceso civil —es decir, daño emergente, lucro cesante o pérdida oportunidad—. El demandante puede aspirar a que se le repare en su totalidad o de manera integral todo el daño que haya sufrido[25] y que sea imputable al demandado. La eventual condena que reciba el demandado se circunscribe a (i) lo pretendido en la demanda y (ii) lo probado en el proceso. Así lo establece el artículo 281 del Código General del Proceso, según el cual *"[n]o podrá condenarse al demandado por cantidad superior o por objeto distinto del pretendido en la demanda ni por causa diferente a la invocada en esta. Si lo pedido por el demandante excede de lo probado se le reconocerá solamente lo último.*"

59. Distinto es el caso de los daños extrapatrimoniales —en materia civil el daño moral, daño a la vida de relación y, con carácter excepcional, el daño a bienes jurídicos de especial protección constitucional—, pues la jurisprudencia nacional sí ha señalado un límite que se puede reconocer. Así, por ejemplo, tratándose del daño moral por los casos de máxima intensidad, *v.gr.*,

---

[25] Ley 1564 de 2012. *Código General del Proceso.* Artículo 283, párrafo final.

**Solarte Asesores Jurídicos S.A.S.**

muerte de un pariente cercano o del cónyuge, la Sala de Casación Civil de la Corte Suprema de Justicia ha señalado que la indemnización, por regla general, no debería superar la suma de sesenta millones de pesos colombianos (COP 60.000.000)[26]. Sin embargo, debe tenerse en cuenta que, al ser una directriz jurisprudencial y no un tope establecido legalmente, en circunstancias excepcionales los jueces pueden adoptar una decisión diferente, superando esa cuantía, para lo cual deberán incluir en la providencia la correspondiente motivación.

60.  Por ejemplo, la Corte Suprema de Justicia, al estudiar el caso de las víctimas de un acto terrorista ocurrido en el país indicó lo siguiente, al concluir que se trataba de un caso excepcional: *"en efecto, las circunstancias del inmenso dolor que se refleja en la ferocidad y barbarie de las acciones padecidas por los demandantes daban, con toda seguridad, lugar a que el Tribunal impusiera una condena acorde con esa realidad, así fuese tomando la suma que como guía por entonces tenía la Corte establecida desde 2012 y que, frente a la indecible atrocidad de los eventos narrados y probados en este proceso ameritan -para ese caso en particular- una suma mayor a la que entonces tenía dispuesta (60.000.000.oo) y que hoy reajusta a setenta y dos millones de pesos (72.000.000.oo) por el daño moral propio  sufrido por los demandantes (...)"*[27].

61.  En caso de que los demandantes decidan radicar una demanda en Colombia, podrán solicitar la indemnización por los daños patrimoniales y extrapatrimoniales que hayan sufrido como consecuencia del fallecimiento en el accidente de sus esposos y padres. Como se explicó anteriormente, los daños patrimoniales podrían incluir el lucro cesante, el daño emergente y la pérdida de oportunidad sufridos. Igualmente, los daños extrapatrimoniales podrían incluir el daño moral, el daño a la vida de relación y el daño a bienes de especial relevancia constitucional, este

---

[26] Ver, por ejemplo: Corte Suprema de Justicia. Sala de Casación Civil. Sentencia SC5686 de 2018 del 19 de diciembre de 2018. MP: Margarita Cabello Blanco. Esta cantidad corresponde, según la tasa de cambio de la fecha, 15 de febrero de 2023, a USD12.543,79.
[27] *Ibid.*

Solarte Asesores Jurídicos S.A.S.

último en cuanto resultara viable, lo que no resulta claro en el caso, pues los antecedentes jurisprudenciales lo han referido, por ejemplo, a afectaciones a la honra, al buen nombre o a la privacidad. Ahora bien, en cada caso, los demandantes deberán aportar y solicitar el decreto de las pruebas que acrediten la ocurrencia y la cuantía de los daños cuya reparación pretenden.

## VI.   LA COMPETENCIA DE LOS TRIBUNALES COLOMBIANOS

62.   Como se explicará a continuación, no existe impedimento legal o procesal para que los demandantes presenten en Colombia la reclamación que han entablado contra THE BOEING COMPANY por las consecuencias del accidente aéreo ocurrido el 9 de marzo de 2019, porque los Tribunales nacionales tienen jurisdicción y competencia para conocer del caso que es objeto de análisis en este estudio.

### A.   Jurisdicción

63.   Se me ha informado que Boeing está dispuesto a someterse, como condición para una desestimación por el *formun non conveniens* de esta acción, a la jurisdicción personal en Colombia, en caso de que los demandantes radiquen en este país una demanda en los 120 días siguientes a la desestimación de la acción por parte del Tribunal que actualmente conoce del asunto.

64. Los Tribunales colombianos tienen jurisdicción para conocer de procesos judiciales que se originen en hechos dañosos ocurridos en el territorio nacional[28]. Así lo señala expresamente el artículo 28, numeral 6º, del Código General del Proceso, en virtud del cual, tratándose de procesos originados en responsabilidad civil extracontractual, "*es también competente el juez del lugar en donde sucedió el hecho*".

---

[28] Ley 1564 de 2012. Código General del Proceso. Artículo 28.

**Solarte Asesores Jurídicos S.A.S.**

65. De esta manera, los Jueces colombianos tendrían jurisdicción y competencia para conocer los procesos que versen sobre accidentes aéreos ocurridos dentro del país, con independencia de quiénes sean las potenciales partes de esos procesos. Por lo anterior, los Tribunales colombianos también tendrían competencia para practicar todas las pruebas que sean oportunamente solicitadas y decretadas y que guarden relación con el objeto del litigio.

66. En ese contexto, los Tribunales colombianos tendrían jurisdicción sobre THE BOEING COMPANY, como demandado en un potencial proceso judicial, teniendo en cuenta que el accidente aéreo ocurrió dentro del territorio nacional, esto de conformidad con los términos del numeral 6º del artículo 28 de la Ley 1564 de 2012, antes mencionado. Igualmente, los Tribunales colombianos también tendrían jurisdicción sobre la aerolínea LASER, por la misma razón.

67. Es pertinente indicar también que los Tribunales colombianos tendrían jurisdicción sobre terceros que resulten relevantes para el proceso. Los jueces en Colombia deben decretar, a petición de parte o de oficio, las pruebas que sean útiles para la verificación de los hechos alegados por las partes[29]. Por esta razón, los terceros pueden ser sujetos de órdenes judiciales, en lo que respecta a aportar o exhibir documentos que tengan en su poder, o a comparecer al proceso a rendir su testimonio, según sea el caso.

68. En este caso, existen terceros cuya participación podría ser relevante para el desarrollo del proceso judicial, especialmente en lo relativo a la recolección y práctica de pruebas. Por ejemplo, la aerolínea LASER, entidad que puede tener información sobre la aeronave, los pilotos y lo sucedido durante el accidente; la Fuerza Aérea Colombiana, la Policía Nacional, la Defensa Civil y las agencias colombianas de respuesta a emergencias, quienes fueron los primeros en llegar al lugar del accidente; el Grupo de Investigación de Accidentes Aéreos de Colombia —GRIAA—

---

[29] Ley 1564 de 2012. *Código General del Proceso.* Artículo 169.

**Solarte Asesores Jurídicos S.A.S.**

de la Aeronáutica Civil, que fue el encargado de investigar y realizar el informe final sobre el accidente objeto de esta controversia; y la Unidad Administrativa Especial de la Aeronáutica Civil de Colombia ("UAEAC"), que también participó en la investigación del accidente. Otros terceros que estén ubicados en Colombia y que tengan pruebas relevantes podrían incluir a: las entidades que fueron propietarias de la aeronave con anterioridad a que fuera adquirida por LASER; entidades que realizaron el mantenimiento de la aeronave; e individuos y entidades que tengan conocimiento de los daños alegados por los demandantes, como los empleadores de las víctimas, proveedores de salud e instituciones financieras. Si los demandantes radicaran su demanda contra THE BOEING COMPANY en Colombia, los Tribunales tendrían jurisdicción sobre estos terceros y podrían oficiarles para que colaboren aportando las pruebas que tengan en su poder.

69. Si los demandantes interpusieran una demanda en Colombia, también podrían hacer valer una reclamación contra LASER, sobre la que el Tribunal también tendría jurisdicción. Del mismo modo, si los demandantes presentaran una demanda en Colombia, pero no hicieran valer una reclamación contra LASER, THE BOEING COMPANY podría solicitar su vinculación al proceso. Este tipo de vinculaciones se pueden hacer a través de las figuras procesales del litisconsorcio necesario y del llamamiento en garantía, en los términos de los artículos 61 y 64 del Código General del Proceso.

70. He sido informado de que ya se han iniciado otros procesos judiciales en Colombia en contra de LASER por el accidente objeto de este litigio. Esta situación es relevante porque (i) demuestra que los Tribunales de Colombia pueden ser un foro adecuado para el conocimiento de este tipo de procesos; y (ii) habilita la posibilidad de que las pruebas que fueron decretadas y practicadas en esos procesos sean trasladadas y valoradas dentro del marco del proceso que se

**Solarte Asesores Jurídicos S.A.S.**

podría adelantar en Colombia por los demandantes. Esto permitiría una mayor celeridad en la etapa probatoria, y podría conducir a que la sentencia final sea dictada en un menor tiempo.

### B.    Prescripción

71.  Según el artículo 2512 del Código Civil colombiano, "*la prescripción es un modo (…) de extinguir las acciones o derechos ajenos por (…) no haberse ejercido dichas acciones y derechos durante cierto lapso de tiempo, y concurriendo los demás requisitos legales.*" Su consolidación se supedita a (i) que la acción sea prescriptible; (ii) que transcurra el término legalmente establecido para la extinción de la acción; y (iii) que el titular del derecho de acción se abstenga de ejercer el derecho en ese término. El término de prescripción se cuenta desde la fecha en que la obligación se haya hecho exigible[30].

72.  El término de prescripción varía dependiendo de la acción de que se trate. Por ejemplo, en el caso de la acción de responsabilidad civil extracontractual el término es de diez (10) años contados desde la ocurrencia del hecho generador del daño cuya reparación se solicita, mientras que el de la acción ejecutiva, para el cobro de obligaciones exigibles, es de cinco (5) años.

73.  El Estatuto del Consumidor no establece un término de prescripción para la acción de responsabilidad por producto defectuoso y la Corte Suprema de Justicia no ha emitido aún un pronunciamiento al respecto. Por esta razón, este ha sido un asunto discutido en la doctrina nacional. En mi concepto, como no existe una norma aplicable en el Estatuto del Consumidor, pues el régimen de garantías es diferente al régimen de responsabilidad por producto defectuoso, considero que el término de prescripción es el general de las acciones ordinarias —mediante el

---

[30] Código Civil de Colombia. Artículo 2535.

**Solarte Asesores Jurídicos S.A.S.**

cual se solicitan declaraciones y condenas—, esto es, de diez (10) años[31], que empezarían a contarse desde el momento en que se produzca el daño.

74. Quien se beneficie por la prescripción puede renunciar a ella, en los términos del artículo 2514 del Código Civil. La renuncia puede ser expresa o tácita. Se entiende que es tácita, por ejemplo, si el interesado no la alega dentro de un proceso judicial, pues el juez no la puede declarar de oficio[32].

75. Aplicados los anteriores conceptos al caso concreto, se observa que todavía no ha operado la prescripción de la acción de responsabilidad civil extracontractual, ni tampoco de la acción de responsabilidad por producto defectuoso que podrían adelantar los demandantes, pues no han transcurrido más de diez años desde la fecha en que ocurrió el accidente.

76. En todo caso, aun si hubiera operado, THE BOEING COMPANY podría renunciar a alegar la prescripción por la vía de excepción.

## VII. LA PRESENTACIÓN DE LA DEMANDA, PROCEDIMIENTO APLICABLE AL PROCESO Y LA OBTENCIÓN DE PRUEBAS EN COLOMBIA

### A. Inicio del proceso judicial

77. Antes de promover una demanda de carácter civil o comercial, por regla general es necesario agotar una fase previa, consistente en un intento de conciliación extrajudicial en derecho ante un conciliador debidamente facultado para el efecto. El ordenamiento aplicable busca que las partes logren solucionar sus diferencias mediante un mecanismo autocompositivo de resolución

---

[31] Código Civil de Colombia. Artículo 2536.
[32] Código Civil de Colombia. Artículo 2513.

de conflictos. Si no se lleva a cabo la conciliación, la demanda, una vez presentada, será inadmitida por la autoridad judicial correspondiente, de conformidad con el numeral 7 del inciso tercero del artículo 90 del Código General del Proceso.

78. En términos generales, los procesos judiciales derivados de una controversia civil o comercial tienen dos fases (i) una fase inicial escritural en la que las partes presentan sus demandas, inicial o de reconvención, y las contestan planteado sus excepciones y medios de defensa; y (ii) una fase oral probatoria y de juzgamiento, en la que el juez decreta y practica las pruebas —tanto las solicitadas a petición de parte, como las que decrete de oficio—, escucha las alegaciones finales de las partes y decide el fondo del litigio a través de una sentencia.

79. El proceso inicia con la presentación de la demanda por parte del demandante. En la demanda se deben incluir, entre otros asuntos formales, (i) lo que se pretende, expresado con claridad y precisión; (ii) los hechos que le sirven de fundamento a las pretensiones, de manera determinada, clasificada y numerada; y (iii) la petición de las pruebas que se pretende hacer valer, precisándose al respecto que con la presentación de la demanda se deben aportar las pruebas documentales que el demandante tiene en su poder[33]. A la demanda deben acompañarse, entre otros anexos, el poder otorgado al abogado que representará al demandante y la prueba de la existencia y representación legal de las partes y de la calidad en la que intervendrán en el proceso[34].

80. Luego de presentada la demanda, si el juez considera que reúne los requisitos establecidos en la ley, la admitirá a través de un auto susceptible de recurso de reposición.

81. Admitida la demanda, el demandante deberá notificar personalmente el auto admisorio al demandado. Dicha notificación se puede realizar (i) con el envío de la providencia respectiva

---

[33] Ley 1564 de 2012. *Código General del Proceso.* Artículos 82 y 84.
[34] Ley 1564 de 2012. *Código General del Proceso.* Artículo 84.

**Solarte Asesores Jurídicos S.A.S.**

como mensaje de datos a la dirección de correo electrónico del demandado[35]; o (ii) con el envío de una comunicación al demandado, en la que informe la existencia el proceso, su naturaleza y la fecha de la providencia que debe ser notificada, previniéndolo para que comparezca al juzgado [36].

82.  Notificado el demandado, deberá realizar las conductas que la ley procesal prevé para dicha parte procesal, entre las que se encuentran las de contestar la demanda, formular sus medios de defensa, hacer las solicitudes probatorias que corresponda, y, si el asunto lo amerita, presentar demanda de reconvención. Al igual que el demandante, el demandado debe aportar con la contestación de la demanda las pruebas documentales que tiene en su poder y que desea hacer valer en el proceso judicial[37]. Si el demandado propone defensas (excepciones de mérito), el demandante podrá solicitar pruebas que se relacionen con ellas[38].

83.  Culminada esa primera fase, el juez fijará fecha para realizar una primera audiencia, denominada audiencia inicial. En esa oportunidad, entre otras actuaciones, el juez exhortará a las partes para que intenten un acuerdo conciliatorio, recibirá los interrogatorios a las partes, fijará el objeto del litigio y decretará las pruebas que considere pertinentes, conducentes y útiles[39]. Es importante destacar que el juez puede ordenar y obtener todas las pruebas que considere necesarias, incluso de oficio y en cualquier momento del procedimiento.

84. Posteriormente, se celebrará una segunda audiencia, denominada audiencia de instrucción y juzgamiento. En esta oportunidad, se practicarán todas las pruebas que hayan sido decretadas, los apoderados de las partes presentarán oralmente sus alegaciones finales y el juez dictará sentencia. La sentencia, por regla general, deberá ser dictada de manera oral, salvo que el

---

[35] Ley 2213 de 2022. Artículo 8.
[36] Ley 1564 de 2012. *Código General del Proceso.* Artículo 291.
[37] Ley 1564 de 2012. *Código General del Proceso.* Artículo 391.
[38] *Ibid.*
[39] Ley 1564 de 2012. *Código General del Proceso.* Artículo 372.

juez considere que no es posible. En ese escenario, el juez deberá dejar constancia expresa de las razones por las que el fallo no puede ser dictado de manera oral, anunciará el sentido de la sentencia y emitirá la decisión de manera escrita.

85.  Una vez emitida la sentencia, las partes tienen la oportunidad de impugnarla a través del recurso de apelación, al que se hará referencia posteriormente.

86.  La sentencia ejecutoriada presta mérito ejecutivo. Esto significa que, en caso de que quien resulte vencido en el proceso judicial no cumpla espontáneamente las órdenes judiciales incorporadas en la sentencia, la otra parte podrá iniciar un proceso ejecutivo para forzar el cumplimiento de la providencia judicial. Además, debe precisarse que, cuando el título ejecutivo es una sentencia judicial, contra el mandamiento de pago solo pueden proponerse las defensas de pago, compensación, novación, remisión, prescripción o transacción, siempre que se trate de hechos ocurridos con posterioridad a la sentencia[40].

### B.     Solicitud probatoria

87.  En Colombia, en los procesos civiles, no existe una fase previa en la que las partes deban revelar todos los medios de prueba que pretenden hacer valer en el proceso. Por el contrario, el proceso civil colombiano contempla distintos momentos en los que las partes pueden incorporar válidamente pruebas al expediente, en la medida en que el proceso vaya desarrollándose. Por ejemplo, el demandante debe hacer la solicitud probatoria en la demanda y debe aportar todos los documentos que tenga en su poder, y lo propio hace el demandado al contestar la demanda.

88.  El artículo 165 del Código General del Proceso indica que son medios de prueba "*la declaración de parte, la confesión, el juramento, el testimonio de terceros, el dictamen pericial,*

---

[40] Ley 1564 de 2012. Código General del Proceso. Artículo 509.

*la inspección judicial, los documentos, los indicios, los informes y cualesquiera otros medios que sean útiles para la formación del convencimiento del juez*".  Se desprende de lo anterior que el Estatuto Procesal prevé un sistema de libertad probatoria que autoriza a las partes para que demuestren los hechos del proceso con cualquier medio de prueba que resulte útil. Por esta razón, se debe entender que la lista contenida en el artículo 165 citado no es taxativa, sino meramente enunciativa.

89.  Para efectos de proceder a decretar las pruebas, el juez deberá valorar la pertinencia, conducencia y utilidad de las pruebas solicitadas por las partes. La pertinencia supone la existencia de una relación entre el medio de prueba propuesto con el tema de la prueba. La conducencia hace referencia a la idoneidad de un medio probatorio para demostrar legalmente la existencia de un hecho y la utilidad de la prueba alude a que esta debe ser relevante para el proceso judicial que se está adelantando.

90.  Una vez decretadas, las pruebas se practican de conformidad con reglas particulares contenidas en el Código General del Proceso, luego de lo cual el Juez debe valorarlas en la sentencia de acuerdo con las reglas de la sana crítica.

91.  Sin embargo, el ordenamiento jurídico prevé la posibilidad de que las partes practiquen pruebas antes de que inicie el proceso judicial[41]. A este tipo de pruebas se les conoce como "pruebas extraprocesales". Por ejemplo, los testimonios pueden practicarse de manera extraprocesal con o sin citación de la futura contraparte[42]. Incluso, las partes pueden practicar de común acuerdo la prueba o pueden delegar su práctica a un tercero, sin que sea necesario hacerlo

---

[41] Ley 1564 de 2012. *Código General del Proceso.* Artículo 183.
[42] Ley 1564 de 2012. *Código General del Proceso.* Artículo 188.

ante la presencia de un juez. En este caso, la prueba practicada de común acuerdo debe ser aportada al proceso antes de que se dicte sentencia[43].

92. No existe en Colombia la posibilidad de interrogar a un testigo con anterioridad a la celebración de la audiencia de pruebas, para luego interrogarlo nuevamente en la audiencia. Si el interrogatorio se hace de manera extraprocesal, la práctica de la prueba se entenderá agotada en ese momento.

93. Como se ha señalado, los Tribunales en Colombia también pueden requerir la aportación de pruebas relevantes en poder de terceros. Por ejemplo, en caso de que esta acción se volviera a presentar en Colombia, se podrían obtener pruebas de terceros como la aerolínea LASER, la Fuerza Aérea Colombiana, la Policía Nacional, la Defensa Civil y los organismos de respuesta a emergencias colombianos, las entidades que eran propietarias del avión en Colombia antes de que LASER lo comprara, las entidades que realizaron el mantenimiento de la aeronave, y las personas y entidades con conocimiento de los supuestos daños de los demandantes, como los antiguos empleadores de los fallecidos, los proveedores médicos y las instituciones financieras.

94. En caso de que se necesite la intervención de otro Estado en la obtención de algún medio probatorio, o que se deban realizar otras actuaciones judiciales por fuera del Estado colombiano, se deberá hacer la solicitud a través de una carta rogatoria, en los términos del artículo 1º del Convenio sobre la Obtención de Pruebas en el Extranjero en Materia Civil o Comercial —Convenio de la Haya—, que fue incorporado al sistema jurídico colombiano mediante la Ley 1282 de 2009. La práctica de otras pruebas que hubieren sido decretadas por el juez de conocimiento, como, por ejemplo, interrogatorios a testigos que se encuentran fuera de Colombia, se pueden realizar directamente a través de medios electrónicos. En casos excepcionales, si el juez lo

---

[43] Ley 1564 de 2012. *Código General del Proceso.* Artículo 190.

considera necesario, podrá ordenar al testigo que absuelva el interrogatorio en la sede del Juzgado. Sin embargo, en ningún caso, un juez colombiano podrá ordenarle a un testigo que viaje a los Estados Unidos para que la práctica de la prueba se haga allí. La carta rogatoria debe ser remitida por el Ministerio de Relaciones Exteriores de Colombia, a través de los canales diplomáticos, a las autoridades competentes del Estado al que se le dirige la solicitud. Debe anotarse que este procedimiento es gratuito. La autoridad que proceda con la ejecución de la carta rogatoria aplicará las leyes propias de su país[44].

95.   Es posible que las partes que tienen litigios pendientes en jurisdicciones extranjeras, como Estados Unidos de América, obtengan pruebas de personas que no son parte y se encuentran en Colombia. Sin embargo, estos procesos pueden ser largos. Una forma de obtener pruebas localizadas en Colombia para procesos judiciales pendientes en el extranjero es a través del Convenio de La Haya, siempre y cuando el tribunal solicitante en el extranjero también sea parte de dicho Convenio. Estados Unidos es parte de la Convención de La Haya y por lo tanto los tribunales en Estados Unidos pueden utilizar este proceso. Sin embargo, el proceso para obtener pruebas localizadas en Colombia para procedimientos en el extranjero a través de la Convención de La Haya es largo y complicado y está sujeto a cierto grado de discrecionalidad por parte de las autoridades demandadas.

96. En efecto, según la información que he obtenido después de consultar con otras oficinas de abogados del país, el trámite para la obtención de pruebas ubicadas en Colombia a través de la Convención de La Haya puede tardar hasta tres (3) años. Estas demoras son usuales

---

[44] Ley 1282 de 2009. Por medio de la cual se aprueba el "*Convenio sobre la Obtención de Pruebas en el Extranjero en materia Civil y Comercial*", hecho en la Haya el 18 de marzo de 1970. Artículo 9.

**Solarte Asesores Jurídicos S.A.S.**

en tratándose de pruebas transfronterizas, independientemente del lugar en el que se encuentre la prueba que se está tratando de obtener.

97.   Por otra parte, los litigantes en procesos judiciales en el exterior pueden solicitar pruebas localizadas en Colombia a través de una "solicitud extraprocesal de pruebas" de conformidad con los artículos 183 a 190 del Código General del Proceso. Para ello, el solicitante debe: (i) identificar las partes que deberán exhibir documentos o rendir testimonio y sus datos de contacto para efectos de notificación; (ii) incluir una breve descripción de los hechos que fundamentan la solicitud; (iii) identificar los documentos y testimonios requeridos, su importancia, pertinencia y los hechos que se pretende probar. Los documentos a exhibir deben identificarse específicamente, ya que las exhibiciones generales están prohibidas en los procedimientos civiles.

98.   Una vez presentada la solicitud, un juzgado colombiano la analizará y ordenará la práctica de las pruebas que considere pertinentes, incluyendo testimonios y exhibiciones de personas naturales o jurídicas en Colombia. En la medida en que se decrete dicho testimonio, éste tendría lugar en Colombia. Los tribunales colombianos no están facultados para ordenar a una persona en Colombia que viaje a los Estados Unidos para rendir testimonio en un juicio, y no emitirían una orden de ese tipo. Si una determinada solicitud es denegada, se puede interponer un recurso de apelación sobre ese punto concreto, que será resuelto por el tribunal superior del juez competente.

99.   La duración de la "solicitud extraprocesal de pruebas" depende en gran medida de la complejidad de las solicitudes y de la disponibilidad del Tribunal asignado. Según mi experiencia, este tipo de procedimiento tarda entre uno y dos años en concluir por completo.

100.   Debido a que las autoridades demandadas tienen discrecionalidad para responder a las solicitudes de pruebas a través del Convenio de La Haya y de la "solicitud extraprocesal de

pruebas", no hay garantía de que un litigante en un proceso judicial en el extranjero pueda obtener las pruebas que busca de una persona o entidad ubicada en Colombia. Por lo tanto, si no se presenta una demanda en Colombia y el litigio pendiente actual contra THE BOEING COMPANY continúa en cambio en los Estados Unidos, es incierto que THE BOEING COMPANY pueda obtener todas las pruebas pertinentes de terceros ubicados en Colombia.

### C.    Costas procesales

101.    El acceso a la administración de justicia en Colombia es gratuito, según lo establece el artículo 6º de la Ley 270 de 1996. Lo anterior, sin perjuicio de las costas procesales, agencias en derecho y expensas que se fijen de conformidad con la ley. En la sentencia el Juez debe condenar en costas a la parte que haya sido vencida en la controversia.

102.    Las costas procesales son "*aquellos gastos en que incurre una parte por razón del proceso*" y ese concepto incluye las expensas y las agencias en derecho. Las expensas "*son las erogaciones distintas al pago de los honorarios del abogado, tales como el valor de las notificaciones, los honorarios de los peritos, los aranceles, entre otros. Las agencias en derecho corresponden a los gastos por concepto de apoderamiento dentro del proceso, que el juez reconoce discrecionalmente a favor de la parte vencedora atendiendo a los criterios sentados en el artículo 366 del Código General del Proceso, y que no necesariamente deben corresponder a los honorarios pagados por dicha parte a su abogado.*"[45]

103.    Las agencias en derecho se fijan siguiendo unos parámetros establecidos por el Consejo Superior de la Judicatura en el Acuerdo PSAA16-10554 de 2016. Por ejemplo, para los

---

[45] Corte Constitucional de Colombia. Sentencia T-625 de 2016. M.P. María Victoria Calle Correa.

**Solarte Asesores Jurídicos S.A.S.**

procesos civiles de mayor cuantía, el valor de las agencias en derecho estará en un rango entre el 3% y el 7.5% del valor de las pretensiones de la demanda.

       **D.**    **Apelaciones**

104.    Una vez dictada una sentencia que ponga fin a un proceso judicial, quienes se encuentren inconformes porque la decisión les haya sido adversa pueden interponer el recurso de apelación ante el juez de primera instancia. La forma de interposición varía según la manera en la que se dicte la sentencia. Si el fallo es oral, el recurso de apelación debe interponerse en la audiencia, verbalmente, sin perjuicio de que los reparos concretos frente a la decisión puedan presentarse por escrito dentro de los tres días siguientes a la audiencia. Y si la sentencia es escrita, por el contrario, el recurso de apelación debe interponerse dentro de los tres días hábiles siguientes a su notificación. De no formularse recurso de apelación dentro del término previsto en la ley procesal, la sentencia adquiere firmeza, y queda revestida de ejecutoria, en los términos del artículo 302 del Código General del Proceso.

105.    Interpuesto oportunamente el recurso, el juez de primera instancia deberá concederlo, si quien lo interpone cuenta con la legitimación para el efecto. La apelación de la sentencia se puede conceder en el efecto suspensivo o devolutivo: "*Se otorgará en el efecto suspensivo la apelación de las sentencias que versen sobre el estado civil de las personas, las que hayan sido recurridas por ambas partes, las que nieguen la totalidad de las pretensiones y las que sean simplemente declarativas. Las apelaciones de las demás sentencias se concederán en el efecto devolutivo, pero no podrá hacerse entrega de dineros u otros bienes, hasta tanto sea resuelta la apelación.*"[46]

---

[46] Ley 1564 de 2012. *Código General del Proceso.* Artículo 323.

**Solarte Asesores Jurídicos S.A.S.**

106.   Cuando la apelación se concede en el efecto suspensivo, "*si se trata de sentencia, la competencia del juez de primera instancia se suspenderá desde la ejecutoria del auto que la concede hasta que se notifique el de obedecimiento a lo resuelto por el superior. Sin embargo, el inferior conservará competencia para conocer de todo lo relacionado con medidas cautelares.*"[47] Si se concede en el efecto devolutivo, "*no se suspenderá el cumplimiento de la providencia apelada, ni el curso del proceso.*"[48]

107.   Una vez concedido el recurso de apelación, el Juez debe remitir el expediente a su superior jerárquico, quien verificará los requisitos legales para la procedencia de la apelación y, si los encuentra reunidos, admitirá la apelación y le correrá un traslado de cinco (5) días al recurrente para que sustente el recurso.

108.   El recurrente sustentará su recurso a través de un escrito, en el que debe expresar las razones de inconformidad con la providencia apelada[49], sujetando su alegación a desarrollar los argumentos expuestos en los reparos concretos presentados ante el juez de primera instancia[50]. De la sustentación se le correrá traslado a la otra parte, para que, si a bien lo tiene, se pronuncie. Vencido el traslado, el expediente entrará al Despacho para que el juez de segunda instancia tome una decisión de fondo.

109.   A lo largo del proceso también es posible que se apelen providencias judiciales distintas a las sentencias. En este caso, el recurso debe interponerse y sustentarse de manera verbal, si el auto recurrido se profirió en audiencia, o dentro de los tres (3) días siguientes a su notificación, si se dictó por escrito[51].

---

[47] *Ibid.*
[48] *Ibid.*
[49] Ley 1564 de 2012. *Código General del Proceso.* Artículo 322.
[50] Ley 1564 de 2012. *Código General del Proceso.* Artículo 327.
[51] Ley 1564 de 2012. *Código General del Proceso.* Artículo 322.

**Solarte Asesores Jurídicos S.A.S.**

110.    La apelación contra autos se concede, por regla general, en el efecto devolutivo.

Sin embargo, puede concederse en el efecto diferido en los casos en los que así lo indique la ley.

El efecto diferido supone que se "*suspenderá el cumplimiento de la providencia apelada, pero*

*continuará el curso del proceso ante el juez de primera instancia en lo que no dependa*

*necesariamente de ella.*"[52]

111.    Luego de concedido y sustentado el recurso de apelación contra un auto, se le corre

traslado a la parte contraria, por el término de tres (3) días, para que se pronuncie. Posteriormente,

el juez de primera instancia remitirá el expediente al superior jerárquico, quien resolverá de plano

y por escrito el recurso[53].

112.    Es importante precisar que la competencia del juez que conoce la apelación se

circunscribe a los motivos de inconformidad específicos —conocidos como "reparos concretos"—

planteados por el recurrente en contra de la sentencia de primera instancia. Es decir, el juez de la

apelación no tendrá una competencia absoluta para estudiar todo lo decidido por el juez de primer

grado, sino que deberá centrar su análisis en los puntos expresamente señalados por la parte

apelante[54].

113.    En caso de que los demandantes formulen pretensiones de menor cuantía y ellos o

THE BOEING COMPANY decidan apelar la sentencia de primera instancia, el recurso de alzada

será conocido por un juez civil del circuito. En cambio, si las pretensiones son de mayor cuantía

(superiores al equivalente a 150 salarios mínimos legales mensuales), la apelación será conocida

por el Tribunal del Distrito Judicial correspondiente, que es un cuerpo colegiado. En cualquier

---

[52] Ibid.
[53] Ley 1564 de 2012. *Código General del Proceso*. Artículo 326.
[54] Excepcionalmente el juez podrá resolver sin estas limitaciones, en los casos en que ambas partes interpongan recurso de apelación, según lo establece el artículo 328 del Código General del Proceso.

**Solarte Asesores Jurídicos S.A.S.**

caso, el trámite de la apelación no debe tardar más de seis meses —prorrogables máximo por otros seis meses— desde el momento en que la secretaría del Juzgado o Tribunal reciba el expediente[55].

114.    Si la sentencia de segunda instancia se profiere por un Tribunal Superior de Distrito Judicial y le genera a alguna de las partes un *agravio* superior de mil (1.000) salarios mínimos legales mensuales vigentes, la parte afectada podrá interponer el recurso extraordinario de casación, que será conocido por la Sala de Casación Civil de la Corte Suprema de Justicia. Sin embargo, debe precisarse, que al ser la casación un recurso extraordinario, solo procede por las causales legalmente establecidas en el artículo 336 del Código General del Proceso.

115.    Agotados los anteriores medios de impugnación, es decir, la apelación y la casación, en caso de que alguna de las partes considere que sus derechos fundamentales fueron transgredidos por la sentencia de casación de la Corte Suprema de Justicia, de manera excepcional podrá intentar la acción de tutela. No obstante, es relevante mencionar que la procedencia de esta acción contra decisiones judiciales, especialmente dictadas por las Altas Cortes, es de carácter restrictivo y por lo tanto solo procederá en los casos en los que se demuestre una violación grosera y manifiesta del derecho fundamental invocado.

## VIII.   INTERÉS PÚBLICO

116.    Como se explicó en párrafos anteriores, los Tribunales colombianos tienen jurisdicción para conocer y tomar una decisión de fondo en el caso que es objeto de análisis en el presente documento, pues el accidente ocurrió en territorio colombiano y las víctimas son de nacionalidad colombiana. En mi concepto, las autoridades colombianas tendrían interés en que este litigio se decida en Colombia porque los hechos involucran a una aerolínea colombiana que

---

[55] Ley 1564 de 2012. *Código General del Proceso.* Artículo 121.

transportaba pasajeros colombianos dentro del territorio nacional y se accidentó en un campo colombiano, que el GRIAA colombiano investigó. Colombia tiene interés en proteger a sus ciudadanos de este tipo de accidentes y asegurarse de que sus ciudadanos sean indemnizados por cualquier falla asociada a estos accidentes.

117.    Es también relevante para Colombia garantizar el derecho fundamental de acceso a la administración de justicia para que todas las personas puedan solicitar ante los jueces competentes la protección y el restablecimiento de sus derechos. En este sentido, es de interés para el sistema judicial colombiano servir como un foro adecuado para resolver las controversias y litigios suscitados dentro del territorio nacional.

118.    En línea con lo anterior, en aras de garantizar el acceso a la administración de justicia y lograr una decisión de fondo en el caso concreto, puede resultar beneficioso que, como algunos de los demandantes son ciudadanos y residentes de Colombia, el proceso se desarrolle en Colombia. De esta manera, se podría evitar incurrir en mayores costos.

119.    Adicionalmente, el estudio y análisis de la responsabilidad civil derivada de un accidente aéreo despierta un especial interés en Colombia.  Igualmente, puede resultar interesante para la Corte Suprema de Justicia la oportunidad de pronunciarse sobre el régimen jurídico de la responsabilidad por productos defectuosos en la legislación colombiana. Litigar este caso en Colombia permitiría al Estado y a los tribunales colombianos seguir desarrollando el derecho en esta importante área.

120.    De igual manera, los asuntos relacionados con la seguridad aérea son de notable interés público en Colombia, sea por la actuación de las aerolíneas o por la calidad de las aeronaves que se utilizan para el transporte aéreo, pues las deficiencias que se puedan presentar en estas

materias tienen un impacto muy relevante respecto de la vida, la integridad personal y el patrimonio de los involucrados, incluyendo a la industria aseguradora.

121.    En efecto, de conformidad con información pública puede observarse que el accidente materia de la controversia que se estudia fue objeto de cubrimiento por parte de los medios de comunicación en Colombia. Distintos medios de comunicación se pronunciaron sobre los hechos. Por ejemplo, periódicos de alta circulación nacional como El Colombiano[56] y El País[57] publicaron noticias en las que destacaron la gravedad del accidente ante la ausencia de sobrevivientes.

## IX.    CONCLUSIÓN

122.    Basado en mi conocimiento del sistema judicial colombiano, en mi formación académica y en mi experiencia profesional, considero que los Tribunales de Colombia son un foro apropiado para dirimir la controversia originada en el accidente aéreo que ocurrió el 9 de marzo de 2019. Los Tribunales colombianos tienen jurisdicción y competencia para adelantar este proceso, lo cual deberán hacer con plena observancia del derecho al debido proceso que les asiste a las partes, así como las demás garantías procesales consagradas en el ordenamiento jurídico.

123.    El hecho de que el accidente haya ocurrido en territorio colombiano, así como la nacionalidad y residencia colombianas de varias de las personas que integran la parte demandante, conduce a considerar que adelantar un proceso en Colombia facilitaría la práctica de las pruebas, dado el domicilio de los testigos, la ubicación de los documentos, así como la sede de las personas o entidades que atendieron el accidente.

---

[56]        https://www.elcolombiano.com/colombia/accidente-de-avion-que-cubria-la-ruta-san-jose-del-guaviare-villavicencio-NG10349163
[57] https://elpais.com/internacional/2019/03/10/colombia/1552186918_191060.html

**Solarte Asesores Jurídicos S.A.S.**

124.    Los Tribunales colombianos están disponibles y cuentan con la infraestructura necesaria para dirigir el proceso, practicar las pruebas y adoptar una decisión de fondo con fuerza de cosa juzgada en el proceso iniciado contra THE BOEING COMPANY.

125.    Finalmente, existiría interés público en que en Colombia se adelante y se decida el proceso judicial contra THE BOEING COMPANY, porque el accidente aéreo ocurrió en el territorio colombiano, las víctimas del accidente eran colombianos y la seguridad aérea y la responsabilidad involucradas son temas que le interesan a las autoridades y al sistema judicial colombianos.

Declaro bajo pena de perjurio bajo las leyes de los Estados Unidos de América que lo anterior es verdadero y correcto según mi leal saber y entender.

Hecho en Bogotá D.C., Colombia, el 15 de febrero de 2023

_____

**Anexo I**

Curriculum Vitae

**ARTURO SOLARTE RODRÍGUEZ**

_____

Oficina: Carrera 7 No. 74B-56, oficina 805, Bogotá (Colombia)
arturosolarte@hotmail.com
arturosolarte@javeriana.edu.co
Teléfonos: 6942430 - 3174332774

## FORMACIÓN ACADÉMICA

- Abogado de la Pontificia Universidad Javeriana (1981 - 1985)

- Especialista en Legislación Financiera de la Universidad de los Andes (1994)

- Estudios de Doctorado en Derecho en la Universidad de Salamanca (España) (Período 2002 – 2004). Diploma de Estudios Superiores y Diploma de Estudios Avanzados en Derecho Civil

- Cursos de postgrado en Derecho de Daños (2003) y en Derecho de Contratos (2004) en la Universidad de Salamanca (España)

- Curso de postgrado en Derecho de Seguros en la Pontificia Universidad Javeriana (2005)

## TRAYECTORIA PROFESIONAL

**Ocupación actual:**

Ejercicio independiente de la profesión de abogado. Socio de Solarte Asesores Jurídicos S.A.S.

Árbitro de los Centros de Arbitraje y Conciliación de las Cámaras de Comercio de Bogotá y Medellín.

Profesor universitario.

**Ocupaciones anteriores:**

- Socio de Gómez & Solarte Abogados (2014-2017)

**Solarte Asesores Jurídicos S.A.S.**

- Magistrado de la Sala de Casación Civil de la Corte Suprema de Justicia de Colombia (1º de Agosto de 2007 a 30 de Agosto de 2013). Presidente de la Sala de Casación Civil de la Corte Suprema de Justicia durante el año 2008.

- Socio de Santos, Munévar & Jaramillo – abogados (2005-2007)

- Director del Departamento de Derecho Privado de la Facultad de Ciencias Jurídicas de la Pontificia Universidad Javeriana (2005-2007)

- Vicepresidente Jurídico de la Fundación Social (hoy Fundación Grupo Social) (1998-2002)

- Secretario General de la Corporación Social de Ahorro y Vivienda Colmena (hoy Banco Caja Social) (1995-1997)

- Abogado, Asesor Jurídico y Director del Área de Derecho Privado de la Fundación Social (1988-1994)

- Abogado Auxiliar y Abogado Asociado de Posse & Cía. Ltda. Abogados (1985-1988)


## EXPERIENCIA DOCENTE

- Profesor del Departamento de Derecho Privado de la Facultad de Ciencias Jurídicas de la Pontificia Universidad Javeriana (desde 1989) en las siguientes asignaturas:

- Profesor Auxiliar de Derecho Civil – Contratos (Enero de 1989 a Diciembre de 1994)

- Profesor de Seminario Investigativo en Derecho Privado (Enero de 1991 a Diciembre de 1993)

- Profesor de Derecho Civil – Bienes (Enero de 1995 - Diciembre de 2005)

- Profesor de Responsabilidad Civil (Enero de 2005 a Junio de 2007 y de julio de 2014 a julio de 2019)

- Profesor de Derecho Civil - Obligaciones (Julio de 2004 a junio de 2014 y de julio de 2018 a la fecha)

- Profesor de la Especialización en Derecho Comercial, de la Especialización en Derecho Médico, de la Maestría en Derecho de Seguros, del Diplomado en Contratación Mercantil y del Diplomado en Derecho Inmobiliario de la Facultad de Ciencias Jurídicas de la Pontificia Universidad Javeriana (Julio de 2004 a Enero de 2015)

- Profesor de la Especialización en Derecho Civil y de Familia y de la Especialización en Responsabilidad y Seguros en la Universidad del Norte (Barranquilla – Colombia) (Mayo de 2009 a diciembre de 2017)

**Solarte Asesores Jurídicos S.A.S.**

- Profesor de la especialización en Derecho de la Responsabilidad en la Universidad de la Sabana (Bogotá – Colombia) (Mayo de 2010 a Enero de 2015)

- Profesor de la especialización en derecho privado económico de la Universidad Nacional de Colombia (2011 - )

- Profesor de la especialización en derecho comercial de la Universidad de Nariño (2011 - 2015)

- Profesor de la Especialización en Responsabilidad Civil y Seguros de la Universidad Pontificia Bolivariana (Medellín – Colombia) (2018 - 2021)

- Profesor de la Maestría en Derecho – Línea de Responsabilidad Civil de la Universidad EAFIT (Medellín – Colombia) (2018 - 2021)

- Profesor de la Maestría en Derecho Privado de la Universidad de los Andes (2011 - )


## PUBLICACIONES

- Inflación y revaluación en las obligaciones dinerarias (1988).

- Constitución Política de Colombia comentada y concordada - Fundación Social - Subgerencia Jurídica (1991).

- Sociedades matrices y subordinadas. En conjunto con Sergio Muñoz y Ma. Claudia Martínez. Revista Supersociedades hoy, No. 3 (1995).

- Los actos ilícitos en el derecho romano. Revista Universitas No. 107 (Junio de 2004).

- La buena fe contractual y los deberes secundarios de conducta. Revista Universitas No. 108 (Diciembre de 2004).

- La reparación *in natura* del daño. Revista Universitas No. 109 (Junio de 2005).

- Justicia Civil y Democracia. Revista de la Corte Suprema de Justicia No. 25 (2007).

- Relevancia Jurídica del silencio en la contratación privada. Estudios Jurídicos en homenaje al profesor Cesar Gómez Estrada. Universidad del Rosario. (2009).

- El papel del juez en la interpretación, integración y calificación del contenido contractual. Estudios jurídicos en homenaje al profesor Jorge Mosset Iturraspe. Pontificia Universidad Javeriana. (2010).

- Las acciones *iure hereditatis* en la responsabilidad civil. Derecho de Obligaciones. Tomo II. Coordinadora: Marcela Castro de Cifuentes. Universidad de los Andes. (2010).

**Solarte Asesores Jurídicos S.A.S.**

- La oferta dirigida a personas indeterminadas. En "Teoría General del Contrato – Homenaje al Profesor Doctor Ricardo L. Lorenzetti". Tomo II. Editorial La Ley, Buenos Aires. (2012).

- Los aportes del profesor Arturo Valencia Zea al estudio de la responsabilidad civil extracontractual en Colombia. En "Jurista y Maestro. Arturo Valencia Zea". Tomo II. Universidad Nacional de Colombia. Bogotá, (2014).

- Responsabilidad Civil y equidad en el Código Civil peruano de 1984. Análisis desde la perspectiva del derecho comparado. En "Derecho Civil Extrapatrimonial y Responsabilidad Civil". Poder Judicial del Perú - Corte Superior de Justicia de Arequipa y Escuela Judicial CSJAR. (2015).

- Reparación integral del daño y restitución de los beneficios obtenidos por el civilmente responsable. Revista del Instituto Colombiano de Responsabilidad Civil y del Estado No. 37. Abril de 2016. Medellín. (2016).

- Los contratos por adhesión a condiciones generales. En "Estudios del Derecho de Consumo (Ley 1480 de 2011)" en homenaje al Profesor Álvaro Mendoza Ramírez. Editor científico: Fernando Jiménez Valderrama. Universidad de la Sabana. Bogotá. (2017).

- Las obligaciones de las partes y de los apoderados con el árbitro. Colección Arbitraje 360º "El árbitro y la función arbitral". Directores académicos: Hernando Herrera Mercado y Fabricio Mantilla Espinosa. Universidad del Rosario. Bogotá. (2017).

- El principio *favor victimae* y su aplicación en el derecho colombiano. Anuario de Derecho Privado. Universidad de los Andes. Bogotá. (2019).

- La reparación del daño y los modelos de justicia. Breve estudio sobre las formas de reparación del daño en las distintas jurisdicciones. Revista del Instituto Colombiano de Responsabilidad Civil y del Estado No. 44 (2020).

- La compensación de las obligaciones en el derecho privado, en conjunto con Mariana Bernal Fandiño. En "Derecho de las obligaciones con propuestas de modernización". Tomo IV, segunda edición. Universidad de los Andes. Bogotá. (2021).

- La indemnización de perjuicios en la responsabilidad civil contractual. En "Instituciones de Responsabilidad Civil. Homenaje al Maestro Jorge Santos Ballesteros". Tomo I. Bogotá. (2022).



**T** 718.384.8040
**W** TargemTranslations.com
**E** projects@targemtranslations.com
**A** 185 Clymer St. Brooklyn, NY 11211

## CERTIFIED TRANSLATION

I, Wolf Markowitz, Manager at Targem Translations, Inc., located at 185 Clymer Street in Brooklyn, New York, a language service with a firm track record of providing expert language services to the business and legal community of more than 50 years, do hereby certify that our team of translators, editors and proofreaders are professionally trained and vastly experienced in providing professional translations, from Spanish to English and vice versa; and they have professionally translated the document referenced as **"Concepto The Boeing Company - Reclamación Maria del Rosario Jaramillo y Raquel Javela. 15.2.2023** from Spanish to English, faithfully, accurately and completely, to the best of their expertise and experience.

Date: February 16, 2023

_____
Wolf Markowitz

_____
Signature of Notary Public
ROCHAL WEISS
NOTARY PUBLIC-STATE OF NEW YORK
No  01WE6293785
Qualified in Kings County
My Commission Expires 12-16-2025



**TABLE OF CONTENTS**

I.        INTRODUCTION

II.       THE COLOMBIAN LEGAL SYSTEM

III.      LAWYERS

IV.       THE JUDICIARY AND THE COLOMBIAN JUSTICE SYSTEM

V.        CIVIL LIABILITY SYSTEMS APPLICABLE TO THE CASE

     A.   Tort liability for damages

     B.   Product liability

     C.   Damage

VI.       JURISDICTION OF THE COLOMBIAN COURTS

     C.   Jurisdiction

     D.   Prescription (time barring)

VII.      THE FILING OF THE LAWSUIT, PROCEDURE APPLICABLE TO THE
          PROCEEDING AND THE TAKING OF EVIDENCE IN COLOMBIA

     A.   Initiation of legal proceedings

     B.   Requests for evidence

     C.   Procedural costs

     D.   Appeals

VIII.     COLOMBIA'S PUBLIC INTEREST IN THIS CASE

IX.       CONCLUSION

Solarte Asesores Jurídicos S.A.S.

## I.     INTRODUCTION

1.   I am a lawyer licensed to practice in Colombia, holder of professional credential No. 46,031, issued by the Superior Council of the Judiciary. My professional career includes my work as the general secretary of Colmena (now known as Banco Caja Social), vice-president for legal affairs of Fundación Social (now known as Fundación Grupo Social), partner of the Santos, Munévar & Jaramillo law firm, director of the Private Law Department at the School of Legal Sciences of the Pontificia Universidad Javeriana, magistrate of the Civil Cassation Chamber of the Supreme Court of Justice, and associate judge of the Constitutional Court and the State Council. Currently, I am a practicing attorney with the Solarte Asesores Jurídicos S.A.S. firm, a university professor, and an arbitrator with the Arbitration and Conciliation Centers of the Chambers of Commerce of Bogotá and Medellín.

2.      This opinion was requested by THE BOEING COMPANY. The statements made herein are true and correct to the best of my knowledge of Colombian law and my professional experience.  If called to testify in this matter, I could and would testify as follows.

3.   I am affiliated with the following professional or academic associations:

- (a) Colombian Institute of Civil and State Liability – IARCE (Spanish acronym).

- (b) Colombian Association of Insurance Law

- (c) Colombian Arbitration Committee

- (d) Latin American International Arbitration – LIA

**Solarte Asesores Jurídicos S.A.S.**

4.    I received my law degree on March 16, 1988 and my professional license was issued on October 18, 1988. At that time the authority with jurisdiction to grant the professional credential to attorneys was the Ministry of Justice, but now this authority is assigned to the Superior Council of the Judiciary.

5.    My experience and the evidence thereof are set out in my Curriculum Vitae which I have annexed to this legal opinion as Annex 1.

6.    I am familiar with the motion for *Forum Non Conveniens*, by virtue of which a Court that is conducting a proceeding may, based on criteria of fairness, procedural economy and suitability, recognize the existence of another Court that may be more appropriate to hear the case, thereby waiving its jurisdiction in order to refer the case to the more suitable forum.

7.    In the preparation of this opinion, I reviewed (i) the lawsuit filed by MARÍA DEL ROSSARIO JARAMILLO BALLESTEROS, acting as spokesperson for the ESTATE OF JAIME CARRILLO MONTENEGRO and guardian of M.F.C.J., a minor; and RAQUEL JAVELA ROJAS acting as spokesperson for the ESTATE OF JAIME EDUARDO HERRERA ROMERO and guardian of J.M.H.J.,, a minor; (ii) the defense filed by THE BOEING COMPANY; (iii) the Final Accident Report COL-19-10-GIA prepared by the Accident Investigation Group — GRIAA (Spanish acronym); and (iv) Colombian legislation, case law and legal theory that are relevant to the merits of the case.

8.    It is my understanding that the plaintiffs are MARÍA DEL ROSARIO JARAMILLO BALLESTEROS, who is a resident of Colombia and a Colombian citizen; M.F.C.J., a minor, who is a resident of Colombia and a Colombian citizen; RAQUEL JAVELA ROJAS, who is currently a resident of California and a Colombian citizen; and J.M.H.J., who is currently a resident of

Canada and a Colombian citizen. The defendant is THE BOEING COMPANY, a Delaware corporation.

9. According to the complaint, the plaintiffs are seeking, in summary, a ruling holding that THE BOEING COMPANY is liable for the damages they claim to have suffered as a result of the aircraft accident that occurred on March 9, 2019, which they base, first of all, on the alleged presence of a defective product in the aircraft that experienced the accident. They state, in essence, that the left engine of the aircraft was faulty due to a drop in oil pressure and that as a result of this, the pilots were unable to feather the propeller to compensate for the engine failure, resulting in a fatal accident for the pilots as well as the passengers of the aircraft.

10. Secondly, based on an allegation of negligence, the plaintiffs seek a ruling holding that THE BOEING COMPANY is liable for the damages suffered by the plaintiffs due to its having breached its duty to exercise a reasonable degree of care to avoid causing damage to third parties. In the plaintiffs' view, had THE BOEING COMPANY properly designed, manufactured, modified, repaired, maintained, supported, inspected and/or tested the aircraft, and provided training, instructions, warnings and other relevant information regarding the design of the aircraft, the accident could have been avoided.

11. Based on my knowledge and experience, I am convinced that the Colombian courts constitute a suitable forum and are competent to hear the case. Furthermore, I am confident that Colombian judges are capable of conducting the proceedings in a proper manner, with full observance of the parties' due process rights, and are able to render a fair decision based on applicable law.

## II.        THE COLOMBIAN LEGAL SYSTEM

12.        Colombia is a Social State governed by the Rule of Law, organized as a unitary republic, with administrative decentralization of its territorial entities, as stated in Article 1 of the Political Constitution. This State model differs from that of federal systems, in that it is characterized by "*unity of supreme command, unity in all branches of legislation, unity in the administration of justice and, in general, unity in political decisions that are valid for the entire geographic space of the nation*".[1]

13.        The structure of the State, as indicated in Article 113 of the Constitution, is characterized by the separation of public power into three branches: (i) legislative, (ii) executive and (iii) judicial. The foregoing is without prejudice to the existence of autonomous and independent bodies that exist to carry out other State functions. The separation of powers implies that the different branches of government exercise separate functions, without prejudice to the fact that they must be connected in such a manner as to collaborate harmoniously in the achievement of State aims.

## III.        <u>THE JUDICIARY AND THE COLOMBIAN LEGAL SYSTEM</u>

14.        The judiciary is the branch of the public authority to which has been assigned the function of administering justice, understood as "*that part of the public function performed by the State that is entrusted with ensuring the rights, obligations, guarantees and freedoms enshrined in the Constitution and the law, in order to achieve social coexistence and to achieve and maintain*

---

[1] Constitutional Court of Colombia. Decision C-216 of 1994. Presiding Justice Vladimiro Naranjo Mesa.

Solarte Asesores Jurídicos S.A.S.

*national harmony.*"[2]  Colombia is a civil law jurisdiction, like most countries in Latin America and Europe. The main source of law is legislation, which is usually codified.

15.      In Colombia, persons who hold the position of Judge of the Republic must satisfy the following requirements: (i) be Colombian by birth, a citizen in exercise and in full enjoyment of his or her civil rights; (ii) hold a law degree issued or revalidated in accordance with the law; and (iii) not be subject to any grounds for disqualification or incompatibility[3]. In addition, depending on the position, the person must demonstrate some years of experience in the practice of law[4].

16.      Where the above requirements are satisfied, an applicant may enter and participate in a merit-based competition organized by the Higher Council of the Judiciary. If successful in the competition, the person will be registered on a list of eligible candidates, which will be forwarded to the appointing authority for a decision on appointments. The appointing authority for judges of the Republic is the corresponding High Court of the Judicial District[5].

17.      In Colombia, the judiciary is based on the French and Spanish judicial system. The judiciary is divided into four jurisdictions: (a) the ordinary jurisdiction, which will be explained in detail below; (b) the administrative jurisdiction, responsible for settling disputes between individuals and the State; (c) the constitutional jurisdiction, responsible for ruling on the constitutionality of laws and unifying case law on fundamental rights; and (d) special jurisdictions, such as the indigenous jurisdiction or the military-criminal jurisdiction. Given the purpose of this

---

[2] Act 270 of 1996. *Statutory Law on the Administration of Justice.* Section 1.
[3] Act 270 of 1996. *Statutory Law on the Administration of Justice.* Section 127.
[4] Act 270 of 1996. *Statutory Law on the Administration of Justice.* Section 128.
[5] Act 270 of 1996. *Statutory Law on the Administration of Justice.* Section 131.

Solarte Asesores Jurídicos S.A.S.

opinion, I will proceed to provide an analysis of the ordinary jurisdiction, as it is the relevant jurisdiction for this type of case.

18.     The ordinary jurisdiction is responsible for hearing all matters that are not assigned by the Constitution or by law to another jurisdiction. In that sense it is a residual or general jurisdiction. Specifically, the ordinary jurisdiction resolves civil, commercial, family, and labor disputes, as well as criminal matters.

19.     This jurisdiction is made up of the Supreme Court of Justice (as the body of last resort), the Superior Courts of the different Judicial Districts, and the civil, labor, criminal, agrarian, family, and other specialized and mixed jurisdiction judges created in accordance with the law. Civil and commercial proceedings may be single-tiered or two-tiered, depending on the amount in dispute.

20.     In exceptional cases, the Supreme Court of Justice may hear civil proceedings. It does so through the extraordinary cassation appeal, which may be filed in those cases in which, essentially, the second-instance judgment rendered by a Higher Judicial District Court has violated a substantial legal standard due to errors that are strictly legal or of an evidentiary nature or on the grounds of specific defects in the judicial process, such as an inconsistency or nullity that has not been remedied.

21.     Were the dispute that is the object of this study to be heard by Colombian judges, jurisdiction would fall, in the first instance, to a municipal civil judge or a circuit civil judge, depending on the amount of the claims in the lawsuit. Where the value of the claim exceeds 40 times the legal monthly minimum wage in force[6] in Colombia, but is less than 150 times the legal

---

[6] 40 times the legal monthly minimum wage in force is equivalent, in 2023, to $46,400,000 Colombian pesos. This sum is equivalent to USD 9,700.53 based on the representative market exchange rate as of February 15, 2023.

monthly minimum wage in force[7], the case would be heard by a municipal civil judge. If, on the other hand, the value of the claim exceeds 150 times the legal monthly minimum wage in force, which will most likely be the case if the plaintiffs file their suit in Colombia, the hearing of the case would be assigned to a circuit civil judge. In the latter case, the first instance judgment could be appealed to a Superior Court of the Judicial District, and in the event that the second instance judgement generates a *loss* of more than 1,000 times the minimum wage[8] for any of the parties, the matter could be heard by the Supreme Court of Justice by means of an extraordinary cassation appeal.

22.    The procedural rules governing civil and commercial disputes are found in Act 1564 of 2012, which contains the General Procedural Code. The applicable substantive norms are, as a general rule, those contained in the Civil Code and the Commercial Code, without prejudice to the existence of special regimes, depending on the matter submitted to the relevant jurisdictional authority.

23.    In Colombia, access to the administration of justice, enshrined in Article 229 of the Constitution, is deemed a fundamental right of all persons. This right "*has been understood as the recognized right of all persons to be able, under equality of conditions, to turn to those entities that carry out functions of a jurisdictional nature and that possess the power to influence, in one way or another, the determination of the rights to which those persons are entitled under the system of laws, in order to uphold the integrity of the legal order and the due protection or restoration of their legitimate rights and interests, strictly subject to the previously established procedures and*

---

[7] 150 times the legal monthly minimum wage in force is equivalent, in 2023, to $174,000,000 Colombian pesos. This sum is equivalent to USD 36,377.01 based on the representative market exchange rate as of February 15, 2023.
[8] 1000 times the legal monthly minimum wage in force is equivalent, in 2023, to $1,160,000,000 Colombian pesos. This sum is equivalent to USD 242,513.44 based on the representative market exchange rate as of February 15, 2023.

*fully observing the substantial and procedural guarantees provided under the Constitution and the Law.*"[9]

24.     The right of access to the administration of justice is closely related to the fundamental right to due process, enshrined in Article 29 of the Constitution. This right comprises the set of guarantees provided in the legal system whose aim is the protection of the individual involved in a legal proceeding, so that his rights are respected and a proper application of justice is achieved in the case.

25.     In all judicial proceedings in Colombia, judges are subject in their rulings only to the rule of law, on the understanding that this obviously includes the Constitution. This provision, enshrined in Article 230 of the Political Constitution, constitutes a guarantee of autonomy, impartiality, and equality, because in all judicial actions the judge is obliged to apply the law[10]. Equity, jurisprudence, general legal principles and legal theory are auxiliary criteria in the context of judicial activity[11].


IV.     LAWYERS

26.     When a civil action is initiated in Colombia, the administration of justice must be accessed through a lawyer, by virtue of the right to legal representation enshrined in Article 73 of the General Procedural Code. In this context, any action brought in Colombia, as a general rule, requires a lawyer's advice and representation.

27.     In Colombia, a lawyer is a person who has obtained the corresponding university degree in accordance with academic and legal requirements, as established in Article 3 of Decree

---

[9] Constitutional Court of Colombia. Decision T-799 of 2011. MP: Humberto Antonio Sierra Porto.
[10] Constitutional Court of Colombia. Decision C-284 of 2015. Presiding Justice Mauricio González Cuervo.
[11] Political Constitution of Colombia. Article 230.

**Solarte Asesores Jurídicos S.A.S.**

196 of 1971, "*Whereby the rules for attorney practice are adopted*". The academic requirements vary from university to university, but generally include a five-year course of study, internships in judicial offices, public entities or law offices, as well as the preparation of monographs and the taking of specific exams in the different areas of law that are presented at the end of the degree. A law degree can only be obtained upon satisfactory fulfillment of the above requirements.

28.     In order to practice the profession, a person must be registered as a lawyer and must possess a professional credential issued by the competent body, currently the Superior Council of the Judiciary.

29.     Lawyers have a series of professional duties that are enshrined in Article 47 of the Rules for Attorney Practice and in Article 28 of Act 1123 of 2007, corresponding to the Lawyers' Disciplinary Code. Among these duties are: (i) the duty to act with fairness and honesty in their professional relations; (ii) the duty to maintain professional secrecy; and (iii) the duty to carry out their professional duties with zeal and diligence.

30.     As a general rule, persons who are required to appear in a proceeding must do so through an attorney [12], who must be granted a power of attorney for such purpose. Unless otherwise stipulated, the power of attorney granted to an attorney to litigate is understood to be granted in order to "*request extra-procedural injunctive relief and extra-procedural evidence, and all other pre-trial actions, to carry out all procedures associated therewith, to request injunctive measures, to file ordinary, cassation and annulment appeals and carry out any subsequent actions resulting from the judgment as part of the same docket, and to act as administrator in collecting any sums imposed in the judgment. The attorney-in-fact may put forward any and all claims he deems to be*

---

[12] Act 1564 of 2012. "*General Code of Procedure*". Article 73.

**Solarte Asesores Jurídicos S.A.S.**

*for the benefit of the grantor. The power to act in a proceeding entitles the attorney-in-fact to receive notification of the order admitting the claim or of the writ of execution, to provide a sworn estimate and to make spontaneous confession. Any restriction on such powers shall be deemed not to have been written. The power of attorney also enables the attorney-in-fact to counterclaim and represent the grantor in all matters related to the counterclaim and the intervention of other parties or third parties."*[13]

31.     In legal proceedings, all procedural acts must be performed by the attorney, except for those reserved by law to the party itself, such as, for example, replying to questioning. Nor may the lawyer agree to or seek remedies under the law without the express authorization of the grantor[14].

32.     Colombian law does not provide for a specific set of standards for setting attorneys' fees. In this regard, the parties may agree on a *contingency fee*, this being understood as "*the agreement entered into between the lawyer and his client, the purpose of which is to obtain a percentage of the object of the lawsuit, provided that it is won. Such agreement is also characterized by the fact that the professional agrees to cover all expenses involved in managing the case that he has accepted*".[15] The lawfulness of this type of agreement has been recognized by jurisprudence.[16]

33.     The determination of the amount of the professional fees must be the result of an agreement between the parties, and ordinarily originates from a proposal for the rendering of

---

[13] Act 1564 of 2012. *General Code of Procedure*. Article 77.
[14] Ibid.
[15] Constitutional Court of Colombia. Decision T-1143 of 2003. Presiding Justice Eduardo Montealegre Lynett.
[16] Supreme Court of Justice. Labor Cassation Chamber. Ruling SL2385-2018 of May 9, 2018. Presiding Justice Jorge Luis Quiroz Alemán. Supreme Court of Justice. Civil Cassation Chamber. SC5669-2018 of December 19, 2018. Presiding Justice Ariel Salazar Ramírez.

Solarte Asesores Jurídicos S.A.S.

services presented by the lawyer, which must be accepted by the client. However, fees cannot be disproportionate, as indicated by the jurisprudence of the Superior Council of the Judiciary. Said Council has established five criteria to determine whether the fees charged by the lawyer are disproportionate: (i) the work actually performed by the litigant; (ii) the prestige of the litigant; (iii) the complexity of the matter; (iv) the sum or amount; and (v) the client's financial capacity[17].

34.    If a person cannot afford to pay attorney's fees, they can turn to private institutions, such as the Pro Bono Foundation, or to the legal offices of the universities, which offer free assistance to those who request it. Likewise, in the judicial proceeding, persons who are unable to afford the associated expenses *"without detriment to what is necessary for their own subsistence (...)"* may request *"poverty relief"*, in which case they will not be required to provide procedural bonds or to pay expenses, legal assistants' fees or other expenses, nor will they be ordered to pay court costs, in addition to which the Judge will appoint an attorney to represent such person in the proceeding. Consequently, in the event that the plaintiffs in the case under study file a lawsuit in Colombia, they must do so through a legal representative, who must be a registered lawyer and a holder of a professional license. There are a large number of law firms in Colombia, as well as independent lawyers, who will be able to represent the plaintiffs in any legal proceeding. Indeed, in Colombia there are lawyers who represent plaintiffs in personal injury, wrongful death, tort and product liability cases.

35.    In my experience, the plaintiffs in this case will be able to get a Colombian lawyer to represent them.

---

[17] Superior Council of the Judiciary, Disciplinary Jurisdictional Chamber. Judgment of October 1, 2014. Presiding Justice Wilson Ruiz Orejuela. Filing No. 11001110200020130201701.

## V.      THE CIVIL LIABILITY SYSTEMS APPLICABLE TO THE CASE

36.      As a general rule, in Colombia, any person who causes a loss to another is obliged to indemnify that loss, provided that all other legal requirements for the indemnity obligation are met. These requirements are, in essence, the existence of an action or omission, an attribution factor (ordinarily, fault), a damage or loss, and a causal relationship between the action or omission and the damage.

37.      Losses may arise as a result of the violation of the generic duty to cause no harm to another (in the case of tort liability) or from the violation of duties originating from prior, singular and specific ties established between specific persons (in the case of contractual liability). This means, then, that in Colombia there are two major civil liability frameworks: contractual liability and tort liability.

38.      Although the law does not make any differentiation in the legal frameworks using the aforementioned terminology, the Civil Code does regulate, on the one hand, the effects of those obligations whose main source is a contract (articles 1602 to 1617) and, on the other hand, "*common liability for crimes and faults*" (articles 2341 to 2360). The basic rules of the two basic civil liability frameworks, "*contractual civil liability*" and "*tort liability*", respectively, are enshrined therein.

39.      If the plaintiffs, that is, Mrs. María del Rossario Jaramillo Ballesteros, as spokesperson for the estate of Jaime Carrillo Montenegro, and as guardian of M.F.C.J., minor, and Raquel Javela Rojas, as spokesperson for the estate of Jaime Eduardo Herrera Romero and guardian of J.M.H.J., minor, should decide to file a lawsuit in Colombia, they could formulate claims similar to those raised in the lawsuit filed in the Superior Court of Washington, King County.

40.     I believe that the plaintiffs could formulate claims, under the tort liability regime, aimed at obtaining a declaration that THE BOEING COMPANY is civilly liable for the pecuniary and non-pecuniary damages suffered as a result of the deaths of Jaime Carrillo Montenegro and Jaime Eduardo Herrera Romero in the plane crash that occurred on March 9, 2019 and that, as a consequence of the foregoing, that company be ordered to pay the corresponding compensation. The foregoing is without it being incumbent upon me to make a pronouncement on the likelihood of success of such claims and without assessing the possible success of the defendant's defenses.

41.     I also believe that the plaintiffs could seek a declaration that THE BOEING COMPANY, as successor to the manufacturer of the crashed aircraft, is liable for damage caused by a defective product. In the same vein as stated above, I am formulating this approach without assessing the likelihood of success of such claims and without making an assessment of the likelihood of success of the Defendant's defenses.

42.     The two types of claims mentioned above would be possible in Colombia because national law provides, on the one hand, for a tort liability regime and, on the other hand, for a product liability regime. Both regimes could be applicable.


**A.  Tort liability for damage**

43.     As previously stated, when one person causes damage to another, in the absence of a prior legal relationship between them, and it is determined that there are grounds for imputing liability to the former because that person acted with deceit or negligence or, exceptionally and in cases established by law, due to that party's having created a risk or having assumed a position of guarantor, an obligation arises for the former to compensate the victim for the damage caused.

Solarte Asesores Jurídicos S.A.S.

44.     Generally speaking, tort liability requires the following elements to be proven in the judicial proceeding: (i) the conduct (generally unlawful) of the person who caused the damage; (ii) the existence of the damage or loss; (iii) a causal relationship that allows the damage to be attributed to the defendant; and (iv) a criterion by virtue of which liability is assigned to the latter, generally subjective in nature (deceit or negligence) but in exceptional cases of an objective nature (mainly risk or position of guarantor).

45.     In tort liability, a distinction is made among the following subsystems: (i) direct liability or liability for an act of the defendant, in which case, as a general rule, the plaintiff must prove that the defendant is at fault; (ii) indirect liability or liability for the act of another, in which case there is a presumption of fault on the part of the defendant, who may rebut such presumption; (iii) liability for things held in custody, in which case the fault of the person to whom liability is imputed is generally presumed; and (iv) civil liability for dangerous activities, in which case it is not required to prove that the defendant is at fault, and in which the defendant, in his/her/its defense and to disprove the imputation of fault, may only demonstrate what is referred to as an extraneous factor (unforeseeable event or force majeure, an exclusive act by a third party, or an exclusive act by the victim).

**B.   Product liability**

46.     In Colombia there is a civil liability regime for the manufacturer of a defective product that has caused damage to third parties. It should be noted, first of all, that this liability system has a constitutional basis. Specifically, article 78 of the Political Constitution provides that "*those who, in the course of the production and marketing of goods and services, harm the health,*

Solarte Asesores Jurídicos S.A.S.

*safety and suitable supply of consumers and users, shall be liable in accordance with the law''.*
The legal regime is enshrined in sections 19 to 22 of the Consumer Statute (Act 1480 of 2011).[18]

47.     According to this statute, a defective product is "*a movable or immovable good which, because of an error in design, manufacture, construction, packaging or information, does not offer the reasonable safety to which every person is entitled''*[19]. Consequently, the foregoing means that for a product to be considered defective, it must be proven that it has a defect that affects - or may affect - the safety to which people can legitimately aspire. In this regard, the national doctrine has held that "*the concept of defect does not mean the so-called hidden defects or redhibitory defects, that is, those that make it impossible or difficult to use the thing for its natural use, nor does it refer to the inefficiency, ineffectiveness or uselessness of the product, 'nor to its lack of suitability for the use for which it was acquired; but to the absence of the safety conditions to which the public is entitled, excluding, of course, any abusive use' (Chavarro Cadena, 2012, p. 35).*[20]"

48.     Consequently, the courts may find the existence of a defect in the product to be established if the safety risk materializes. By way of example, if a consumer purchases a microwave oven for household purposes, but the microwave explodes during use, it could be concluded that the product is defective, to the extent that the minimum safety standards that an average consumer would expect when acquiring it were not guaranteed.

---

[18] According to case law, prior to the passage of Act 1480 of 2011, liability for defective products derived directly from the Constitution and was based on the existence of a safety obligation incumbent upon the manufacturer, an obligation that was considered to be ''of results''. Constitutional Court. Judgment C-1411 of 2000. M.P. Eduardo Cifuentes Muñoz; Supreme Court of Justice. Civil Cassation Chamber. Judgment of 30 April 2009. M.P. Pedro Octavio Munar Cadena.

[19] Act 1480 of 2011. Consumer Statute. Section 5.

[20] Ramírez, Diego F. *Product liability in the new Consumer Statute: analysis, challenges and perspectives.* In Derecho del Consumo. After five years of the Consumer Statute in Colombia. Universidad de los Andes. Bogotá. 2018. pp. 93-94.

**Solarte Asesores Jurídicos S.A.S.**

49.     Now, in accordance with the Consumer Statute, for the determination of product liability, the affected party must demonstrate the defect of the product - which must be understood in the terms set out above -, the damage suffered and the causal relationship between the defect of the product and the damage whose reparation is sought[21]. Taking the foregoing into account, it is considered that in this system the factor of attribution of liability is objective - or strict - , since it is not necessary to prove the intent or fault of the producer or manufacturer, and the latter cannot exonerate itself from the imputation of liability by demonstrating its own diligence[22].

50.     The producer and the retailer are jointly and severally liable for damage caused by defects in the products they manufacture or market. When it is not expressly stated who the producer is, it shall be understood that it is the person who affixes its signature, name, brand or distinctive sign on the product[23].

51.     Only the following are admissible as grounds for exemption from liability for damage due to a defective product: 1) force majeure or unforeseeable circumstances; 2) imputability of the damage to the affected party's exclusive fault; 3) an act of a third party; 4) when the manufacturer has not put the product into circulation; 5) when the defect is a direct consequence of the manufacture, labelling or packaging of the product in accordance with existing mandatory standards, where the defect cannot be avoided by the producer without violating said standard; 6) where the state of scientific and technical knowledge did not allow for the discovery of the existence of the defect at the time when the product was put into circulation.

52.     If the plaintiffs bring a claim in Colombia against THE BOEING COMPANY, the regime described above could be applicable. The plaintiffs could, for example, seek product

---

[21] Act 1480 of 2011. *Consumer Statute.* Section 21.
[22] Tamayo Jaramillo, Javier. *Product liability.* Legis Editores S.A. 2016. p. 66.
[23] Act 1480 of 2011. *Consumer Statute.* Section 20.

Solarte Asesores Jurídicos S.A.S.

liability claims against THE BOEING COMPANY, as successor to the manufacturer of the aircraft involved in the accident or any of its components. In this event, the plaintiffs would have to prove (i) the defect of the aircraft or its components - understood in the terms already explained -; (ii) the damage they suffered and the damages they are claiming; and (iii) the causal link between the product defect and the alleged damage. If any of these elements were not proved, THE BOEING COMPANY could not be held civilly liable on that ground.

### C.    Damage

53.    When a claim for contractual civil liability or tort liability is asserted in a lawsuit, the plaintiff may request the court to order the defendant to pay compensation for pecuniary or non-pecuniary damage suffered that is attributable to the defendant.

54.    Compensable losses may be, in the first place, economic damage, i.e. (i) consequential losses (the loss or reduction of the plaintiff's assets, which can be valued in money or expenses incurred), (ii) loss of profits (the loss of earnings that would have been obtained in the normal course of events), or (iii) loss of opportunity (the impairment of a situation that would have resulted in obtaining a profit or avoiding a loss). These damages may be past or future, depending on whether they materialized prior to the judgment or if they will materialize subsequently.

55.    In addition, compensation for non-economic damage may be claimed. This is understood to be damage that affects interests linked to individual rights or to the affective or emotional aspect of individuals and which, therefore, cannot be valued in monetary terms. In civil matters, this damage includes pain and suffering, damage to the contractual relationship, and damage to personal property of special constitutional relevance.

56.    A plaintiff, by virtue of the product liability regimen, may claim pecuniary or non-pecuniary damages arising from: (a) death or personal injury caused by the defective product; (b)

Solarte Asesores Jurídicos S.A.S.

damage or detriment caused to things other than the defective product[24]. It should be understood that once the damage have been proven, the pecuniary or non-pecuniary damages that the plaintiff proves in the proceeding may be compensated, it being understood that the latter are for the adverse consequences that the harmful event causes to the claimants, in the terms of ¶ 54 and 55.

57.     The valuation of damage in Colombia must comply with the principles of full reparation and equity, as well as actuarial technical criteria, as established in Article 16 of Act 446 of 1998. The aim of the principle of full reparation is to ensure that the plaintiff is restored to the same situation in which it would have been if the harmful event had never affected it, and therefore such reparations must cover all the harmful consequences suffered by the claimant and which can be imputed to the defendant

58.     In Colombia, there is no maximum limit on the amount of damages that can be awarded to a plaintiff by way of pecuniary damages in civil proceedings - i.e., consequential damages, loss of profits or loss of opportunity. The plaintiff may seek full or complete compensation for all the damage it has suffered[25] and which is attributable to the defendant. The eventual judgment rendered against the defendant is limited to (i) what is claimed in the claim and (ii) what is proven in the proceedings. This is established in section 281 of the General Procedural Code, according to which "[a] *defendant may not be ordered to pay a higher amount or to make a payment for an object different from that claimed in the claim or for a cause different from that invoked in the claim. Where the plaintiff's request exceeds what has been proven, only the latter shall be acknowledged*".

---

[24] Ibid.
[25] Act 1564 of 2012. General Procedural Code. section 283, final paragraph.

59.     It is different in the case of non-pecuniary damages -in civil matters, moral damages, damage to the life of the relationship and, exceptionally, damage to legal assets of special constitutional protection-, as national jurisprudence has established a limit that can be recognized. Thus, for example, in the case of moral damages in cases of maximum intensity, e.g., death of a close relative or spouse, the Civil Cassation Chamber of the Supreme Court of Justice has indicated that compensation, as a general rule, should not exceed the sum of sixty million Colombian pesos (COP 60,000,000)[26]. However, consideration should be given to the fact that, as it is a jurisprudential guideline and not a legally established cap, in exceptional circumstances, the courts may adopt a different decision exceeding this amount and they are required to include in the decision the corresponding motivation.

60.     For example , during its review of the case of the victims of a terrorist act that occurred in the country, the Supreme Court stated the following, concluding that it was an exceptional case: "*in effect, the circumstances of the immense pain reflected in the ferocity and barbarity of the actions suffered by the plaintiffs gave, with all certainty, room for the Court to impose a sentence in accordance with that reality, even if it was taking as a guide the amount that at that time the Court had established since 2012 and that, given the unspeakable atrocity of the events narrated and proven in this process they deserve - for that particular case - a higher amount than the one that had been ordered at the time (60. 000,000.oo) and which today is readjusted to seventy-two million pesos (72,000,000.oo) for the emotional distress suffered by the plaintiffs (...)*"[27].

---

[26] See, for example: Supreme Court. Civil Cassation Chamber. Decision SC5686 of 2018 of December 19, 2018. MP: Margarita Cabello Blanco. Based on the exchange rate as of February 15, 2023, this amount is equivalent to USD 12,543.79
[27] Ibid.

Solarte Asesores Jurídicos S.A.S.

61.      Should the claimants decide to file a claim in Colombia, they may seek compensation for the pecuniary and non-pecuniary damage suffered as a result of the death of their spouses and parents in the accident. As explained above, pecuniary damages could include lost profits, consequential damages and loss of opportunity suffered. Likewise, non-pecuniary damages could include emotional distress, damage to the life of the relationship and damage to property of special constitutional relevance, the latter insofar as it is feasible, which is not clear in this case, given that the case law precedents have referred, for example, to damage to honor, good name or privacy. However, in each case, the plaintiffs must provide and seek a ruling on the evidence that proves the occurrence and the amount of the damage for which they seek compensation.

## VI.      THE JURISDICTION OF THE COLOMBIAN COURTS

62.      As will be explained below, there is no legal or procedural impediment to the plaintiffs filing in Colombia the claim they have filed against THE BOEING COMPANY on the basis of the consequences of the aircraft accident that occurred on March 9, 2019, because the national Courts have jurisdiction and competence to hear the case that is the subject of analysis in this study.

### A.      Jurisdiction

63.      I have been informed that Boeing, as a condition for the dismissal of this action on the basis of *formun non conveniens*, is willing to submit to personal jurisdiction in Colombia, should the plaintiffs file suit in Colombia within 120 days following the dismissal of the action by the Court currently hearing the matter.

64.     The Colombian courts have jurisdiction to hear legal proceedings arising from damage-related events occurring within domestic territory[28]. This is expressly stated in section 28(6) of the General Procedural Code, by virtue of which, in the case of proceedings arising from tort liability, "*the judge of the place where the event occurred is also competent*".

65.     Thus, the Colombian courts would have jurisdiction and competence to hear proceedings involving aircraft accidents occurring within the country, regardless of the identity of the potential parties to such proceedings. Therefore, the Colombian courts would also have jurisdiction to examine all the evidence that is requested and whose production is duly ordered and that is related to the matter being litigated.

66.     In this context, the Colombian courts would have jurisdiction over THE BOEING COMPANY, as a defendant in a potential judicial proceeding, given that the aircraft accident occurred within domestic territory, in accordance with the terms of numeral 6 of the aforementioned article 28 of Act 1564 of 2012. Similarly, the Colombian courts would also have jurisdiction over LASER airline, for the same reason.

67.     It is also pertinent to note that the Colombian Courts would have jurisdiction over third parties that are relevant to the proceeding. Judges in Colombia must order, either at the request of a party or *ex officio*, the production of evidence that is useful in verifying the facts alleged by the parties[29]. For this reason, third parties may be subject to court orders to produce or exhibit documents in their possession, or to appear at the proceeding to testify, as the case may be.

68.     In this case, there are third parties whose participation could be relevant for the evolution of the judicial process, especially regarding the collection and examination of evidence.

---

[28] Act 1564 of 2012. *General Code of Procedure*. Article 28.
[29] Act 1564 of 2012. *General Code of Procedure*. Article 169.

For example, LASER Airline, an entity that may have information about the aircraft, the pilots and what happened during the accident; the Colombian Air Force, the National Police, the Civil Defense and the Colombian emergency response agencies, who were the first to arrive at the accident site; the Colombian Air Accidents Investigation Group – GRIAA – of the Colombian Civil Aviation Authority, which was in charge of investigating and preparing the final report on the accident that is the subject of this dispute; and the Special Administrative Unit of the Colombian Civil Aviation Authority ("UAEAC"), which also participated in the investigation of the accident. Other third parties who are located in Colombia and who have relevant evidence could include: entities that owned the aircraft before it was acquired by LASER; entities that performed maintenance on the aircraft; and individuals and entities with knowledge of the damage alleged by the plaintiffs, such as the victims' employers, health care providers, and financial institutions. Were the plaintiffs to file their lawsuit against THE BOEING COMPANY in Colombia, the courts would have jurisdiction over these third parties and could subpoena them to cooperate by providing evidence in their possession.

69.    Were the plaintiffs to file suit in Colombia, they could also assert a claim against LASER, over which the Court would also have jurisdiction. Similarly, were the plaintiffs to file a lawsuit in Colombia, but not assert a claim against LASER, THE BOEING COMPANY could request to be joined in the proceedings. This type of linkages can be effected through the procedural concept of the necessary joinder and the impleader, in the terms of sections 61 and 64 of the General Procedural Code.

70.    I have been informed that other legal proceedings have already been initiated in Colombia against LASER on account of the accident that is the object of this litigation. This situation is relevant because (i) it demonstrates that the Colombian Courts may be an adequate

**Solarte Asesores Jurídicos S.A.S.**

forum to hear this type of proceedings; and (ii) it enables the possibility that the evidence that was decreed and examined in those proceedings may be transferred and assessed within the framework of the proceedings that could be brought in Colombia by the plaintiffs. This would allow for greater speed in the evidentiary stage, and could lead to the final judgment being rendered in a shorter period of time.

**B.    Prescription**

71.    According to Article 2512 of the Colombian Civil Code, "*prescription is a means (...) of extinguishing the actions or rights of others due to their (...) not having exercised such actions and rights during a certain period of time, provided other legal requirements have been met*". The application thereof requires that (i) the action be subject to prescription; (ii) the legally established prescriptive period for action be lapsed; and (iii) the holder of the right of action fail to exercise that right within such term. The prescription period is counted from the date on which the obligation becomes enforceable[30].

72.    The prescription period varies depending on the action in question. For example, in the case of tort liability actions, the term is ten (10) years, counted from the occurrence of the event generating the damage for which reparation is sought, while that of an enforcement action, for the collection of obligations due and payable, is five (5) years.

73.    The Consumer Statute does not establish a prescription period for product liability actions, and the Supreme Court of Justice has not yet issued a ruling on the matter. For this reason, this has been a matter of discussion within the scope of Colombian legal theory. Since there is no applicable rule in the Consumer Statute, given that the warranty framework is different from the

---

[30] Civil Code of Colombia. Article 2535.

Solarte Asesores Jurídicos S.A.S.

product liability framework, my view is that the prescription period is the general one for ordinary actions - through which declarations and convictions are requested -, namely ten (10) years[31], which would begin to run from the time the damage occurs.

74.    A person who benefits from the prescription period may waive it, under the terms of article 2514 of the Civil Code. Such waiver may be express or tacit. It is understood to be tacit, for example, if the interested party does not assert its rights within a judicial proceeding, as the judge cannot declare it *ex officio*[32].

75.    Applying the above concepts to the case at hand, it can be seen that the prescription period has not yet lapsed for a tort liability action, nor for a product liability action that could be brought by the plaintiffs, since fewer than ten years have elapsed since the date on which the accident occurred.

76.    In any case, even if it had lapsed, THE BOEING COMPANY could waive its right to move for dismissal on grounds of prescription.

## VII.    THE FILING OF THE LAWSUIT, PROCEDURE APPLICABLE TO THE PROCEEDING AND THE TAKING OF EVIDENCE IN COLOMBIA

### A.    Initiation of legal proceedings

77.    Before a civil or commercial lawsuit is filed, as a general rule, it is necessary to exhaust a previous phase, consisting of an attempt to arrive at an out-of-court reconciliation in law before a mediator duly empowered for such purpose. The applicable body of laws seeks to have

---

[31] Civil Code of Colombia. Article 2536.
[32] Civil Code of Colombia. Article 2513.

the parties solve their differences by means of a non-litigious mechanism of conflict resolution. If such conciliation does not take place, the lawsuit, once filed, will be ruled as inadmissible by the corresponding judicial authority, in accordance with numeral 7 of paragraph three of article 90 of the General Procedural Code.

78.     In general terms, legal proceedings arising from a civil or commercial dispute generally have two phases: (i) an initial written phase in which the parties submit their initial claims and counterclaims and respond to them, raising their exceptions and defenses; and (ii) an oral evidentiary and trial phase, in which the judge orders the production and examination of evidence —both those requested by the parties and those required ex officio—, hears the parties' final arguments, and rules on the merits of the dispute by issuing a judgment.

79.     The process begins with the filing of the suit by the plaintiff. The lawsuit must include, among other formal matters, (i) what is sought, expressed clearly and precisely; (ii) the facts that serve as basis for the claims, in a specific, classified and numbered manner; and (iii) the request for the production of evidence that is intended to be asserted, on the understanding, in this regard, that along with the filing of the lawsuit, any documentary evidence that the plaintiff has in its possession must be provided[33]. The suit must be accompanied by, among other annexes, the power of attorney granted to the lawyer who will represent the plaintiff and the proof of the existence and legal representation of the parties and the capacity in which they will intervene in the proceeding[34].

---

[33] Act 1564 of 2012. *General Code of Procedure*. Articles 82 and 84.
[34] Act 1564 of 2012. *General Code of Procedure*. Article 84.

Solarte Asesores Jurídicos S.A.S.

80.     Once the suit has been filed, if the court considers that it meets the requirements established by law, it will admit it through an order that can be subject to an appeal for reconsideration.

81.     Once the suit has been admitted, the plaintiff must personally notify the defendant of the writ of admission. Such notification may be made (i) by sending the respective writ as a data message to the defendant's e-mail address[35]; or (ii) by sending a communication to the defendant, informing it of the existence of the proceeding, its nature, and the date of the writ to be notified, and advising it to appear in court[36].

82.     Once the defendant has been notified, it shall carry out the actions that procedural law specifies that this party to the proceedings must perform, including answering the complaint, submitting the defense, and making the applicable evidentiary requests where the case so warrants, to file a counterclaim. Like the plaintiff, the defendant must provide, along with his answer to the claim, such documentary evidence as he has in his possession and that he wishes to put forward in the judicial proceeding[37]. If the defendant proposes defenses (merit-based objections), the plaintiff may request evidence related thereto[38].

83.     At the end of this first phase, the judge will set a date for a first hearing, known as the initial hearing. On that occasion, among other actions, the judge will urge the parties to try to come to an agreement out of court, will take testimony from the parties, will establish the object of the litigation, and will order the production of such evidence as he may consider pertinent,

---

[35] Act 1322 of 2022. Article 8.
[36] Act 1564 of 2012. *General Code of Procedure*. Article 291.
[37] Act 1564 of 2012. *General Code of Procedure*. Article 391.
[38] *Ibid*.

necessary and useful[39]. It is important to note that the judge may order and obtain all evidence he deems necessary, even *ex officio* and at any time during the proceeding.

84.     Subsequently, a second hearing will be held, known as an examination and trial hearing. On this occasion, all the evidence that has been ordered is examined, the attorneys for the parties present their final arguments orally, and the judge issues a judgment. The judgment, as a general rule, must be rendered orally unless, in the opinion of the judge, this is not possible. In such case, the judge must expressly record the reasons why the judgment cannot be rendered orally, state the outcome of the judgment, and issue a written decision.

85.     Once the judgment has been issued, the parties have the opportunity to challenge it through an appeal, to which reference will be made later.

86.     The final and binding judgment is enforceable. This means that, in the event that the losing party does not spontaneously comply with the judicial orders included in the judgment, the other party may initiate an enforcement process to force compliance with the judicial order. In addition, it must be specified that when the enforcement order is a court judgment, the only defenses that can be raised against an order for payment are those of effective payment, offset, novation, waiver, prescription or settlement, on the condition that they are based on facts or events that took place after the judgment[40].

B.     **Request for evidence**

87.     In civil proceedings in Colombia, there is no preliminary phase in which the parties must disclose all the evidence they intend to put forward in trial. Rather, Colombian civil procedure

---

[39] Law 1564 of 2012. *General Code of Procedure*. Article 372.
[40] Act 1564 of 2012. General Code of Procedure. Article 509.

allows several points in time at which the parties are allowed to add evidence to the docket over the course of the proceeding. For example, the plaintiff must make its evidentiary request in the complaint and must provide all documents in its possession, and the defendant must do the same when answering the complaint.

88.     Section 165 of the General Procedural Code states that the means of evidence are "*the declaration of the party, admissions, oath, the testimony of third parties, the expert opinion, the judicial examination, the documents, the evidence, the reports and any other means that may be useful for the formation of the court's opinion*".  It follows from the foregoing that the Procedural Statute provides for a system of evidentiary freedom that authorizes the parties to prove the facts of the proceeding with any means of evidence that may be useful. For this reason, it must be understood that the list contained in the aforementioned section 165 is not exhaustive, but merely enunciative.

89.     For the purpose of ruling on the evidence, the court must assess the relevance, appropriateness and utility of the evidence requested by the parties in order to rule on it.  Relevance supposes the existence of a relationship between the means of evidence proposed and the subject of the evidence. Appropriateness refers to the suitability of a means of evidence to legally prove the existence of a fact and the utility of the evidence refers to the fact that it must be relevant to the judicial process that is being carried out.

90.     Once a ruling has been made, the evidence is taken in accordance with the particular rules contained in the General Procedural Code, after which the Judge must evaluate it in the judgment in accordance with the logical and reasonable rules of evaluation and procedure.

Solarte Asesores Jurídicos S.A.S.

91.    However, the legal system provides for the taking of evidence by the parties before the judicial proceeding begins[41]. This type of evidence is known as "*extra-procedural evidence*". For example, testimony may be taken out of court with or without summons to the future opposing party[42]. The parties may even examine the evidence by mutual agreement or may delegate such examination to a third party, without the need to perform such examination in the presence of a judge. In such cases, the evidence examined by mutual agreement must be brought to the proceeding before a judgment is handed down[43].

92.    In Colombia, it is not permitted to question a witness prior to the evidentiary hearing and then question him/her again at the hearing. If the questioning is done extra-procedurally, the evidence will be understood to have been exhausted at that point.

93.    As has been noted, the Colombian courts may also require the production of relevant evidence held by third parties. For example, should this action be re-filed in Colombia, evidence could be obtained from third parties such as LASER airline, the Colombian Air Force, the National Police, the Colombian Civil Defense and emergency response agencies, entities that owned the aircraft in Colombia before LASER purchased it, entities that performed maintenance on the aircraft, and persons and entities with knowledge of the plaintiffs' alleged damages, such as the former employers of the deceased, medical providers, and financial institutions.

94.    In the event that the involvement of another State is needed to obtain evidence, or other judicial proceedings must be conducted outside the Colombian State, the request must be made through a letter rogatory, under the terms of Article 1 of the Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (Hague Convention), which was incorporated

---

[41] Act 1564 of 2012. *General Code of Procedure.* Article 183.
[42] Act 1564 of 2012. *General Code of Procedure.* Article 188.
[43] Act 1564 of 2012. *General Code of Procedure.* Article 190.

into the Colombian legal system by Act 1282 of 2009. The examination of other evidence that may be ordered by the presiding judge, such as, for example, the questioning of witnesses who are outside Colombia, may be conducted directly through electronic means. In exceptional cases, if the judge deems it necessary, the judge may order the witness to be examined within the Court's area of jurisdiction. However, in no case may a Colombian judge order a witness to travel to the United States in order for the evidence to be examined there. The letter rogatory must be sent by the Colombian Ministry of Foreign Affairs, through diplomatic channels, to the competent authorities of the State to which the request is addressed. It should be noted that this procedure is free of charge. The authority that executes the letter rogatory shall apply the laws of its own country.[44]

95.     It is possible for parties with pending litigation in foreign jurisdictions, such as the United States of America, to obtain evidence from non-parties located in Colombia. However, these processes can be lengthy. One way to obtain evidence located in Colombia for legal proceedings pending abroad is through the Hague Convention, provided that the requesting court abroad is also a party to the Hague Convention. The United States is a party to the Hague Convention and therefore courts in the United States may use this process. However, the process for obtaining evidence located in Colombia for foreign proceedings through the Hague Convention is lengthy and complicated and subject to a certain degree of discretion on the respondent authorities' part.

96.     Indeed, according to the information I have obtained after consulting with other law firms in the country, the process for obtaining evidence located in Colombia through the Hague

---

[44] Case 1282 of 2009. Whereby the *"Convention on the Taking of Evidence Abroad in Civil and Commercial Matters"*, made in the Hague on March 18, 1970, is approved. Article 9

Convention can take up to three (3) years.  These delays are usual in the case of cross-border evidence, regardless of the location of the evidence being sought.

97.     Furthermore, litigants in judicial proceedings abroad may request evidence located in Colombia through an "extra-procedural request for evidence" pursuant to sections 183 to 190 of the General Procedural Code. To do so, the applicant must: (i) identify the parties that must present documents or provide testimony and their contact information for notification purposes; (ii) include a brief description of the facts on which the request is based; (iii) identify the documents and testimony required, their importance, relevance and the facts they are intended to prove. The documents to be presented must be specifically identified, as general exhibits are prohibited in civil proceedings.

98.     Once the request has been filed, a Colombian court will analyze it and order the taking of any evidence it deems relevant, including testimony and exhibits of natural or legal persons in Colombia. To the extent such testimony is ordered, it would take place in Colombia. Colombian courts have no authority to order a person in Colombia to travel to the United States to testify at trial, and would not issue such an order. If a certain request is denied, an appeal may be filed on that specific point, which will be resolved by the superior court of the competent judge.

99.     The duration of the "extra-procedural request for evidence" depends to a large extent on the complexity of the requests and the availability of the assigned Court. In my experience, this type of procedure takes between one and two years to complete.

100.     Given that respondent authorities have discretion in responding to requests for evidence through the Hague Convention and the "extra-procedural request for evidence", there is no guarantee that a litigant in a foreign court proceeding will be able to obtain the evidence it seeks from a person or entity located in Colombia. Therefore, if a lawsuit is not filed in Colombia and

Solarte Asesores Jurídicos S.A.S.

the current pending litigation against THE BOEING COMPANY continues instead in the United States, it is uncertain whether THE BOEING COMPANY will be able to obtain all relevant evidence from third parties located in Colombia.

### C.    Procedural costs

101.    Access to the administration of justice in Colombia is free of charge, as established in Article 6 of Act 270 of 1996. The foregoing is without prejudice to the procedural costs, costs of legal representation, and costs that are set by law. In his judgment, the Judge must order payment of court costs by the losing party.

102.    Procedural costs are "*those expenses incurred by a party as a result of the legal proceeding*" and this concept includes expenses and legal representation costs. Expenses "*are disbursements other than the payment of attorney's fees, such as the cost of notices, experts' fees, and duties, among others. Legal representation costs are those expenses incurred for representation by an attorney in the proceeding, which the judge awards, at his discretion, to the prevailing party in accordance with the criteria set forth in section 366 of the General Procedural Code, and which do not necessarily correspond to the fees paid by said party to its attorney.*"[45]

103.    Legal representation costs are set on the basis of parameters established by the Superior Council of the Judiciary in Agreement PSAA16-10554 of 2016. For example, for civil proceedings involving high-value claims, the legal representation costs will fall within a range from 3% to 7.5% of the value of the claims in the lawsuit.

---

[45] Constitutional Court of Colombia. Decision T-625 of 2016. MP: María Victoria Calle Correa.

Solarte Asesores Jurídicos S.A.S.

### D.      Appeals

104.     Once a judgment has been rendered, ending a judicial proceeding, those parties who are dissatisfied due to an adverse decision may file a notice of appeal before the trial court judge. The form of filing varies according to the manner in which the judgment is rendered. If the judgment was rendered verbally at the trial, a notice of appeal must be filed at the hearing, verbally, without prejudice to the fact that specific objections to the decision may be presented in writing within three days of the hearing. Conversely, if the judgment was rendered in writing, a notice of appeal must be filed within three working days of its notification. If no appeal is filed within the term provided for in the procedural law, the judgment will become final and enforceable, in accordance with section 302 of the General Procedural Code.

105.     Where a notice of appeal has been filed in a timely manner, the trial court judge must grant it if the person filing the appeal has the legal standing to do so. The appeal of the judgment may be granted with or without suspensive effect: "*The appeal of judgments that deal with the civil status of persons, those that have been appealed by both parties, those that deny all claims, and those that are simply declaratory shall be granted with suspensive effect. Appeals of other judgments shall be granted without suspensive effect, but no money or other property may be delivered until the appeal is resolved.*"[46]

106.     When an appeal is granted with suspensive effect, "*in the case of a judgment, the competence of the trial court judge will be suspended from the moment of enforcement of the order granting the appeal until notification of compliance with the decision of the appellate judge. However, the lower court judge will retain jurisdiction to hear all matters related to injunctive*

---

[46] Law 1564 of 2012. *General Code of Procedure*. Article 323.

**Solarte Asesores Jurídicos S.A.S.**

measures."[47] If the appeal is granted without suspensive effect, "*compliance with the appealed ruling will not be suspended, nor will the course of the proceedings.*"[48]

107.    Once the appeal has been granted, the Judge must send the docket to his hierarchical superior, who will verify the legal requirements for the appeal to be admissible and, where these have been satisfied, they will admit the appeal and will grant the appellant (5) days to support the appeal.

108.    The appellant will support the appeal by means of a brief, in which he must express the reasons for his disagreement with the appealed judgment[49], limiting his allegations to the further development of the arguments set forth in the specific objections presented before the trial court judge[50]. The other party will be notified of the supporting arguments, so that, if it deems it appropriate, it may respond. Once the notice has expired, the docket will be delivered to the chambers of the appellate judge to decide on the merits.

109.    Throughout the proceeding, judicial decisions other than judgments can be appealed. In such case, the appeal must be filed and supporting arguments must be given orally if the appealed order was issued orally at a hearing, or within three (3) days following its notification if it was issued in writing[51].

110.    Interlocutory appeals are generally granted without suspensive effect. However, they may be granted with deferred effect in those cases in which the law so indicates. Deferred effect means that "*the enforcement of the appealed ruling will be suspended, but the course of the*

---

[47] Ibid.
[48] Ibid.
[49] Law 1564 of 2012. *General Code of Procedure*. Article 322.
[50] Act 1564 of 2012. *General Code of Procedure*. Article 327.
[51] Act 1564 of 2012. *General Code of Procedure*. Article 322.

*proceeding before the judge of first instance will continue with respect to that which does not necessarily depend thereon.*"[52]

111.    Once an interlocutory appeal has been granted and upheld, the opposing party is sent a copy for a period of three (3) days, in order to submit a response. Subsequently, the judge of first instance will send the file to his hierarchical superior, who will decide on the appeal in writing[53] .

112.    It must be specified that the competence of the court hearing the appeal is limited to the specific grounds of disagreement - known as "specific objections" - raised by the appellant against the first instance judgment. That is to say, the appellate judge will not have absolute competence to review everything decided by the first instance court, but must focus its analysis on the points expressly indicated by the appellant[54].

113.    Where the plaintiffs formulate claims of lesser amount and they or THE BOEING COMPANY decide to appeal the first instance judgment, the appeal will be heard by a civil judge of the circuit. On the other hand, if the claims are of greater amount (higher than the equivalent of 150 times the legal monthly minimum wages), the appeal will be heard by the Court of the corresponding Judicial District, which is a collegiate body. In any case, the processing of the appeal must not take more than six months - extendable for a maximum of another six months - from the time the docket is received by the registry of the Court or Tribunal[55].

114.    Where second instance judgment is rendered by a Superior Court of a Judicial District and causes any of the parties a loss of more than one thousand (1,000) legal monthly

---

[52] Ibid.
[53] Act 1564 of 2012. *General Code of Procedure.* Article 326.
[54] By way of exception, the court may decide the appeal without these limitations, in cases in which both parties file an appeal, as stipulated in section 328 of the General Procedural Code.
[55] Act 1564 of 2012. *General Code of Procedure.* Article 121.

minimum wages in force, the affected party may file an extraordinary cassation appeal, which will be heard by the Civil Cassation Chamber of the Supreme Court of Justice. However, it must be specified that since cassation is an extraordinary appeal, it is only admissible on the grounds legally established in section 336 of the General Procedural Code.

115.    Once the previous avenues of appeal and cassation have been exhausted, in the event that any of the parties consider that their fundamental rights were violated by the Supreme Court's cassation decision, they may exceptionally file a writ for the protection of constitutional rights. However, it is relevant to mention that the applicability of this action against judicial decisions, especially those rendered by the High Courts, is restrictive in nature and therefore they will only be admissible in cases in which a gross and manifest violation of the fundamental right invoked is demonstrated.

## VIII.  PUBLIC INTEREST

116.    As explained in previous paragraphs, Colombian courts have jurisdiction to hear and decide on the merits of the case under review in this document, since the accident occurred in Colombian territory and the victims are Colombian nationals. In my opinion, the Colombian authorities would have an interest in having this litigation resolved in Colombia because the facts involve a Colombian airline that was carrying Colombian passengers within the national territory and crashed in a Colombian field, which the Colombian GRIAA investigated. Colombia has an interest in protecting its citizens from these types of accidents and ensuring that its citizens are compensated for any failures associated with these accidents.

117.    It is also important for Colombia to guarantee the fundamental right of access to the administration of justice so that all persons may seek the protection and restoration of their

Solarte Asesores Jurídicos S.A.S.

rights before the competent courts. In this sense, it is in the interest of the Colombian judicial system to serve as an adequate forum for resolving disputes and disagreements arising within the national territory.

118.    In line with the foregoing, in order to guarantee access to the administration of justice and achieve a decision on the merits of the case, it may be beneficial for the process be carried out in Colombia, given that some of the plaintiffs are citizens and residents of Colombia. In this way, it may be possible to avoid incurring greater costs.

119.    Additionally, the study and analysis of civil liability arising from an air accident is of particular interest in Colombia. Similarly, the Supreme Court may find interesting the opportunity to rule on the legal regime of product liability under Colombian law. Litigating this case in Colombia would allow the Colombian State and courts to further develop the law in this important area.

120.    Similarly, matters related to air safety are of considerable public interest in Colombia, both in terms of the performance of the airlines and the quality of the aircraft used for air transport, since any deficiencies that may arise in these areas have a major impact on the life, personal safety, and assets of those involved, including the insurance industry.

121.    Indeed, according to public information, it can be observed that the accident that is the subject of the dispute under study was covered by the media in Colombia. Different media outlets reported the facts. For example, newspapers with high national circulation such as *El*

Solarte Asesores Jurídicos S.A.S.

*Colombiano*[56] and *El País*[57] published news in which they highlighted the seriousness of the accident due to the absence of survivors.

### IX.    CONCLUSION

122.    Based on my knowledge of the Colombian judicial system, my academic training and my professional experience, I am of the opinion that the Colombian Courts are an appropriate forum in which to settle the controversy arising from the air accident that occurred on March 9, 2019. The Colombian Courts have jurisdiction and competence to conduct this proceeding, which they must do with full observance of the parties' right to due process, as well as the other procedural guarantees enshrined in the legal system.

123.    The fact that the accident occurred in Colombian territory, as well as the fact that several of the individuals included among the plaintiffs are Colombian nationals and residents, leads us to the view that a proceeding in Colombia would facilitate the gathering of evidence, given the domicile of the witnesses, the location of the documents, as well as the offices of the persons and entities that were present at the scene of the accident.

124.    The Colombian Courts are available and have the necessary infrastructure to conduct the process, take evidence and render a decision on the merits with the force of *res judicata* in the lawsuit initiated against THE BOEING COMPANY.

125.    Finally, it would be a matter of public interest in Colombia to pursue and conclude the legal proceedings against The Boeing Company, because the air accident occurred in

---

[56]      https://www.elcolombiano.com/colombia/accidente-de-avion-que-cubria-la-ruta-san-jose-del-guaviare-villavicencio-NG10349163

[57] https://elpais.com/internacional/2019/03/10/colombia/1552186918_191060.html

**Solarte Asesores Jurídicos S.A.S.**

Colombian territory, the victims of the accident were Colombians, and the air safety and liability involved are issues of interest to the Colombian authorities and judicial system.

I declare on pain of perjury, under the laws of the United States of America, that the foregoing is true and correct to the best of my knowledge and belief.

Done at Bogotá D.C., Colombia, on February 15, 2023.

_____

Solarte Asesores Jurídicos S.A.S.

**Annex I**

Curriculum Vitae

**ARTURO SOLARTE RODRÍGUEZ**
_____

Office: Carrera 7 No. 74B-56, office 805, Bogota (Colombia)
arturosolarte@hotmail.com
arturosolarte@javeriana.edu.co
Telephone numbers: 6942430 - 3174332774

## ACADEMIC BACKGROUND

- Law degree from Pontificia Universidad Javeriana (1981 - 1985).

- Specialist in Financial Legislation, Universidad de los Andes (1994).

- Doctoral studies in Law at the University of Salamanca (Spain) (2002 - 2004). Diploma in Higher Studies and Diploma in Advanced Studies in Civil Law.

- Postgraduate courses in Casualty Law (2003) and Contract Law (2004) at the University of Salamanca (Spain).

- Postgraduate course in Insurance Law at Pontificia Universidad Javeriana (2005).

## PROFESSIONAL EXPERIENCE

**Current occupation:**

Independent legal practice. Partner at Solarte Asesores Jurídicos S.A.S.

Arbitrator for the Arbitration and Conciliation Centers of the Chambers of Commerce of Bogotá and Medellín.

University professor.

**Solarte Asesores Jurídicos S.A.S.**

**Previous experience:**

- Partner at Gómez & Solarte Abogados (2014-2017).

- Judge of the Civil Cassation Chamber of the Supreme Court of Colombia (August 1, 2007 to August 30, 2013). Chief justice of the Civil Cassation Chamber of the Supreme Court of Justice during 2008.

- Partner of Santos, Munévar & Jaramillo, Attorneys at Law (2005-2007)

- Director of the Department of Private Law, School of Legal Sciences, Pontificia Universidad Javeriana (2005-2007).

- Vice-President of Legal Affairs of Fundación Social (now known as Fundación Grupo Social) (1998-2002)

- Chief Administrative Officer of Corporación Social de Ahorro y Vivienda Colmena (now known as Banco Caja Social) (1995-1997)

- Lawyer, Legal Advisor and Director of the Private Law Department of Fundación Social (1988-1994).

- Assistant Attorney and Associate Attorney at Posse & Cía. Ltda., Attorneys at Law (1985-1988)


**TEACHING EXPERIENCE**

- Professor in the Department of Private Law of the School of Legal Sciences of the Pontificia Universidad Javeriana (since 1989) in the following subjects:

- Assistant Professor of Civil Law - Contracts (January 1989 to December 1994)

- Professor in the Research Seminar in Private Law (January 1991 - December 1993)

- Professor of Civil Law - Property (January 1995 - December 2005)

- Professor of Civil Liability (January 2005 to June 2007 and July 2014 to July 2019)

- Professor of Civil Law - Obligations (July 2004 to June 2014 and July 2018 to date)

- Professor of the specialization areas in Commercial Law and Medical Law, of the Master's Degree program in Insurance Law, of the Diploma in Commercial Contracts and of the Diploma in Real Estate Law of the School of Legal Sciences of the Pontificia Universidad Javeriana (July 2004 to January 2015).

**Solarte Asesores Jurídicos S.A.S.**

- Professor of the specialization areas in Civil and Family Law and Liability and Insurance at the Universidad del Norte (Barranquilla - Colombia) (May 2009 to December 2017).

- Professor of the specialization area in Liability Law at Universidad de la Sabana (Bogotá - Colombia) (May 2010 to January 2015).

- Professor of the specialization area in private economic law at the Universidad Nacional de Colombia (2011 - )

- Professor of the specialization area in commercial law at the University of Nariño (2011 - 2015).

- Professor of the Specialization area in Civil Liability and Insurance at Universidad Pontificia Bolivariana (Medellín - Colombia) (2018 - 2021).

- Professor of the Master's Degree in Law - Civil Liability at Universidad EAFIT (Medellín - Colombia) (2018 - 2021).

- Professor of the Master's Degree program in Private Law, Universidad de los Andes (2011 - )


**PUBLICATIONS**

- Inflation and revaluation in monetary obligations (1988).

- Political Constitution of Colombia, annotated and with concordance - Fundación Social – Legal Sub-Management (1991).

- Parent and subordinated companies. In conjunction with Sergio Muñoz and Ma. Claudia Martínez. Revista Supersociedades hoy, No. 3 (1995).

- Illegal acts in Roman law. Revista Universitas No. 107 (June 2004).

- Contractual good faith and secondary obligations of conduct. Revista Universitas No. 108 (December 2004).

- Reparation of damages *in natura*. Revista Universitas No. 109 (June 2005).

- Civil Justice and Democracy. Revista de la Corte Suprema de Justicia No. 25 (2007).

- Legal relevance of silence in private contracting. Estudios Jurídicos en homenaje al profesor Cesar Gómez Estrada. Universidad del Rosario (2009).

**Solarte Asesores Jurídicos S.A.S.**

- The role of the judge in the interpretation, integration and qualification of contractual content. Estudios Jurídicos en homenaje al profesor Professor Jorge Mosset Iturraspe. Pontificia Universidad Javeriana (2010).

- Actions *iure hereditatis* in civil liability. Law of Obligations. Volume II. Coordinator: Marcela Castro de Cifuentes. Universidad de los Andes (2010).

- Offers addressed to undetermined persons. In "Teoría General del Contrato - Homenaje al Profesor Doctor Ricardo L. Lorenzetti". Volume II. Editorial La Ley, Buenos Aires (2012).

- The contributions of Professor Arturo Valencia Zea to the study of tort liability in Colombia. In " Jurista y Maestro. Arturo Valencia Zea ". Volume II. National University of Colombia. Bogotá, (2014).

- Civil liability and equity in the Peruvian Civil Code of 1984. Analysis from a comparative law perspective. In "Derecho Civil Extrapatrimonial y Responsabilidad Civil". Judicial Branch of Peru - Superior Court of Justice of Arequipa and Judicial School CSJAR (2015).

- Full reparation of damages and restitution of the benefits obtained by the civilly liable party. Revista del Instituto Colombiano de Responsabilidad Civil y del Estado No. 37. April 2016. Medellín (2016).

- Contracts of adhesion to general conditions. In "Estudios del Derecho de Consumo (Ley 1480 de 2011)" en homenaje al Professor Álvaro Mendoza Ramírez. Scientific Editor: Fernando Jiménez Valderrama. Universidad de la Sabana. Bogotá. (2017).

- The obligations of the parties and their attorneys to the arbitrator. Arbitration 360º Collection " El árbitro y la función arbitral". Academic Directors: Hernando Herrera Mercado and Fabricio Mantilla Espinosa. Universidad del Rosario. Bogotá (2017).

- The *favor victimae* principle and its application in Colombian law. Private Law Yearbook. Universidad de los Andes. Bogotá (2019).

- Reparation of damages and models of justice. Brief study on the damage reparation forms in different jurisdictions. Revista del Instituto Colombiano de Responsabilidad Civil y del Estado No. 44 (2020).

- Offsetting of obligations in private law, jointly with Mariana Bernal Fandiño. In "Derecho de las obligaciones con propuestas de modernización". Volume IV, second edition. Universidad de los Andes. Bogotá (2021).

- Compensation for damages in contractual civil liability. In "Instituciones de Responsabilidad Civil. Homenaje al Maestro Jorge Santos Ballesteros". Volume I. Bogotá (2022).