UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MARIA DEL ROSSARIO JARAMILLO BALLESTEROS, as Personal Representative of the ESTATE OF JAIME CARRILLO MONTENEGRO, and as Guardian of M.F.C.J., a minor; and RAQUEL JAVELA ROJAS as Personal Representative of the ESTATE OF JAIME EDUARDO HERRERA ROMERO, and as Guardian of J.M.H.J., a minor,

Plaintiffs,

v.

THE BOEING COMPANY,

Defendant.

C22-0393 TSZ

ORDER

THIS MATTER comes before the Court on a motion to dismiss for *forum non conveniens*, docket no. 31, brought by defendant The Boeing Company ("Boeing"). Having reviewed all papers filed in support of, and in opposition to, the motion, and having determined that oral argument is unnecessary, the Court enters the following Order.

ORDER - 1

**Background**

On March 9, 2019, an aircraft operated by Latinoamericana de Servicios Aéreos ("LASER"), a Colombian airline, crashed during a domestic flight between San José del Guaviare and Villavicencio, Colombia. *See* Accident Report at 7, Ex. A to Ledford Decl. (docket no. 32-1 at 57). The aircraft in question (the "Aircraft") was designed in California and manufactured in Oklahoma by the Douglas Aircraft Company ("Douglas") during World War II. *See* McIntosh Decl. at ¶ 4 (docket no. 33); Ex. D to Ledford Decl. (docket no. 32-4). Douglas subsequently merged with McDonnell Aircraft and became McDonnell Douglas Corporation. McIntosh Decl. at ¶ 4. Although Boeing did not manufacture the Aircraft, Plaintiffs bring this action against it as the successor-in-interest to McDonnell Douglas following Boeing's acquisition of the company in 1997. *See id.*; Compl. at ¶¶ 20–21 (docket no. 1-2).

Available records indicate that the Aircraft, a Douglas C-47 Skytrain (a military variant of the Douglas DC-3), was delivered to the United States Army Air Force on April 21, 1945. *See* Ex. D to Ledford Decl.; Compl. at ¶ 3. On May 14, 1945, the Aircraft was transferred to the United States Navy. *See* Ex. C to Ledford Decl. (docket no. 32-3); Compl. at ¶ 3. The Aircraft was later transferred to the University of Texas at Austin on October 8, 1971. *See* Ex. C to Ledford Decl.; Compl. at ¶ 3. On August 6, 1980, the Aircraft was certified and registered with the United States Federal Aviation Administration for commercial use before it was subsequently deregistered and exported

ORDER - 2

to Colombia on October 29, 1980, where it continued to operate until the date of the accident.[1]  *See* Ex. B to Ledford Decl. (docket no. 32-2); Ex. C to Ledford Decl.

On the date of the crash at issue, March 9, 2019, the Aircraft was equipped with two Pratt & Whitney engines, each attached to a Hamilton Standard propeller.[2]  Compl. at ¶ 4.  Approximately 11 minutes after take-off, at an altitude of 8,500 feet, the Aircraft experienced a malfunction in its left engine.  *See* Accident Report at 7 (docket no. 32-1 at 57).  In response to the malfunction, the crew shut down the left engine and attempted to "feather" its propeller.  *Id.* at ¶ 2.6 (docket no. 32-1 at 90).  Feathering refers to the process of rotating propeller blades parallel to wind direction, thereby reducing aerodynamic drag.  *See id.* at ¶ 1.18.1 (docket no. 32-1 at 83).  In a radio transmission to local air traffic control, the crew reported that they were not successful in activating the left engine's propeller feathering system.  *Id.* at ¶ 1.1 (docket no. 32-1 at 60).  Due to a continuous loss of altitude, the pilot decided to attempt an emergency landing at a nearby airfield.  *Id.*  The crew, however, was unable to maintain control of the Aircraft and it crashed at a site known as Finca La Bendición in San Martín, Colombia.  *Id.* (docket no. 32-1 at 61).  All occupants (three crew members and 11 passengers) suffered fatal injuries.  *See id.* at 7 (docket no. 32-1 at 57).

---

[1] On May 16, 2009, the Aircraft's left engine "underwent major overhaul" at a repair facility in Florida.  *See* Accident Report at ¶ 1.6.5, Ex. A to Ledford Decl. (docket no. 32-1 at 67); Ledford Decl. at ¶ 8 (docket no. 32).  During the 10 years preceding the accident, all other maintenance of the Aircraft's engines was performed in Colombia.  Ledford Decl. at ¶ 8.

[2] Plaintiffs allege that the Aircraft was originally designed and manufactured with these engines and propellers.  Compl. at ¶ 4 (docket no. 1-2).

ORDER - 3

Following the accident, Colombia's accident investigation authority, Grupo de Investigación de Accidentes Aéreos Colombia ("GRIAA"), initiated an investigation.[3] GRIAA concluded that the probable causes of the accident were the crew's inability to feather the propeller following a malfunction in the left engine's lubrication system (loss of oil pressure) and certain weaknesses in LASER's operational procedures. Accident Report at 7–8 (docket no. 32-1 at 57–58). As GRIAA explained in its report, without sufficient oil pressure, the propeller feathering system, which uses the same oil as the engine lubrication system, failed to operate. *Id.* at ¶ 2.2 (docket no. 32-1 at 86–87) ("[W]hen the [lubrication] system loses oil pressure, the propeller feathering function becomes inoperative."). Although GRIAA could not identify with certainty the location where the oil pressure loss occurred, it found evidence of "improper and non-standard" maintenance practices on the left engine's "propeller feathering oil pressure line." *Id.* at ¶ 3.1.2 (docket no. 32-1 at 93).

Plaintiffs are the personal representatives and families of the two Colombian pilots killed in the accident. Compl. at ¶¶ 1, 11–16. At the time of accident, the decedent pilots were residents and citizens of Colombia, and none of their beneficiaries resided in

---

[3] Pursuant to Annex 13 of the Convention on International Civil Aviation, the United States National Transportation Safety Board ("NTSB") assigned one representative to assist in the investigation because the Aircraft was designed and manufactured in the United States. Accident Report at ¶ 1.1 (docket no. 32-1 at 62); McIntosh Decl. at ¶ 2 (docket no. 33). Neither GRIAA nor the NTSB asked Boeing to participate in the investigation or provide any documents or information regarding the Aircraft. McIntosh Decl. at ¶ 3.

1   the United States.[4]  *Id.* at ¶¶ 15–16; Pls.' Resps. to Reqs. for Admis. Nos. 1–5, Exs. F &
2   H to Ledford Decl. (docket nos. 32-6 & 32-8).  Plaintiffs Maria Del Rossario Jaramillo
3   Ballesteros, M.F.C.J., Raquel Javela Rojas, J.M.H.J., and all other beneficiaries of the
4   Carrillo Montenegro and Herrera Romero estates are Colombian citizens.  Pls.' Resps. to
5   Interrog. No. 1, Exs. G & I to Ledford Decl. (docket no. 32-7 & 32-9).  None of the
6   passengers or crew were residents or citizens of the United States.

7          Plaintiffs commenced this action in King County Superior Court and Boeing
8   removed the case to this Court.  *See* Notice of Removal (docket no. 1).  Plaintiffs bring
9   two causes of action against Boeing:  (i) violation of the Washington Product Liability
10  Act ("WPLA"), RCW Chapter 7.72; and (ii) common law negligence.  Compl. at ¶¶ 31–
11  49.  Boeing now moves to dismiss this action for *forum non conveniens* in favor of
12  refiling in Colombia.  As a condition to a *forum non conveniens* dismissal of this action,
13  Boeing agrees to submit to personal jurisdiction in Colombia in any action refiled there
14  by Plaintiffs within 120 days of this Order.  Ledford Decl. at ¶ 2.  Boeing also agrees to
15  make available any documents, witnesses, and/or other evidence within its custody or
16  control that the Colombian courts deem relevant, and to pay any damages awarded by the
17  Colombian courts in such actions, subject to any right of appeal.  *Id.*  For the following
18  reasons, the Court GRANTS Boeing's motion to dismiss.

---

[4] Plaintiff Raquel Javela Rojas now resides in Fremont, CA.  Pls.' Resp. to Interrog. No. 1, Ex. I to Ledford Decl. (docket no. 32-9).

ORDER - 5

**Discussion**

A district court may, in its discretion, "decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 504 (1947)). When asked to dismiss an action on the ground of *forum non conveniens*, the district court must examine (1) "whether an adequate alternative forum exists," and (2) "whether the balance of private and public interest factors favors dismissal."[5] *Id.*

**1.  Available and Adequate Alternative Forum**

An alternative forum is "available" where the defendant is amenable to service of process and "adequate" when it provides the plaintiff with "some remedy for his wrong." *Id.* at 1143. As the Ninth Circuit has recognized, the test is "easy to pass." *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006). A foreign forum is typically considered inadequate only when the remedy it provides "is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 (1981). Boeing bears the burden of proving the existence of an adequate alternative forum. *See Lueck*, 236 F.3d at 1143.

---

[5] The Ninth Circuit has also held that a district court must make a choice of law determination. *Lueck*, 236 F.3d at 1143. The choice of law analysis, however, "is only determinative when the case involves a United States statute requiring venue in the United States, such as the Jones Act or the Federal Employers' Liability Act." *Id.* at 1148. No such statute is implicated in this action.

ORDER - 6

Boeing has identified Colombia as an alternative forum for this dispute and has provided a declaration from a Colombian attorney and former judge, Arturo Solarte Rodríguez, explaining that the parties are within the jurisdiction of Colombian courts for any claims arising from the accident. Rodríguez Decl. at ¶¶ 1, 64–66 (docket no. 35). Further, Boeing has represented to this Court that it will consent to jurisdiction in Colombia as a condition to a *forum non conveniens* dismissal. *See* Ledford Decl. at ¶ 2. Plaintiffs do not dispute that the parties are amenable to process in Colombia and the Court therefore concludes that Colombia is an "available" alternative forum.

Instead, Plaintiffs contend that Colombia is not an "adequate" forum because they will not be able to pursue their product liability claim in light of GRIAA's final investigative report.[6] Resp. at 2 (docket no. 37). In support of this argument, Plaintiffs have submitted the Declaration of Felipe Piquero, docket no. 36, a Colombian attorney. According to Piquero, "GRIAA's reports play an authoritative role in [Colombian] civil litigation" because GRIAA's findings "cannot be challenged in a Colombian court" and represent the "sole source of expert evidence" that Colombian courts will consider. Piquero Decl. at ¶ 6 (docket no. 33). Piquero declares that Colombian judges have given "full evidentiary value and proof" to GRIAA's reports in all prior cases seeking civil liability for aviation accidents. *Id.* at ¶ 7. Piquero's declaration, however, does not contain a single citation to any legal authority.

---

[6] Plaintiffs do not argue that they are unable to pursue their negligence claim in Colombian courts.

ORDER - 7

In contrast, Boeing has submitted the Supplemental Declaration of Rodríguez, docket no. 40, which explains that GRIAA's reports do not prevent the filing of civil liability actions in Colombia because the reports are "not intended to determine fault or liability." Suppl. Rodríguez Decl. at ¶¶ 3–4 (docket no. 40). Indeed, the GRIAA report at issue in this action specifically provides that it is not "intended to indicate fault or liability," Accident Report at 2 (docket no. 32-1 at 52), and at least one Colombian court has found that GRIAA's conclusions can be contested, Suppl. Rodríguez Decl. at ¶ 5 ("[T]he Civil Cassation Chamber of the Supreme Court of Justice explained in Judgment SC4103-2021 of September 16, 2021, that these reports, as with all evidence, must be assessed in conjunction with all other items of evidence submitted in the proceeding, this in consideration of the rules of sound judgment."); *see also* Annex 1 to Suppl. Rodríguez Decl. (docket no. 40-1) (containing excerpts from Colombian case law).

Importantly, Plaintiffs do not dispute Boeing's assertion that Colombian courts can adjudicate actions involving product liability or negligence claims (i.e., that Colombian courts provide them some practical remedy). Rather, Plaintiffs' sole argument regarding the alleged inadequacy of Colombian courts concerns whether Plaintiffs are likely to succeed on the merits of their product liability claim in Colombia. Dismissal on the ground of *forum non conveniens*, however, "may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery." *Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1168 (9th Cir. 2020) (quoting *Piper Aircraft*, 454 U.S. at 250); *see also In re Air Crash Over Taiwan Straits on May 25, 2002*, 331 F. Supp. 2d 1176, 1184–86 (C.D. Cal. 2004) (explaining that the

ORDER - 8

1  plaintiffs' inability to bring strict products liability claims in Taiwan did not render the
2  forum inadequate because other claims were available to them).  That a Colombian court
3  might place significant weight on GRIAA's findings and conclusions does not mean that
4  Colombia is an inadequate alternative forum, and the Court finds Colombia to be an
5  available and adequate forum in which Plaintiffs can pursue their claims.

6  **2.      Private and Public Interest Factors**

7         Boeing having established the availability and adequacy of Colombia as an
8  alternative forum, the Court must determine whether private and public interest factors
9  weigh in favor of dismissal.  "Ordinarily, a plaintiff's choice of forum will not be
10 disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial
11 in a foreign country."  *Lueck*, 236 F.3d at 1145 (quoting *Gulf Oil*, 330 U.S. at 509).
12 Although a plaintiff's choice of forum is "entitled to greater deference when the plaintiff
13 has chosen the home forum," *Piper Aircraft*, 454 U.S. at 255, "this assumption is much
14 less reasonable" when the plaintiff is foreign, *id.* at 256.  Thus, Plaintiffs' choice of
15 forum in this action is entitled to less deference because, with one exception, they are not
16 United States residents.  Notably, Plaintiffs' four-page response largely ignores Boeing's
17 arguments regarding the various private and public interests, and Plaintiffs argue in a
18 cursory fashion that "the public and private factors generally sway in keeping the case" in
19 Boeing's home country.  Resp. at 2.  The Court disagrees with Plaintiffs and concludes
20 that the relevant factors support dismissal of this action in favor of refiling in Colombia.

### a.  Private Interest Factors

District courts consider any or all of the following private interest factors:  (i) "the residence of the parties and witnesses"; (ii) "the forum's convenience to the litigants"; (iii) "access to physical evidence and other sources of proof"; (iv) "whether unwilling witnesses can be compelled to testify"; (v) "the cost of bringing witnesses to trial"; (vi) "the enforceability of the judgment"; and (vii) "all other practical problems that make trial of a case easy, expeditious and inexpensive."  *Lueck*, 236 F.3d at 1145 (citations omitted).  The balance of these factors overwhelmingly favors litigation in Colombia.

A significant amount of crucial documentary and physical evidence in this action is located in Colombia, including LASER's maintenance, training, and operations records, GRIAA's investigative records, and the Aircraft's wreckage.  Further, many relevant witnesses are located in Colombia, including personnel with knowledge of LASER's maintenance practices and procedures.  Without access to this evidence,[7] Boeing argues that it cannot defend against Plaintiffs' claim that the accident was caused by defects in the Aircraft's design, as opposed to LASER's allegedly non-standard or improper maintenance practices on the left engine's lubrication system.  Although some relevant evidence is likely under Plaintiffs' control, such as the decedents' medical and

---

[7] Plaintiffs do not dispute that this Court cannot secure the appearance of Colombian witnesses or order the production of much of the evidence relevant to Boeing's defense, or that Colombian judges lack authority to order Colombian witnesses, such as LASER's maintenance personnel, to travel to the United States.  *See* Rodríguez Decl. at ¶ 94.

ORDER - 10

financial records, many of the documents and witnesses necessary to support Boeing's defense in this action are under the control of LASER or the Colombian government.

In contrast, few, if any, witnesses in the United States have first-hand knowledge of the design and/or manufacture of a 77-year-old airplane. If this case was tried in the United States, Boeing would likely be unable to obtain the appearance of the witnesses it requires to present its defense, and the process for obtaining relevant documentary evidence would be lengthy and uncertain. *Id.* at ¶ 95. If, however, this case was tried in Colombia, Colombian courts would have the legal authority to obtain relevant evidence from Colombian governmental entities and third parties such as LASER and to secure the appearance of witnesses for both sides, *id.* at ¶ 93, and Boeing has committed to make available any documents or witnesses within its custody or control that the Colombian courts deem relevant, Ledford Decl. at ¶ 2.

In reaching the conclusion that the location of relevant witnesses and evidence strongly favors dismissal, the Court's focus does "not rest on the number of witnesses or quantity of evidence in each locale." *See Lueck*, 236 F.3d at 1146. Important evidence in this action exists in both the United States and Colombia. Rather, the Court recognizes that it cannot compel the production of Colombian evidence or secure the appearance of any Colombian witnesses Plaintiffs and/or Boeing require to present their claims or defenses, respectively.

Another factor that weighs strongly in favor of dismissal is Boeing's inability to join third-party defendants such as LASER in this action. LASER does not operate in Washington, meaning that the Court's ability to acquire jurisdiction over the airline is

ORDER - 11

doubtful.  *See*, *e.g.*, *Baumgart v. Fairchild Aircraft Corp.*, No. SA-90-CA-818, 1991 WL 487242, at *6 (W.D. Tex. Sept. 30, 1991) ("While the Court has jurisdiction over the estate of the pilot due to the estate's filing a cause of action that is now in this Court, the Court does not and cannot acquire jurisdiction over [the foreign airline].").  In light of GRIAA's findings regarding LASER's maintenance practices, the Court concludes that Boeing would be prejudiced if this action proceeded in LASER's absence.  Colombia, unlike the United States, is a "superior forum" because "actions and/or claims can be consolidated there."  *See In re Air Crash Over Mid-Atlantic on June 1, 2009*, 760 F. Supp. 2d 832, 844 (N.D. Cal. 2010); *see also* Rodríguez Decl. at ¶ 69 (explaining how Boeing could request that LASER be joined in any legal proceedings in Colombia).

        **b.**    **Public Interest Factors**

The public interest factors also weigh strongly in favor of dismissal.  District courts consider the following public interest factors:  (i) "local interest of lawsuit"; (ii) "the court's familiarity with governing law"; (iii) "burden on local courts and juries"; (iv) "congestion in the court"; and (v) "the costs of resolving a dispute unrelated to this forum."  *Lueck*, 236 F.3d at 1147 (citing *Piper Aircraft*, 454 U.S. at 259–61, and *Gulf Oil*, 330 U.S. at 508–09).  Although plaintiff Raquel Javela Rojas now resides in Fremont, CA, neither she nor any other plaintiff resides in this District.  And, although Boeing has significant operations in the Western District of Washington, the Aircraft, a World War II-era Douglas C-47, was not designed or manufactured by Boeing.  Other than Boeing's position as the successor-in-interest to McDonnell Douglas, the record contains no connection between the Aircraft and the Western District of Washington.

ORDER - 12

The accident in question occurred when an aircraft maintained and operated by a Colombian airline, piloted by Colombians, and carrying Colombian passengers, crashed in Colombia, while on a domestic Colombian route. Plaintiffs cannot dispute that Colombia has a significant interest in this action. "Because the local interest in this lawsuit is comparatively low, the citizens of [Washington] should not be forced to bear the burden of this dispute." *See Lueck*, 236 F.3d at 1147.

**Conclusion**

For the foregoing reasons, the Court ORDERS:

(1) Boeing's motion to dismiss for *forum non conveniens*, docket no. 31, is GRANTED, and this action is DISMISSED without prejudice in favor of refiling in Colombia. Colombia is an available and adequate alternative forum and the relevant private and public interest factors weigh strongly in favor of dismissal. As a condition of this Order, Boeing shall make itself amenable to suit in Colombia and must abide by all representations made in its motion and the Declaration of Christopher Ledford, docket no. 32.

(2) The Clerk is DIRECTED to CLOSE this case and to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 3rd day of April, 2023.

Thomas S. Zilly
United States District Judge